**KELLER POSTMAN LLC**
Warren D. Postman (330869)
wdp@kellerpostman.com
Albert Y. Pak (*pro hac vice* forthcoming)
albert.pak@kellerpostman.com
1101 Connecticut Ave, N.W., Suite 1100
Washington, D.C. 20036
Telephone: 202-918-1123

Patrick A. Huber (*pro hac vice* forthcoming)
patrick.huber@kellerpostman.com
150 North Riverside Plaza, Suite 4100
Chicago, IL 60606
Telephone: 312-280-5790

*Attorneys for Petitioner*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISION

| | |
|---|---|
| KIANA JONES, | Case No. 5:24-cv-00206 |
| Petitioner, | **PETITION TO COMPEL ARBITRATION** |
| vs. | |
| STARZ ENTERTAINMENT, LLC, | |
| Respondent. | |

PETITION TO COMPEL ARBITRATION

Petitioner files this Petition for an Order compelling Respondent Starz Entertainment, LLC ("Starz"), to arbitration under 9 U.S.C. § 4, and alleges as follows:

## NATURE OF THE PETITION

1. Petitioner is an individual who streamed video content on the Starz platform and is pursuing federal data privacy claims against Starz pursuant to a mandatory arbitration clause in the Starz Terms of Use.

2. Starz disclosed Petitioner's identity and the videos she watched on the Starz platform to third-party advertising and analytics companies, such as Meta and Google, without Petitioner's consent. Through this misconduct, Starz violated the federal Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710, et seq., and California Civil Code § 1799.3, which were enacted specifically for the purpose of protecting consumers' privacy interests in the videos they watched.

3. Petitioner agreed to the Starz Terms of Use by signing up for a Starz account. Jones Decl. ¶ 3. Petitioner, therefore, agreed to the mandatory arbitration clause ("JAMS Arbitration Agreement") in the Starz Terms of Use. *See* Huber Decl., Ex. A (Starz Terms of Use (Revised December 12, 2019)) ("Starz Terms").

4. The Starz Terms are governed by California law, and the JAMS Arbitration Agreement designates JAMS as the arbitration forum under the JAMS *Comprehensive Arbitration Rules & Procedures*. Starz Terms at 13.

5. The Arbitration Agreement also states that Petitioner "may bring claims against [Starz] only in your . . . individual capacity, and not as a plaintiff or class member in any purported class or representative proceeding." Starz Terms at 13.

6. In January 2023, Petitioner began the dispute-resolution process by filing an individual arbitration demand with JAMS against Starz, as directed by the JAMS Arbitration Agreement. Starz Terms at 13; *see* Huber Decl., Ex. B (Petitioner Jones' arbitration demand).

7. Thereafter, Petitioner "endeavor[ed] first to attempt to resolve the controversy or claim through mediation administered by JAMS before commencing any arbitration," as provided in the JAMS Arbitration Agreement. Starz Terms at 13.

8. Petitioner first requested that JAMS commence the dispute-resolution process for her dispute with Starz by appointing a mediator for her individual dispute.[1] Petitioner also requested that JAMS allocate any fees associated with that mediation to Starz, with Petitioner being charged a cap of $250 for the overall mediation and arbitration administered by JAMS. The JAMS *Consumer Arbitration*

---

[1] In response, JAMS identified a set of eighteen qualified mediators and transmitted the individual fee schedules for these mediators to the parties. *See* Huber Decl., Ex. C (fee schedules). The bulk of the mediators offer their services at a Daily Rate, which includes up to 8 hours of session time—but some of the mediators additionally offer their services at a Half Day Rate, which includes up to 4 hours of session time—and four of the mediators offer their services at an Hourly Rate. The median Daily Rate for the mediators is $12,750; the median of the Half Day Rates is $6,250; and the median Hourly Rate is $900. Each of the fee schedules cites the *Consumer Arbitration Minimum Standards*, making clear that the consumer has a $250 cap on arbitration-related fees.

2
PETITION TO COMPEL ARBITRATION

*Minimum Standards* states: "With respect to the cost of the arbitration, when a consumer initiates arbitration against the company, the only fee required to be paid by the consumer is $250, which is approximately equivalent to current Court filing fees. All other costs must be borne by the company, including any remaining JAMS Case Management Fee and all professional fees for the arbitrator's services."[2]

9. Starz objected, arguing that Petitioner must pay half of the mediation fees associated with her individual mediation. Daily mediation fees for mediations administered by JAMS typically start around $10,000. *See supra* note 1. Starz's position was therefore that each Petitioner needed to pay thousands of dollars in mediation fees as a condition precedent to arbitration.

10. On June 14, 2023, Petitioner notified JAMS that the parties had reached an impasse regarding payment of mediation fees and requested that JAMS commence her individual arbitration to allow an arbitrator to resolve the threshold dispute for Petitioner, in accordance with the delegation clause in the Starz Terms. In particular, Rule 11(b) of the JAMS *Comprehensive Rules* states: "Jurisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted to and ruled on by the

---

[2] *See* Huber Decl., Ex. D (*Consumer Arbitration Minimum Standards*, JAMS (July 15, 2009), (available at: https://www.jamsadr.com/consumer-minimum-standards/) ("*Minimum Standards*")).

Arbitrator." Huber Decl., Ex. E (JAMS *Comprehensive Arbitration Rules & Procedures* ("*Comprehensive Rules*")).

11. JAMS commenced arbitration proceedings as to roughly 7,300 pending arbitration demands, including Petitioner's.

12. Starz then argued that JAMS should consolidate Petitioner's individual arbitration—as well as those of more than 7,000 others—into a single consolidated arbitration under JAMS Comprehensive Rule 6(e). Huber Decl., Ex. F (Letter brief from Starz to K. Loew dated July 17, 2023).

13. Petitioner opposed such consolidation, explaining that the Starz Terms provide that the parties will arbitrate their disputes individually, and that California law guarantees each arbitration claimant the opportunity to disqualify a proposed arbitrator regardless of whether another claimant chooses to proceed with that arbitrator. Huber Decl., Ex. G (Letter brief from Keller Postman to K. Loew dated July 17, 2023).

14. JAMS ordered consolidation as requested by Starz, despite Petitioner's objections.

15. On November 15, 2023, JAMS appointed the Honorable Gail Andler and served the parties with Judge Andler's disclosures, as required under California law. *See* Cal. Civ. Proc. §§ 1281.9, 1281.91(b)(1).

4
PETITION TO COMPEL ARBITRATION

16. On November 30, 2023, some of the claimants in the consolidated arbitration served notices of disqualification of Judge Andler pursuant to California Code of Civil Procedure § 1281.91(b)(1).

17. Petitioner, along with 68 other claimants, wished to proceed to arbitration with Judge Andler and did not serve a notice of disqualification.

18. Starz did not serve a notice of disqualification of Judge Andler.

19. Nevertheless, Starz requested that JAMS either: (1) reject the notices of disqualification submitted by other claimants in the consolidated arbitration; or (2) deem Judge Andler disqualified from the entire consolidated arbitration, including from the individual arbitrations of Petitioner and the other claimants who wished to proceed to arbitration with Judge Andler. Huber Decl., Ex. H (Letter brief from Starz to S. Nevins dated Dec. 8, 2023).

20. On January 8, 2024, JAMS disqualified Judge Andler from presiding over any of the 7,282 individual arbitrations, including Petitioner's individual arbitration, despite the fact that no party to Petitioner's individual arbitration had served a notice of disqualification of Judge Andler.

21. On January 10, 2024, Petitioner wrote to Starz to request that Starz stipulate to the individual arbitrations it had agreed to. Huber Decl., Ex. I (Letter from Keller Postman to Starz dated Jan. 10, 2024).

22. On January 17, 2024, Starz responded and refused to arbitrate individually with Petitioner and the other claimants. Huber Decl., Ex. J (Letter from Starz to Keller Postman dated Jan. 17, 2024).

23. Starz's refusal to arbitrate individually with Petitioner contravenes the plain language of Starz's contract with Petitioner.

24. Under the Federal Arbitration Act, a "party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4.

25. Petitioner now asks this Court to compel Starz to arbitrate Petitioner's claims on an individual basis under the plain language of the Starz Terms, where Petitioner will participate on an equal footing with Starz in selecting an arbitrator for the individual arbitration, unfettered by the actions of other individuals with claims against Starz in their respective individual arbitrations.

## **PARTIES**

26. Petitioner Kiana Jones is, and at all times relevant was, a citizen of the State of California, currently residing in San Bernardino County, California.

27. Respondent Starz Entertainment, LLC is a Colorado Limited Liability Company with offices in Santa Monica, California.

## JURISDICTION AND VENUE

28. This Court has jurisdiction over this action under 9 U.S.C. § 4 and 28 U.S.C. §§ 1331 and 1367 because the underlying controversy involves claims arising under the laws of the United States.

29. This Court has personal jurisdiction over Starz Entertainment, LLC because it regularly conducts business in California and a substantial part of the harm, events, and conduct giving rise to Petitioner's claims occurred in California.

30. Venue is proper in this district under 28 U.S.C. § 1391 because a substantial portion of the events giving rise to the claims occurred here.

## BACKGROUND

31. Petitioner in this action signed up for a Starz account, paid Starz on a recurring basis, and streamed videos on the Starz platform, and so agreed to the JAMS Arbitration Agreement in the Starz Terms. *See* Starz Terms.

32. The JAMS Arbitration Agreement applies to "all controversies, disputes or claims arising out of or relating to these Terms." *Id*. at 13. Such claims "will be determined pursuant to the mediation and arbitration procedures of JAMS, and administered by JAMS or its successor . . . in accordance with the comprehensive rules and procedures." *Id.* California law applies. *Id.*

33. The Terms also provide, "You and Starz agree that each may bring claims against the other only in your or its individual capacity, and not as a plaintiff or class member in any purported class or representative proceeding." *Id.*

34. Starz has reneged on the JAMS Arbitration Agreement by requesting that JAMS administer the parties' agreement in a manner that is contrary to the JAMS Arbitration Agreement and California law.

35. First, with respect to fees, while the JAMS Arbitration Agreement is silent as to how the parties will pay for the Starz-mandated pre-arbitration mediation session, the JAMS *Minimum Standards* governs in all events because JAMS is administering the JAMS Arbitration Agreement.

36. The *Minimum Standards* provide: "With respect to the cost of the arbitration, when a consumer initiates arbitration against the company, the only fee required to be paid by the consumer is $250, which is approximately equivalent to current Court filing fees. All other costs must be borne by the company, including any remaining JAMS Case Management Fee and all professional fees for the arbitrator's services." Huber Decl., Ex. D. The *Minimum Standards* are mandatory under JAMS rules. *Id.* ("JAMS will administer arbitrations . . . *only if* the contract arbitration clause and specified applicable rules comply with the following minimum standards of fairness." (emphasis added)).

37. Starz argued that the $250 fee cap in the *Minimum Standards* applies only to arbitrations, not mediations that must be conducted before arbitrations. Huber Decl., Ex. K (Email from Starz to JAMS dated June 1, 2023). JAMS—not an arbitrator—preliminarily adopted Starz's position. Huber Decl., Ex. L (JAMS Letter to the Parties dated June 7, 2023). Unlike the decision of an arbitrator, JAMS

is entitled to no deference regarding its interpretation of the JAMS Arbitration Agreement or its own rules. *See, e.g.*, *Ciccio v. SmileDirectClub, LLC*, 2 F.4th 577, 587 (6th Cir. 2021) (declining to "simply defer[] to the AAA administrator's interpretation of their own rules").

38. Whether Petitioner can be required to pay half the mediation fees to potentially reach arbitration is ultimately a threshold question for an arbitrator. But Starz has stonewalled Petitioner's effort to proceed to arbitration of that issue with a mutually agreed-upon arbitrator.

39. As set forth above, the JAMS Arbitration Agreement requires that Starz pay all of the mediation fees in a mediation it requires as a pre-condition to arbitration, because the JAMS Arbitration Agreement designates JAMS as the arbitral forum, and the JAMS *Minimum Standards* cap consumer arbitration fees to $250.

40. Starz breached the JAMS Arbitration Agreement by refusing to pay all of the mediation fees in Petitioner's individual mediation.

41. A different allocation of mediation fees, where mediation is a condition precedent to arbitration, would be unconscionable. California courts recognize that "a requirement that a consumer front any . . . filing fees or other arbitration costs . . . has the potential to deter the consumer from using the [arbitration] process." *Sanchez v. Valencia Holding Co.*, 353 P.3d 741, 755 (Cal. 2015). In such cases, it

9
PETITION TO COMPEL ARBITRATION

is appropriate to use the "unconscionability doctrine . . . to protect nonindigent consumers against fees that unreasonably limit access to arbitration." *Id.*

42. Starz's argument that Petitioner must pay thousands of dollars in mediation fees as a prerequisite to arbitrating her claim, if it succeeds, would render the JAMS Arbitration Agreement unconscionable. This significant fee would unreasonably limit Petitioner's access to arbitration.

43. Thus, even if the JAMS Arbitration Agreement is properly interpreted to require an even split of mediation fees—and it does not—the portion of the JAMS Arbitration Agreement requiring that outcome is unconscionable, unenforceable, and severed from the rest of the JAMS Arbitration Agreement.

44. Second, Starz breached the JAMS Arbitration Agreement by refusing to arbitrate Petitioner's claim (including the dispute over the allocation of mediation fees) on an individual basis before the JAMS-appointed arbitrator that neither Petitioner nor Starz sought to disqualify.

45. Starz argued that disqualification notices submitted by *other* claimants should be binding on Petitioner. By Starz's logic, a disqualification notice by a single claimant out of 7,282 should disqualify the arbitrator from the other 7,281 matters. This plainly contradicts the JAMS Arbitration Agreement, which affords Petitioner the right to pursue her claim in her "individual capacity," not subject to the whims of other individuals who may have similar claims against Starz.

46. While Judge Andler was disqualified from Petitioner's arbitration by JAMS at Starz's urging, it is important to note again that it was JAMS, and not an arbitrator, that made that decision—and that unlike a decision of an arbitrator, JAMS is not entitled to deference regarding its interpretation of the JAMS Arbitration Agreement or California law.

47. Petitioner has the absolute right to disqualify a proposed arbitrator without cause. *Roussos v. Roussos*, 275 Cal. Rptr. 3d 196, 203 (2021). California law mandates that every "proposed neutral arbitrator" must submit a disclosure statement, and an arbitrator "shall be disqualified on the basis of the disclosure statement after *any party* entitled to receive the disclosure serves a notice of disqualification within 15 calendar days." Cal. Civ. Proc. § 1281.91(b)(1) (emphasis added); *see also* Cal. Civ. Proc. § 1281.9. If a party does not serve a notice of disqualification, "[t]he right of a party to disqualify a proposed neutral arbitrator . . . shall be waived[.]" *Id.* § 1281.91(c).

48. JAMS rules cannot override Petitioner's absolute and unwaivable right to choose her arbitrator. *See* JAMS, *Comprehensive Rules*, R. 4 ("If any of these Rules, or modification of these Rules agreed to by the Parties, is determined to be in conflict with a provision of applicable law, the provision of law will govern over the Rule in conflict, and no other Rule will be affected."); *Roussos*, 275 Cal. Rptr. 3d at 203.

49. Petitioner's individual arbitration against Starz is comprised of only two parties: Petitioner and Starz. Under California law, in each individual arbitration, only a "party"—Petitioner or Starz—may serve a notice of disqualification. Notices of disqualification submitted by nonparties have no bearing on Petitioner's individual arbitration with Starz.

50. Consolidation of Petitioner's individual arbitration together with other claimants' arbitrations does not change the identity of the parties in Petitioner's individual arbitration. Instead, Petitioner's arbitration is and remains a separate and independent action. *Cf. Gelboim v. Bank of Am. Corp.*, 574 U.S. 405, 413 (2015) ("Cases consolidated . . . ordinarily retain their separate identities."); *In re Korean Air Lines Co.*, 642 F.3d 685, 700 (9th Cir. 2011) ("Within the context of MDL proceedings, individual cases that are consolidated . . . remain fundamentally separate actions[.]"). Only a party—Petitioner, or an individual claimant, or Starz—in each independent action is entitled to disqualify an arbitrator in each respective action.

51. Allowing the nonparty disqualifying claimants to strike Judge Andler from Petitioner's individual arbitration would be unconscionable and in violation of California law. This would prevent any claimant from using the contractual arbitration process in the JAMS Arbitration Agreement, unless all consolidated claimants waive their absolute statutory right to disqualify an arbitrator.

52. If the JAMS Arbitration Agreement is properly read to require that arrangement—and it cannot—then that portion of the JAMS Arbitration Agreement is invalid and should be severed.

53. Petitioner filed this action in Court so that Petitioner can individually arbitrate her dispute with Starz, pursuant to the terms of the JAMS Arbitration Agreement. Starz's refusal to arbitrate under the Terms of Use is in clear violation of the law.

## CONCLUSION

54. Petitioner and Starz entered into a bilateral agreement requiring Petitioner and Starz to individually arbitrate the federal data privacy claims underlying this Petition, as well as any threshold disputes over that agreement.

55. Starz breached that agreement by refusing to comply with the Terms requiring individual arbitration proceedings.

56. Starz's refusal to comply with the JAMS Arbitration Agreement contravenes JAMS rules, California law, and federal law.

57. Petitioner has been denied her contractual right to arbitrate her claims under the Starz Terms of Use.

58. Accordingly, the Court should compel Starz to arbitrate Petitioner's claims under the Starz Terms of Use pursuant to Section 4 of the Federal Arbitration Act, 9 U.S.C. § 4.

# PRAYER FOR RELIEF

WHEREFORE, Petitioner respectfully requests that this Court enter an Order:

(1) requiring Starz to arbitrate Petitioner's claims through an individual arbitration proceeding in JAMS pursuant to the JAMS Arbitration Agreement;

(2) declaring that, to the extent the JAMS Arbitration Agreement requires Petitioner to pay mediation fees in excess of $250, that aspect of the Agreement is unconscionable, unenforceable, and severed; and

(3) declaring that, to the extent the JAMS Arbitration Agreement requires Petitioner to be subjected to the arbitrator-selection choices made by other individuals, that aspect of the Agreement is unconscionable, unenforceable, and severed.

Dated: January 31, 2024                Respectfully Submitted,

/s/ *Warren D. Postman*

**KELLER POSTMAN LLC**

Warren D. Postman (330869)
Albert Y. Pak (*pro hac vice* forthcoming)
1101 Connecticut Ave, N.W.
Suite 1100
Washington, D.C. 20036
Telephone: 202-918-1123

Patrick A. Huber (*pro hac vice* forthcoming)
150 North Riverside Plaza, Suite 4100
Chicago, IL 60606
Telephone: 312-280-5790

*Attorneys for Petitioner*