JEFFREY E. TSAI (SBN 226081)
jeff.tsai@us.dlapiper.com
DLA PIPER LLP (US)
555 Mission Street, Suite 2400
San Francisco, California 94105-2933
T: (415) 836-2500 | F: (415) 836-2501

ANGELA C. AGRUSA (SBN 131337)
angela.agrusa@us.dlapiper.com
DLA PIPER LLP (US)
2000 Avenue of the Stars
Suite 400, North Tower
Los Angeles, CA 90067
Tel. (310) 595-3000 | F: (310) 595-3300

DAVID HORNIAK (SBN 268441)
david.horniak@us.dlapiper.com
DLA PIPER LLP (US)
500 8th Street, NW
Washington, D.C. 20004
T: (202) 799-4000 | F: (202) 799-5000

*Attorneys for Respondent,*
STARZ Entertainment, LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISION

| | |
|---|---|
| KIANA JONES,<br><br>Petitioner,<br><br>vs.<br><br>STARZ ENTERTAINMENT, LLC,<br><br>Respondent. | Case No. 5:24-cv-00206-KK-DTB<br><br>**STARZ ENTERTAINMENT, LLC'S MOTION TO DISMISS PETITION TO COMPEL ARBITRATION**<br><br>Hearing: Courtroom 3<br>Date:  March 14, 2024<br>Time:  9:30 am<br>Judge:  Hon. Kenly Kiya Kato |

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR RESPECTIVE COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT on March 14, 2024 at 9:30 a.m., or as soon thereafter as the matter may be heard, in the United States District Court, Central District of California, Eastern Division, located at George E. Brown, Jr. Federal Building and United States Courthouse, 3470 12th St., Riverside, CA 92501, Courtroom 4, 3rd Floor, before the Honorable Kenly Kiya Kato, Respondent STARZ Entertainment, LLC will move, and hereby presents for hearing by the Court, this motion to dismiss Petitioner Kiana Jones's Petition to Compel Arbitration (Dkt. 1) for the reasons set forth below.

This motion is based on this notice of motion and motion, the accompanying memorandum of points and authorities and exhibits, any reply memorandum, and such additional papers and arguments as may be presented at or in connection with the hearing.

This motion is made following a conference of counsel under Central District Local Rule 7-3, which took place on Tuesday, February 6, 2024.

By: */s/ JEFFREY E. TSAI*
JEFFREY E. TSAI
ANGELA C. AGRUSA
DAVID HORNIAK

*Attorneys for Respondent,*
STARZ Entertainment, LLC

## <u>TABLE OF CONTENTS</u>

I.   INTRODUCTION ..................................................................................... 1

II.  STATEMENT OF FACTS ....................................................................... 3

    A.   Keller Submits Thousands of Arbitration Demands .......................... 3

    B.   The Parties Reach an Impasse on Pre-Arbitration Mediation ............ 4

    C.   Keller Seeks to Initiate 7,300 Arbitrations ........................................ 6

    D.   JAMS Consolidates the Demands for Arbitration .............................. 7

    E.   Keller Repeatedly Attempts to Undermine Arbitration ...................... 8

III.  LEGAL STANDARD ............................................................................ 10

IV.  ARGUMENT ......................................................................................... 10

    A.   The FAA Does Not Provide a Basis to Overrule JAMS's Decisions ....................................................................................... 10

        1.   STARZ Has Not Refused to Arbitrate ................................... 10

        2.   The Arbitration Agreement Delegates these Issues to JAMS ................................................................................... 11

        3.   Consolidation is a Procedural Question that Should Be Resolved in Arbitration ......................................................... 14

    B.   In the Alternative, the Court Should Deny Petitioner's Requests for Relief ............................................................................... 15

        1.   The STARZ TOU Permit Consolidation ................................ 15

        2.   California Law Expressly Permits Consolidated Arbitrations ........................................................................... 16

        3.   Petitioner Should Be Judicially Estopped from Seeking the Court's Ruling on Mediation Fees ................................... 19

V.   CONCLUSION ..................................................................................... 21

STARZ ENTERTAINMENT, LLC'S MOTION TO DISMISS

# TABLE OF AUTHORITIES

**Cases**                                                                        **Page(s)**

*AP-Colton LLC v. Ohaeri,*
   240 Cal. App. 4th 500 (Cal. Ct. App. 2015)...................................................20, 21

*Brennan v. Opus Bank,*
   796 F.3d 1125 (9th Cir. 2015) ................................................................................11

*Cmty. State Bank v. Strong,*
   651 F.3d 1241 (11th Cir. 2011) ..............................................................................10

*Cohen v. CBR Sys., Inc.,*
   2023 WL 8602288 (N.D. Cal. Dec. 12, 2023) .......................................................15

*Cota v. Art Brand Studios, LLC,*
   2021 WL 4864588 (S.D.N.Y. Oct. 15, 2021) .........................................................12

*Employers Ins. Co. of Wausau v. Century Indemnity Co.,*
   443 F.3d 573 (7th Cir. 2006) ..................................................................................15

*Garden Grove Cmty. Church v. Pittsburgh-Des Moines Steel Co.,*
   140 Cal. App. 3d 251 (Cal. Ct. App. 1983) ...........................................................18

*Golden v. O'Melveny & Meyers LLP,*
   2016 WL 4168853 (C.D. Cal. Aug. 3, 2016) .........................................................17

*Gordon v. G.R.O.U.P., Inc.,*
   49 Cal. App. 4th 998 (Cal. Ct. App. 1996) ............................................................18

*Howsam v. Dean Witter Reynolds, Inc.,*
   537 U.S. 79 (2002) .............................................................................................14, 15

*Indep. Ass'n of Mailbox Ctr. Owners, Inc. v. Superior Court,*
   133 Cal. App. 4th 396 (Cal. Ct. App. 2005)...........................................................18

*John Wiley & Sons, Inc. v. Livingston,*
   376 U.S. 543 (1964) ................................................................................................14

*Marx v. Gen. Rev. Corp.,*
   568 U.S. 371 (2013) ................................................................................................18

*Massey v. Knowles,*
   2006 U.S. Dist. LEXIS 102029 (D. Or. July 19, 2006) .........................................20

*Meadows v. Dickey's Barbecue Restaurants Inc.*,
   2016 WL 7386138 (N.D. Cal. Dec. 21, 2016) ............................................. 14, 15

*Oracle Am., Inc. v. Myriad Group A.G.*,
   724 F.3d 1069 (9th Cir. 2013) ................................................................. 11

*Pac. Media Workers Guild v. San Francisco Chronicle*,
   2017 WL 1861853 (N.D. Cal. May 9, 2017) ......................................... 10

*Roussos v. Roussos*,
   60 Cal. App. 5th 962 (Cal. Ct. App. 2021) ........................................... 19

*Service Employees Int'l Union, Local 1877 v. Citiscape Prop. Mgmt.*
   *Group LLC*,
   2009 WL 1086963 (N.D. Cal. Apr. 20, 2009) ....................................... 10

*Shaw's Supermarkets, Inc. v. United Food and Commercial Workers*
   *Union, Local 791*,
   321 F.3d 251 (1st Cir. 2003) .................................................................. 15

*Sovak v. Chugai Pharm. Co.*,
   280 F.3d 1266 (9th Cir. 2002), *op. amended on denial of reh'g*,
   289 F.3d 615 (9th Cir. 2002) .................................................................. 17

*Steffanie A. v. Gold Club Tampa, Inc.*,
   2020 WL 4201948 (M.D. Fla. July 22, 2020) ....................................... 12

*Vital Pharms. Inc. v. PepsiCo Inc.*,
   2022 WL 2176528 (D. Ariz. June 16, 2022) ......................................... 12

**Statutes**

9 U.S.C. § 4 ................................................................................... 2, 10, 11

18 U.S.C. § 2710 ....................................................................................... 3

Cal. Civ. Proc. Code § 1281.3 ............................................................ 17, 18

Cal. Civ. Proc. Code § 1281.91(b)(1) ............................................... *passim*

Cal. Civ. Proc. Code § 1281.91(c) ........................................................ 19

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) .......................................................................... 10

STARZ ENTERTAINMENT, LLC'S MOTION TO DISMISS

JAMS Rule 1 ................................................................................................ 7, 12

JAMS Rule 6(e) ................................................................................ 7, 12, 13, 16

JAMS Rule 11(b) ..................................................................................... 13, 14

JAMS Rule 15 ........................................................................................ 8, 9, 13

Terms of Use, HBO, https://www.hbo.com/terms-of-use .................................... 16

Terms of Use, Netflix, https://help.netflix.com/legal/termsofuse ......................... 16

Respondent STARZ Entertainment LLC ("STARZ") moves to dismiss Petitioner Kiana Jones's ("Petitioner" or "Jones") Petition to Compel Arbitration in its entirety.

## I.   INTRODUCTION

The parties in this matter are already engaged in a pending arbitration proceeding with JAMS, as required by the dispute resolution provision in STARZ's Terms of Use ("STARZ TOU"). And STARZ is, and has been, participating earnestly in that proceeding. But counsel for the Petitioner—Keller Postman LLC ("Keller")—is dissatisfied with JAMS's administrative decisions for the tens of thousands of individuals Keller purports to represent. And so Keller, on behalf of one of those claimants (Petitioner Kiana Jones), has sought improper relief from this federal court to overrule JAMS and dictate different terms for the pending arbitration. Keller's action, whether on behalf of one or thousands of claimants, is not appropriate—and this Court should dismiss it so that the parties can resume with arbitration.

Of the numerous claimants that Keller alleges it represents, the firm formally initiated arbitration in June 2023 for 7,300 of them concurrently, including Petitioner. In initiating its thousands of claims, Keller demanded that each claimant receive a separate, individual arbitration proceeding—but JAMS did not agree. After considering briefing from the parties, JAMS determined in August 2023 under its Comprehensive Arbitration Rules and Procedures ("JAMS Rules") that the 7,300 claims should proceed as a ***consolidated arbitration*** before a ***single arbitrator***—and, in doing so, rejected Keller's demand.

Unhappy with JAMS's decision, Keller proceeded to spend the next six months unsuccessfully attempting to undermine and obstruct the JAMS arbitration proceeding from moving forward. Keller's lawsuit before this Court is the culmination of its efforts. However styled, Keller's "Petition to Compel Arbitration" is not in reality seeking to compel arbitration. Indeed, the parties are

already in arbitration and have been since July 2023. Instead, Keller's ultimate goal is purely one of litigation strategy—to seek this Court's help in overruling JAMS's arbitration decisions in order to try to make it too expensive for STARZ to defend itself on the merits at arbitration and force an early settlement payday. But unfortunately for Keller, JAMS has thoroughly reviewed the STARZ TOU and its own JAMS Rules and flatly rejected the firm's tactical play. And that is why Keller has now cynically turned to this Court for leverage.

The Court should dismiss the Petition for the following reasons.

First, Petitioner and STARZ are already engaged in arbitration. A party may only invoke Section 4 of the Federal Arbitration Act to compel arbitration where the other party has refused to arbitrate. That has not happened here.

Second, Petitioner asks the Court to overrule—improperly—decisions that the contract between Petitioner and STARZ (the STARZ TOU dated December 12, 2019) specifically delegated to JAMS. Each and every one of the decisions about which Petitioner (via Keller) now complains is something the parties' binding arbitration provision assigned to JAMS—whether it is the decision to consolidate arbitration demands, the ruling that arbitrator disqualification applies to the entire proceeding, or the determination that mediation procedure and fee disputes have been delegated to the arbitrator. Well-settled precedent requires the Court to honor and enforce the parties' delegation of these issues to JAMS.

Third, even if the questions that Keller and Petitioner now raise were not delegated to JAMS by the STARZ TOU, the Petition still impermissibly asks the Court to decide procedural questions that courts have repeatedly held are presumptively for arbitrators, not courts, to decide.

Fourth, the STARZ TOU do not require separate, individual arbitrations as Keller and Petitioner contend. Indeed, the words "individual arbitration" do not appear anywhere in the STARZ TOU. While the STARZ TOU prohibit class and other *representative* arbitrations, they permit *consolidated* arbitrations in which

every party continues to pursue its own claims on its own behalf.

Fifth, to the extent the California Arbitration Act applies at all (and it does not), consolidation does not in any way conflict with the separate right to disqualify an arbitrator under California Civil Procedure Code section 1281.91(b)(1). In fact, Petitioner's argument, if accepted, would nullify completely a California statute which *expressly permits* consolidated arbitrations. And Petitioner's attempt to transform that limited right to disqualify into an "absolute and unwaivable right to *choose her own arbitrator*" (Pet. ¶ 48) lacks any basis in law.

And, sixth, Petitioner's argument that the mediation fee dispute should be decided by the Court is precluded by judicial estoppel because Petitioner took the opposite position before JAMS and won.

## II.   STATEMENT OF FACTS

### A.   Keller Submits Thousands of Arbitration Demands

In January 2023, Keller submitted to JAMS, on behalf of tens of thousands of individual claimants (including Petitioner), identical demands for arbitration against STARZ. *See* Pet., ¶ 6; *id.*, Ex. L at 1 (June 7, 2023 Letter from S. Eisner to Counsel); Pet., Ex. J, Ex. 4 at 2 (Aug. 8, 2023 Letter from S. Eisner to Parties).[1] Those demands all identically allege violations of the Video Privacy Protection Act ("VPPA") (18 U.S.C. § 2710) and its state law analogues. *See* Pet., Ex. B at 5, 11–13 (Jones Arbitration Demand). The demands assert that STARZ violated those statutes by deploying on its website a software tool called the "Meta Pixel." *Id*. at 7–10. They allege that STARZ uses the Meta Pixel to send to Facebook information that can be used to identify the video content claimants watched. *Id*. at 7–10. STARZ disputes these allegations.

---

[1] The exhibits to the Petition are confidential arbitration submissions; although we cite portions of them herein, they also contain information that is not required for this proceeding.

Each arbitration demand concedes that the claimant agreed to and is bound by the same version of the STARZ TOU. *See* Pet., ¶ 3. And the STARZ TOU require arbitration with JAMS. *See* Pet., Ex. A at ¶ 27 (STARZ TOU). The STARZ TOU also require that "[t]he parties will endeavor first to attempt to resolve the controversy or claim through mediation administered by JAMS before commencing any arbitration." *Id.* Petitioner does not dispute that she assented to and is bound by the STARZ TOU. *See* Pet., ¶ 3. And significantly, she does not challenge the STARZ TOU as unconscionable. *Id.*

The arbitration provision, in relevant part, provides as follows:

> GOVERNING LAW; ARBITRATION. These Terms of Use will be governed by and construed in accordance with the laws of the State of California. ***All controversies, disputes or claims arising out of or relating to these Terms of Use will be determined pursuant to the mediation and arbitration procedures of JAMS, and administered by JAMS or its successor ("JAMS") in accordance with the comprehensive rules and procedures, including the optional appeal procedure, of JAMS ("JAMS Rules"), as modified by these Terms of Use. The parties will endeavor first to attempt to resolve the controversy or claim through mediation administered by JAMS before commencing any arbitration.***
>
> . . .
>
> ***You and Starz agree that each may bring claims against the other only in your or its individual capacity, and not as a plaintiff or class member in any purported class or representative proceeding.***

Pet., Ex. A at ¶ 27 (STARZ TOU) (emphases added).

After submitting a multitude of identical arbitration demands against STARZ, Keller "requested stays while the parties pursued mediation." Pet., Ex. L at 1 (June 7, 2023 Letter from S. Eisner to Counsel).

## B.     The Parties Reach an Impasse on Pre-Arbitration Mediation

To date, the required pre-arbitration mediation has not yet occurred as to

Petitioner or any other claimant. *See* Pet., ¶¶ 7, 10; Pet., Ex. F, Ex. 6 at 1 (June 14, 2023 Email from A. Pak to S. Nevins). That is because STARZ and Keller were unable to reach agreement on how the mediation should be conducted (on a consolidated basis versus individually) and how mediation fees should be split (50/50 versus STARZ paying essentially all fees). *See* Pet., Ex. F, Ex. 4 at 1–2, 5 (May 31–June 1, 2023 Correspondence Between S. Duddy, D. Horniak, and S. Nevins); Pet., Ex. F, Ex. 6 at 1 (June 14, 2023 Email from A. Pak to S. Nevins).

The parties' impasse was not due to any refusal by STARZ to mediate. STARZ has been willing—and remains willing—to participate in a single, consolidated mediation with any claimants who participate in the consolidated arbitration (thereby, effectively obviating the issue of a mediation fee split). *See* Pet., Ex. J, Ex 3 at 3 n.3 (July 31, 2023 STARZ Letter Brief to K. Loew) ("STARZ has always been open to a consolidated mediation proceeding *provided that* Keller agrees to a similarly consolidated arbitration proceeding") (emphasis in original). STARZ has also maintained that, in the alternative, it would participate in individual pre-arbitration mediations where the parties split the mediation fees 50/50. *See* Pet., Ex. F, Ex. 4 at 1 (June 1, 2023 Email from D. Horniak to S. Nevins). What STARZ has objected to is (1) participating in a single, consolidated mediation followed by thousands of *individual* arbitrations, and (2) Keller's attempt to saddle STARZ with the vast majority of the fees for 7,300 individual mediations.

On May 31, 2023, Keller requested that JAMS initiate individual mediations on behalf of 7,300 claimants. *See* Pet., Ex. F, Ex. 3 at 1 (May 31, 2023 Email from S. Duddy to S. Nevins). Keller further requested that JAMS order STARZ to pay all mediation fees in excess of $250 and "unilaterally appoint, for each Claimant, a mediator." *Id.* STARZ opposed that request on the grounds that (1) the parties should split mediation fees 50/50, as is customary in mediation practice, and (2) the parties should first attempt to work together to identify

mutually acceptable mediators and a cost-effective mediation procedure. *See* Pet., Ex. F, Ex. 4 at 1–2 (June 1, 2023 Email from D. Horniak to S. Nevins).

On June 7, 2023, JAMS rejected Keller's request to initiate 7,300 JAMS-administered individual mediations, stating that (1) "[m]ediation and arbitration represent distinct ADR processes," (2) "the dispute resolution clause requires mediation before arbitration," and (3) "[a]s such, the arbitration demands will remain on hold while the parties proceed with the mediation process." Pet., Ex. L at 1 (June 7, 2023 Letter from S. Eisner to Counsel).

### C.    Keller Seeks to Initiate 7,300 Arbitrations

Having failed to persuade JAMS to rule on how mediations should be conducted, Keller next sought to initiate 7,300 individual *arbitrations*—before any mediations had occurred—so that the arbitrator could resolve disputes over mediation procedure. Pet., Ex. F, Ex. 6 at 1 (June 14, 2023 Email from A. Pak to S. Nevins). On June 14, 2023, Keller notified JAMS that its claimants would "not participate in any mediation that requires them to pay half of the mediation fees and instead invoke their rights to arbitrate that dispute." *Id.* Taking the position that, "[u]nder the JAMS rules designated in the arbitration agreement, [the mediation fee] dispute is for a JAMS arbitrator to resolve," Keller demanded that JAMS "issue invoices to the parties to initiate the arbitration process over the parties' disputes, including over the interpretation of [the] agreement under which [claimants] seek arbitration." *Id.*

Through this demand, Keller sought to impose JAMS's $1,750 arbitration initiation fee on STARZ for each of Keller's 7,300 claimants. *See* Pet., Ex. D at 1 (JAMS Policy on Consumer Arbitrations Pursuant to Pre-Dispute Clauses); Pet., Ex. C at 3–21 (JAMS General Fee Schedules). If JAMS initiated each of those 7,300 arbitrations separately, STARZ would have been invoiced for $12,775,000 in arbitration initiation fees *alone*—despite the fact that *none* of these claimants had engaged with STARZ in a pre-arbitration mediation as mandated by the

STARZ TOU. *Id.*; Pet., Ex. F, Ex. 6 at 1 (June 14, 2023 Email from A. Pak to S. Nevins).

On July 6, 2023, JAMS granted Keller's request over STARZ's objection. *See* Pet., ¶ 11; Pet., Ex. F, Ex. 7 at 1 (July 6, 2023 Letter from K. Loew to Parties). JAMS stated that it "will proceed with administration" of claimants' claims. Pet., Ex. F, Ex. 7 at 1 (July 6, 2023 Letter from K. Loew to Parties). JAMS further requested that the parties submit simultaneous briefing to the JAMS National Arbitration Committee ("NAC")[2] on whether the arbitrations should be consolidated under JAMS Rule 6(e). *Id.*

Over the next four weeks, the parties submitted their respective positions on consolidation. *See* Pet., ¶¶ 12–13; Pet., Ex. F (STARZ Opening Brief); Pet., Ex. G (Keller Opposition Brief); Pet., Ex. J, Ex. 3 (STARZ Reply Brief).

### D. JAMS Consolidates the Demands for Arbitration

On August 8, 2023, after "receiv[ing] and review[ing] the parties' positions on the issue of consolidation," the NAC determined that the 7,300 demands for arbitration should be consolidated. *See* Pet., ¶ 14; Pet., Ex. J, Ex. 4 at 1–3 (August 8, 2023 Letter from S. Eisner to Parties). The NAC determined that the STARZ TOU "do not prohibit the consolidation of multiple filings," that "California law on arbitrator selection and disqualification does not preclude the consolidation of these Demands," and that "consolidation would enable fair, efficient, and timely adjudication of these disputes." Pet., Ex. J, Ex. 4 at 2–3. As a result, JAMS

---

[2] JAMS Rule 1 states that "[t]he authority and duties of JAMS as prescribed in the Agreement of the Parties and in these Rules shall be carried out by the [NAC] or the office of JAMS General Counsel or their designees." Pet., Ex. E at 4. The NAC is "a body independent of the arbitrator" that "decides issues of controversy that may arise when the arbitrator is unavailable, has not yet been appointed, or the issue involves the arbitrator, such as claims of conflict." *See* www.jamsadr.com/arbitration?tab=overview. It "acts as a safeguard to the fairness of the arbitration process." *Id.*

invoiced STARZ for a single, consolidated arbitration initiation fee of $1,750.

### E.    Keller Repeatedly Attempts to Undermine Arbitration

Following JAMS's ruling on consolidation, which appears to have undermined Keller's hoped-for arbitration initiation-fee settlement leverage, Keller has consistently tried to derail and delay a "fair, efficient, and timely adjudication of these disputes." Pet., Ex. J, Ex. 4 at 3 (Aug. 8, 2023 Letter from S. Eisner to Parties); *see generally* Pet., Ex. J, Ex. 5 at 4 (Sept. 27, 2023 Email from P. Huber to S. Nevins); Pet., Ex. J, Ex. 8 at 1 (Nov. 30, 2023 Email from P. Huber to S. Nevins); Pet., Ex. J, Ex. 10 at 1 (Dec. 15, 2023 Letter from P. Huber to S. Nevins).

First, on September 27, 2023, when JAMS requested the parties' positions on where the consolidation arbitration hearing should be conducted, Keller argued that each claimant required a "hometown arbitration"—that is, to the extent each claimant did not receive a hearing in his or her hometown, the arbitration agreement was unconscionable and necessitated reversal of the consolidation decision. *See* Pet., Ex. J, Ex. 5 at 4 (Sept. 27, 2023 Email from P. Huber to S. Nevins). STARZ opposed this argument on multiple grounds. *See* Pet., Ex. J, Ex. 5 at 2–3 (September 27, 2023 Email from D. Horniak to S. Nevins). After hearing the parties' arguments yet again, JAMS declined to reverse the consolidation decision. *See* Pet., Ex. J, Ex. 6 at 1 (Oct. 23, 2023 Letter from S. Eisner to Parties). JAMS deferred to the arbitrator the decision on the issue of arbitration location for an in-person hearing. *Id.*

Next, the parties proceeded to strike and rank arbitrators from a list JAMS provided, and JAMS appointed an arbitrator that neither party had struck. *See* Pet., Ex. J, Ex. 7 at 1 (Notice of Appointment of Arbitrator Gail Andler). On November 30, 2023, fifteen days after JAMS circulated the arbitrator's disclosures, Keller served boilerplate notices of disqualification under California Civil Procedure Code section 1281.91(b)(1) for 7,213 of the 7,282 claimants remaining in the arbitration. *Id.*; *see also* Pet., Ex. E at 9 (JAMS Rule 15); Pet., Ex. J, Ex. 13

(January 8, 2024 Letter from S. Eisner to Parties).

Those notices did not explain what information in the disclosure statement supported disqualification, and Keller repeatedly refused to give the reason(s). *See* Pet., Ex. J, Ex. 8 at 2 (Nov. 30, 2023 Letter from W. Postman to S. Nevins); Pet., Ex. J, Ex. 10 (Dec. 15, 2023 Letter from P. Huber to S. Nevins). Instead, Keller merely contended that the "[n]otices were timely served upon receipt of the required disclosure statement" and that claimants had the "unqualified" right to remove a proposed arbitrator. Pet., Ex. J, Ex. 10 at 1 (Dec. 15, 2023 Letter from P. Huber to S. Nevins). STARZ opposed the disqualification on the grounds that it was a pretext to fracture the consolidated arbitration and not actually based on any information in the arbitrator's disclosure statement. STARZ also argued that, if JAMS concluded the disqualification was valid, then the arbitrator must be disqualified from the entire consolidated arbitration under JAMS Rule 15(f) (and not just as to those claimants who had served notices of disqualification). Pet., Ex. J, Ex. 9 at 1–3 (Dec. 8, 2023 Letter from D. Horniak to S. Nevins).

On January 8, 2024, the NAC concluded that JAMS would honor the requests for disqualification by "appoint[ing] a replacement arbitrator pursuant to the parties' previously submitted strikes and ranks." Pet., Ex. J, Ex. 13 (January 8, 2024 Letter from S. Eisner to Parties); *see also* Pet., ¶ 20. The NAC also agreed with STARZ that the arbitrator had been disqualified from the entire consolidated arbitration, not just part of it. Accordingly, JAMS did not split the arbitration into multiple proceedings as Keller had sought. *See* Pet., ¶¶ 17, 20. Instead, *all* 7,282 claims would remain consolidated in a single arbitration before a new arbitrator. *See* Pet., ¶ 20; Ex. J, Ex. 13 (January 8, 2024 Letter from S. Eisner to Parties).

Two days later, Keller sent STARZ a letter demanding that STARZ "stipulate to resolve the instant disputes with Claimants through individual arbitrations, and not in a consolidated arbitration." Pet., Ex. I at 1 (Letter from P. Huber to D. Horniak); *see also* Pet., ¶ 21. STARZ declined to stipulate and

reiterated its willingness to proceed immediately with the consolidated arbitration. Pet., Ex. J at 3 (January 17, 2024 Letter from D. Horniak to P. Huber and A. Pak); *see also* Pet., ¶ 22.

On January 31, 2024, Keller filed this Petition to Compel Arbitration.

## III.   LEGAL STANDARD

Under the Federal Arbitration Act ("FAA"), "[a] party aggrieved by the alleged failure, neglect or refusal of another to arbitrate under a written agreement for arbitration" may "petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4.

Although styled as a "petition," the pleading is still subject to the Federal Rules of Civil Procedure, including motions to dismiss under Rule 12(b)(6). *See, e.g.*, *Pac. Media Workers Guild v. San Francisco Chronicle*, 2017 WL 1861853, at *2 (N.D. Cal. May. 9, 2017) (resolving Rule 12(b)(6) motion to dismiss petition to compel arbitration); *Service Employees Int'l Union, Local 1877 v. Citiscape Prop. Mgmt. Group LLC*, 2009 WL 1086963, at *1 (N.D. Cal. Apr. 20, 2009) (same). Under Rule 12(b)(6), the Court must dismiss the petition if it fails to state a claim upon which relief can be granted—that is, if there is no basis to compel the arbitration that the petition seeks. *See* Fed. R. Civ. P. 12(b)(6).

## IV.   ARGUMENT

### A.   The FAA Does Not Provide a Basis to Overrule JAMS's Decisions

#### 1.   STARZ Has Not Refused to Arbitrate

To invoke Section 4 of the FAA, Petitioner must demonstrate she has been "aggrieved" by STARZ's "failure, neglect, or refusal [] to arbitrate under a written agreement for arbitration." *See* 9 U.S.C. § 4; *Cmty. State Bank v. Strong*, 651 F.3d 1241, 1256 (11th Cir. 2011) ("After all, FAA § 4 is only triggered when one party has expressed a 'refusal'[, failure, or neglect] to arbitrate, and the other party has been thereby 'aggrieved.'") (alterations in original).

STARZ has not refused to arbitrate Petitioner's claims. To the contrary, Petitioner admits that she and STARZ are currently arbitrating her claims. *See* Pet., ¶ 11 ("JAMS commenced arbitration proceedings as to roughly 7,300 pending arbitration demands, *including Petitioner's*.") (emphasis added). On July 6, 2023, JAMS commenced the 7,300 arbitrations Keller initiated against STARZ. *See* Pet., Ex. F, Ex. 7 at 1 (July 6, 2023 Letter from K. Loew to Parties). After thorough consideration of the parties' arguments, JAMS determined Petitioner's claim should proceed in a consolidated arbitration, *see* Pet., ¶ 14, and thereafter appointed Judge Gail Andler to preside over the consolidated arbitration. *Id.* at ¶ 15. While Keller served disqualification notices for Judge Andler on behalf of 7,214 claimants, STARZ did not. *See id.* at ¶ 18. Indeed, the Petition lacks any allegation that STARZ has tried to subvert JAMS's administration of Petitioner's arbitration in any way. Nor could it, because STARZ has fully participated in the pending arbitration proceeding.

Petitioner therefore fails to meet Section 4's most basic requirement that the Respondent has "fail[ed], neglect[ed], or refus[ed]" to arbitrate her dispute. *See* 9 U.S.C. § 4. Her Petition should be dismissed on this basis alone.

## 2. The Arbitration Agreement Delegates these Issues to JAMS

The Petition should also be dismissed because the STARZ TOU delegate to JAMS the instant decisions on consolidation, arbitrator selection, and interpretation of the JAMS Rules—and Petitioner now seeks to have the Court improperly intervene and overrule JAMS's decisions on those issues. *See* Pet., ¶¶ 11, 14; Ex. F, Ex. 7 at 1 (July 6, 2023 Letter from K. Loew to Parties).

As an initial matter, courts routinely enforce contractual agreements to delegate. *See, e.g.*, *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (holding that incorporation of the AAA rules was clear and unmistakable evidence that parties delegated to arbitrator issues of arbitration clause validity and arbitrability); *Oracle Am., Inc. v. Myriad Group A.G.*, 724 F.3d 1069, 1074 (9th

Cir. 2013) ("Virtually every circuit to have considered the issue has determined that incorporation of the American Arbitration Association's (AAA) arbitration rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability."). Importantly, courts also do not review an arbitration provider's interpretation of its own rules. *See Vital Pharms. Inc. v. PepsiCo Inc.*, 2022 WL 2176528, at *3 n.3 (D. Ariz. June 16, 2022) ("The Court has no warrant to disturb the AAA's interpretation of its own rules"); *Steffanie A. v. Gold Club Tampa, Inc.*, 2020 WL 4201948 (M.D. Fla. July 22, 2020) (declining to order the AAA to reopen an arbitration it previously closed under its AAA's Rules); *Cota v. Art Brand Studios, LLC*, 2021 WL 4864588 (S.D.N.Y. Oct. 15, 2021) (quoting *Steffanie A.* for the proposition that a "district court can[not] force an independent arbitration organization such as the AAA to ignore its own rules and re-open a case that it has previously closed").

Here, the STARZ TOU expressly provides that "[a]ll controversies, disputes or claims arising out of or relating to these Terms of Use will be determined pursuant to the mediation and arbitration procedures of JAMS, *and administered by JAMS or its successor ("JAMS") in accordance with the comprehensive rules and procedures*." Pet. Ex. A at ¶ 27 (STARZ TOU) (emphases added). All JAMS did here was "administer" the arbitrations Keller initiated "in accordance with the comprehensive rules and procedures":

- <u>Consolidation.</u>  Under JAMS Rule 6(e), JAMS has the authority to consolidate arbitrations. *See* Pet., Ex. E, JAMS Rules, at 7 ("Unless the Parties' Agreement or applicable law provides otherwise, JAMS, if it determines that the Arbitrations so filed have common issues of fact or law, may consolidate Arbitrations . . . ."). Rule 6(e) expressly delegates this determination to "JAMS"—*i.e.*, not to the arbitrator—and JAMS Rule 1(c), in turn, provides that "[t]he authority and duties of JAMS as prescribed in the Agreement of the Parties and in these Rules shall be carried out by the JAMS National Arbitration

STARZ ENTERTAINMENT, LLC'S MOTION TO DISMISS

Committee ('NAC') . . . ." Pet., Ex. E at 4. Here, the NAC simply determined that under JAMS Rule 6(e), consolidation is appropriate because the arbitrations have "common issues of fact or law" and "the Parties' Agreement or applicable law" does not prohibit consolidation.

- Single Party. Under JAMS Rule 15(f), JAMS may treat all parties whose interests are not adverse (i.e., all claimants in a consolidated proceeding) as one party for the purposes of arbitrator selection. *See* Pet., Ex. E, JAMS Rules, at 10 ("Entities or individuals whose interests are not adverse with respect to the issues in dispute shall be treated as a single Party for purposes of the Arbitrator selection process."). Further, JAMS determines whether parties are not adverse. *See id.* ("JAMS shall determine whether the interests between entities or individuals are adverse for purposes of Arbitrator selection, considering such factors as whether they are represented by the same attorney and whether they are presenting joint or separate positions at the Arbitration."). Here, the NAC simply applied these rules to conclude that a notice of disqualification from any claimant disqualifies the arbitrator from the entire consolidated arbitration.

- Jurisdiction and Arbitrability. Under JAMS Rule 11(b), "[j]urisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought . . . shall be submitted to and ruled on by the Arbitrator." Pet., Ex. E, JAMS Rules, at 8. In June 2023, Keller cited JAMS Rule 11(b) to argue to JAMS that, "[u]nder the JAMS rules designated in the arbitration agreement, [the parties' dispute over mediation fees] is for a JAMS arbitrator to resolve." Pet., Ex. F, Ex. 6 at 1 (June 14, 2023 Email from A. Pak to S. Nevins). JAMS agreed with Keller and initiated arbitration over STARZ's objection. *See* Pet., ¶ 11; Ex. F, Ex. 7 at 1 (July 6, 2023 Letter from K. Loew to Parties). Here, all JAMS did was accept Keller's argument, concluding that the parties' dispute over mediation fees is a matter of "interpretation . . . of the agreement under which Arbitration is

sought" that JAMS Rule 11(b) delegates to the arbitrator.

Thus, in consolidating Petitioner's demand for arbitration with other Keller demands, concluding that notices of disqualification disqualified the arbitrator from the entire consolidated proceeding, and referring the dispute on mediation fees to the arbitrator (at Petitioner's counsel's request), JAMS simply administered the arbitration "in accordance with the [JAMS] comprehensive rules and procedures," exactly as the STARZ TOU require. The FAA provides no basis to overrule those decisions.

### 3.   Consolidation is a Procedural Question that Should Be Resolved in Arbitration

But even if the parties had not expressly delegated these issues to JAMS, the Petition would still need to be dismissed because it impermissibly asks the Court to decide procedural questions that courts have repeatedly held are presumptively for arbitrators, not courts, to decide. In deciding a petition to compel arbitration, "[o]nce it is determined . . . that the parties are obligated to submit the subject matter of the dispute to arbitration, 'procedural' questions which grow out of the dispute and bear on its final disposition should be left to the arbitrator." *Meadows v. Dickey's Barbecue Restaurants Inc.*, 2016 WL 7386138, at *2 (N.D. Cal. Dec. 21, 2016) (quoting *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 557 (1964); *see also Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002) (noting that procedural questions "are presumptively *not* for the judge, but for an arbitrator, to decide") (emphasis in original) (citing *John Wiley*, 376 U.S. at 557–58).

For example, in *Meadows*, plaintiffs alleged in a motion to compel a consolidated arbitration that a franchisor made false and misleading statements. *See Meadows*, 2016 WL 7386138, at *1. The court "refuse[d] to entertain" the motion, holding that "consolidation is a procedural question for the arbitrator." *Id.* at *2. The court reasoned that, like the availability of class arbitration, "California

courts have similarly held that consolidation is a procedural issue for the arbitrator to decide." *Id.* at *3.[3] The court further held that, "[t]o the extent that Plaintiffs believe that their claims should be consolidated, each Plaintiff . . . can request consolidation per the AAA's rules." *Meadows*, 2016 WL 7386138, at *3; *see also Cohen v. CBR Sys., Inc.*, 2023 WL 8602288, at *2 (N.D. Cal. Dec. 12, 2023) (consolidation "is a pure procedural question for the arbitrator to decide if and when it is properly raised in the arbitration.").

### B.    In the Alternative, the Court Should Deny Petitioner's Requests for Relief

For the reasons stated above, the Court can and should dismiss the Petition on procedural grounds. However, Petitioner's arguments also fail on their merits.

### 1.    The STARZ TOU Permit Consolidation

Petitioner is wrong that the STARZ TOU require individual, not consolidated, arbitrations. *See* Pet., ¶ 23. The STARZ TOU do not even contain the words "individual arbitration." *See* Pet., Ex. A. Rather, as JAMS has repeatedly concluded, a plain reading of the STARZ TOU shows that the STARZ TOU only prohibit claimants from bringing claims **on behalf of others**—not consolidation of arbitration demands. *See* Pet., Ex. A at ¶ 27 (STARZ TOU) ("[User] and [STARZ] agree that each may bring claims against the other only in [user's] or its individual capacity, and not as a plaintiff or class member in any purported class or representative."). In a consolidated arbitration, each individual

---

[3] *See also Employers Ins. Co. of Wausau v. Century Indemnity Co.*, 443 F.3d 573, 577 (7th Cir. 2006) ("We find based on *Howsam* that the question of whether an arbitration agreement forbids consolidated arbitration is a procedural one, which the arbitrator should resolve."); *Shaw's Supermarkets, Inc. v. United Food and Commercial Workers Union, Local 791*, 321 F.3d 251, 254 (1st Cir. 2003) ("The issue before us is who should make the determination as to whether to consolidate the three grievances into a single arbitration: the arbitrator or a federal court. Since each [grievance] is itself concededly arbitrable, we think the answer is clear. Under [*Howsam*], this is a procedural matter for the arbitrator.")

claimant still brings its "claims against [STARZ] only in [its] individual capacity" and not on behalf of any other claimant. Thus, a claimant does not participate in a "purported class or representative proceeding," and nothing in the STARZ TOU prohibits consolidation.[4] To the contrary: the STARZ TOU expressly authorize consolidation by stating that arbitrations will be conducted and administered pursuant to the JAMS Rules—including JAMS Rule 6(e), which expressly authorizes JAMS to consolidate arbitrations. *See* Pet., Ex. E, JAMS Rules, at 7.

## 2.   California Law Expressly Permits Consolidated Arbitrations

The Petition offers the strawman argument that a party's right to disqualify a proposed arbitrator under California Code of Civil Procedure section 1281.91(b)(1) somehow negates JAMS's ability to consolidate arbitrations. Pet., ¶ 44. This argument is incorrect.

First, by invoking the FAA in her Petition, Petitioner has conceded that the FAA—and not the California Arbitration Act (which includes section 1281.91(b)(1))—applies here. Although the STARZ TOU provide that "[t]hese Terms of Use will be governed by and construed in accordance with the laws of the State of California," Pet., Ex. A (STARZ TOU), ¶ 27, they also provide that "[a]ll controversies, disputes or claims arising out of or relating to these Terms of Use will be determined pursuant to the mediation and arbitration procedures of

---

[4] When parties want to prohibit consolidation, they say so expressly. There are countless examples of arbitration clauses that expressly prohibit consolidation, including several of other streaming services. *See, e.g.,* Terms of Use, Netflix, https://help.netflix.com/legal/termsofuse ("[U]nless both you and Netflix agree otherwise, the arbitrator may not *consolidate* more than one person's claims with your claims . . . ." (emphasis added)); Terms of Use, HBO, https://www.hbo.com/terms-of-use ("[U]nless both you and we agree otherwise, the arbitrator may not *consolidate* more than one person's claims . . . ." (emphasis added)). In contrast, the word "consolidate" never appears in the STARZ TOU. If STARZ had intended to prohibit consolidation, it would have said so. It did not.

JAMS, and administered by JAMS or its successor ('JAMS') in accordance with the comprehensive rules and procedures, including the optional appeal procedure, of JAMS ('JAMS Rules'), as modified by these Terms of Use." *Id.*

In such cases, "the FAA and JAMS Rules govern the rules of arbitration." *Golden v. O'Melveny & Meyers LLP*, 2016 WL 4168853, at *8–16 (C.D. Cal. Aug. 3, 2016) (holding a "choice-of-law clause, stating that it 'will be governed by the internal law . . . of the State of California,'" did not "trigger the blanket application of [California's] procedural law."); *see also Sovak v. Chugai Pharm. Co.*, 280 F.3d 1266, 1270 (9th Cir. 2002), *op. amended on denial of reh'g*, 289 F.3d 615 (9th Cir. 2002) ("[A] general choice-of-law clause within an arbitration provision does not trump the presumption that the FAA supplies the rules for arbitration."). Thus, Petitioner does not even have grounds to disqualify the arbitration under CAA section 1281.91(b)(1).

Second, even if the California Arbitration Act applied here, Petitioner's extraordinarily expansive interpretation of section 1281.91(b)(1) is wrong. Petitioner's interpretation conflicts with, and asks the Court to nullify entirely, a different provision of the same law—section 1281.3—in which the California Legislature expressly authorized consolidation of arbitrations. *See* Cal. Civ. Proc. Code § 1281.3. Section 1281.3 states:

> A party to an arbitration agreement may petition the court to consolidate separate arbitration proceedings, and the court may order consolidation of separate arbitration proceedings when:
>
> (1) Separate arbitration agreements or proceedings exist between the same parties; or one party is a party to a separate arbitration agreement or proceeding with a third party; and
>
> (2) The disputes arise from the same transactions or series of related transactions; and

> (3) There is common issue or issues of law or fact creating the possibility of conflicting rulings by more than one arbitrator or panel of arbitrators.

Cal. Civ. Proc. Code § 1281.3.

Section 1281.3 reflects California's "strong policy favoring consolidating arbitrations involving common issues of law and fact." *Gordon v. G.R.O.U.P., Inc.*, 49 Cal. App. 4th 998, 1006 (Cal. Ct. App. 1996) (quoting *Garden Grove Cmty. Church v. Pittsburgh-Des Moines Steel Co.*, 140 Cal. App. 3d 251, 262 (Cal. Ct. App. 1983)). This is due to "at least three important aims of this policy: the efficient settling of private disputes, judicial economy, and the avoidance of contrary results.'" *Id.*

Under Petitioner's reading of section 1281.91(b)(1), no arbitration governed by California law could ever be consolidated because it would interfere with each claimant's right to disqualify the arbitrator independently from any other claimant. Tellingly, Petitioner cites no authority in support—and that is because none exists. Such an interpretation violates basic principles of statutory construction by rendering all of section 1281.3 surplusage. *See, e.g.*, *Marx v. Gen. Rev. Corp.*, 568 U.S. 371, 386 (2013) ("[T]he canon against surplusage is strongest when an interpretation would render superfluous another part of the same statutory scheme."). Keller's interpretation also conflicts with California court decisions recognizing that consolidated arbitrations are permissible. *See, e.g.*, *Indep. Ass'n of Mailbox Ctr. Owners, Inc. v. Superior Court*, 133 Cal. App. 4th 396, 410 (Cal. Ct. App. 2005) ("[G]roup arbitration can be a valid means of dispute resolution where the statutory and case law criteria for consolidation are satisfied.").

In fact, there is no conflict between section 1281.91(b)(1) and consolidation. Section 1281.91(b)(1) does not confer an unwaivable right "to choose" an arbitrator. Rather, it confers a *waivable* right to *disqualify* an arbitrator. *See* Cal. Civ. Proc. Code § 1281.91(b)(1)–(c) (discussing disqualification and

stating circumstances under which right can be waived). All parties, including STARZ, have that right. *See id.* Here, JAMS appointed Judge Andler pursuant to the STARZ TOU and JAMS Rules. *See* Pet., ¶ 15. At that point, any party had the right to seek to disqualify that "proposed neutral arbitrator" on the basis of the proposed arbitrator's disclosure statement within 15 days of receipt of the disclosure statement. Cal. Civ. Proc. Code § 1281.91(b)(1). In a consolidated arbitration, each party—including every claimant—*still* has that right. The fact that one claimant may disqualify an arbitrator that another claimant would prefer to keep is of no moment under section 1281.91(b)(1). Indeed, the effect would be no different than if STARZ disqualified the very same arbitrator, which it unquestionably has the right to do.

This conclusion is fully consistent with the decision in *Roussos v. Roussos*, 60 Cal. App. 5th 962, 971 (Cal. Ct. App. 2021), which Keller cites in its Petition. *See* Pet., ¶ 47 (citing *Roussos* for the proposition that "Petitioner has the absolute right to disqualify a proposed arbitrator without cause."). In *Roussos*, the issue was whether the parties could "contract away" or limit the right to disqualify an arbitrator under section 1281.91(b)(1). *See id.* at 967 ("[W]e conclude the parties cannot contract away California's statutory protections for parties to an arbitration, including mandatory disqualification of a proposed arbitrator . . . ."). Here, by contrast, there is no argument that any party has "contract[ed] away" or otherwise limited its right to disqualify an arbitrator. Every party has very same rights in a consolidated arbitration. But Petitioner's failure to disqualify Judge Andler does not mean she had the right "to choose her arbitrator." Pet., ¶ 48.

### 3.   Petitioner Should Be Judicially Estopped from Seeking the Court's Ruling on Mediation Fees

Keller's request that this Court rule on the issue of mediation fees should be rejected under the doctrine of judicial estoppel. Under the doctrine, a party is precluded "from gaining an advantage by taking one position, and then seeking a

second advantage by taking an incompatible position." *AP-Colton LLC v. Ohaeri*, 240 Cal. App. 4th 500, 507 (Cal. Ct. App. 2015). The doctrine applies to positions taken "in judicial or quasi-judicial administrative proceedings" such as arbitration. *Id.* at 507; *see also Massey v. Knowles*, 2006 U.S. Dist. LEXIS 102029, at *7 (D. Or. July 19, 2006) ("This court finds that judicial estoppel should preclude [Petitioners] from taking inconsistent positions in the arbitration and in this proceeding.").

Here, Keller (on behalf of Petitioner and other claimants) demanded in June 2023 that JAMS initiate arbitration on the issue of how mediation fees should be split. *See* Pet., ¶ 10; Ex. F, Ex. 6 at 1 (June 14, 2023 Email from A. Pak to S. Nevins) ("Claimants will not participate in any mediation that requires them to pay half of the mediation fees and instead invoke their rights to arbitrate that dispute."). Keller took the position that, "[u]nder the JAMS rules designated in the arbitration agreement, [the mediation fee] dispute is for a JAMS arbitrator to resolve." *Id.* On July 6, 2023, JAMS agreed with Keller, granted Keller's request over STARZ's objection, and initiated arbitration. *See* Pet., ¶ 11; Ex. F, Ex. 7 at 1 (July 6, 2023 Letter from K. Loew to Parties).

Despite successfully demanding an arbitration on the issue of mediation fees, Petitioner has made an about-face and asks *now* for federal-court resolution of the mediation fees issue. *See* Pet., p. 14 ("Petitioner respectfully requests that this Court enter an Order: . . . declaring that, to the extent the JAMS Arbitration Agreement requires Petitioner to pay mediation fees in excess of $250, that aspect of the Agreement is unconscionable, unenforceable, and severed[.]"). The Petition's demand squarely meets the criteria of judicial estoppel. Keller and Petitioner previously took the position with JAMS that an *arbitrator* must resolve the mediation-fees dispute and won. Months later and unhappy with how the arbitration is proceeding, Petitioner now argues that a *federal court* (and *not* an arbitrator) must decide the very same issue. Keller and Petitioner have two

positions—each incompatible and inconsistent with the other—in judicial or quasi-judicial proceedings and were "successful in asserting the first position" that was "not taken as a result of ignorance, fraud, or mistake." *AP-Colton*, 240 Cal. App. 4th at 507. The Court should apply the doctrine of judicial estoppel and deny Petitioner the relief sought.

**V.   CONCLUSION**

For the foregoing reasons, STARZ respectfully requests that the Court dismiss the Petition with prejudice.

Dated: February 13, 2024 DLA PIPER, LLP (US)

By:  */s/ JEFFREY E. TSAI*
JEFFREY E. TSAI
ANGELA C. AGRUSA
DAVID HORNIAK

*Attorneys for Respondent,*
STARZ Entertainment LLC

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **Local Rule 11-6 Verification**

The undersigned, counsel of record for Respondent STARZ Entertainment LLC, certifies that this brief contains 6,348 words, which complies with the word limit of L.R. 11-6.1.

Dated: February 13, 2024                    DLA PIPER, LLP (US)


                                        By:   _/s/ JEFFREY E. TSAI_
                                              JEFFREY E. TSAI

                                              *Attorneys for Respondent,*
                                              STARZ Entertainment LLC

STARZ ENTERTAINMENT, LLC'S MOTION TO DISMISS