**KELLER POSTMAN LLC**
  Warren D. Postman (330869)
  wdp@kellerpostman.com
  Albert Y. Pak (*pro hac vice* forthcoming)
  albert.pak@kellerpostman.com
1101 Connecticut Ave, N.W., Suite 1100
Washington, D.C. 20036
Telephone:  202-918-1123

  Patrick A. Huber (*pro hac vice*)
  patrick.huber@kellerpostman.com
150 North Riverside Plaza, Suite 4100
Chicago, IL 60606
Telephone:  312-280-5790

**LYNCH CARPENTER LLP**
  Jae Kook Kim (236805)
  ekim@lcllp.com
117 East Colorado Boulevard, Suite 600
Pasadena, CA 91105
Telephone: 626-550-1250
Facsimile: 619-756-6991

*Attorneys for Petitioner*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISION

| | |
|---|---|
| KIANA JONES,<br><br>　　　　Petitioner,<br><br>　vs.<br><br>STARZ ENTERTAINMENT, LLC,<br><br>　　　　Respondent. | Case No. 5:24-cv-00206-KK-DTB<br><br>**MOTION TO COMPEL ARBITRATION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO COMPEL ARBITRATION**<br><br>**Judge Kenly Kiya Kato**<br><br>**Date:  March 21, 2024**<br>**Time: 9:30 A.M.** |

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on March 21, 2024, at 9:30 A.M., or at such other time as this Court may order, Petitioner will and hereby does petition this Court, under Section 4 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 4, for an order compelling Respondent Starz Entertainment, LLC ("Starz") to arbitrate Petitioner's data privacy claims in this District.

Petitioner and Starz entered into an agreement requiring them to arbitrate all disputes on an individual basis. Pursuant to that agreement, Petitioner filed an individual demand seeking to arbitrate Petitioner's data privacy claims before Judicial Arbitration and Mediation Services ("JAMS"), the arbitration forum specified by the parties' agreement. Starz has failed to comply with the parties' agreement because Starz has argued Petitioner's dispute should be consolidated with other claimants' disputes, violating Petitioner's rights under California law. Additionally, Starz has argued, in violation of the agreement and California law, that Petitioner should be required to pay thousands of dollars in mediation fees as a pre-condition to arbitration.

Accordingly, Starz has "fail[ed], neglect[ed], or refus[ed] . . . to arbitrate under a written agreement for arbitration." 9 U.S.C. § 4. Pursuant to the FAA, this Court should "direct[] that such arbitration proceed in the manner provided for in [the parties'] agreement." *Id.*

1         The Motion is based on this Notice of Motion, the following Memorandum,

2   the Petition, all records on file with this Court, and such other oral and written

3   arguments as may be presented at, or prior to, the hearing on this matter.  This motion

4   is made following the conference of counsel pursuant to L.R. 7-3 which took place

5   on February 6, 2024.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

# **TABLE OF CONTENTS**

MEMORANDUM OF POINTS AND AUTHORITIES ....................................... 1

BACKGROUND ............................................................................................. 4

   A.  Jones Signs Up For A Starz Account And Is Bound By The Mandatory Terms. .......................................................................................................... 4

   B.  Jones Files An Individual Arbitration Demand In JAMS ........................... 6

   C.  Starz Argues That Jones Must Pay 50% Of Mediation Fees As A Pre-Condition To Arbitration. ........................................................................... 6

   D.  JAMS Proceeds With Administration And Consolidates 7,300 Arbitrations Into An Unworkable Single Proceeding. .......................................................... 7

   E.  JAMS Appoints An Arbitrator, And Other Claimants Serve Notices Of Disqualification Under California Law ............................................................ 10

   F.  Jones Demands That Starz Stipulate To Individual Arbitrations ............... 11

ARGUMENT ................................................................................................... 12

   I.   THE COURT SHOULD COMPEL STARZ TO INDIVIDUALLY ARBITRATE THIS DISPUTE PURSUANT TO THE TERMS OF THE AGREEMENT .................................................................................................. 15

   A.  The FAA Authorizes Courts To Enforce Arbitration Agreements Only In Accordance With Their Terms ........................................................................ 15

   B.  Jones And Starz Agreed To Individual, Bilateral Arbitration .................... 16

   II.  THE COURT SHOULD COMPEL STARZ TO INDIVIDUALLY ARBITRATE THIS DISPUTE BECAUSE JONES NEVER AGREED TO NON-BILATERAL ARBITRATION. ................................................................ 19

   III.  IF THE AGREEMENT IS INTERPRETED TO ALLOW CONSOLIDATION, IT IS UNCONSCIONABLE. ................................................ 23

   A.  Application of Rule 6(e) to consolidate the arbitrations is unconscionable. ................................................................................................ 23

   B.  Jones Should Not Be Required to Shoulder the Burden of Costly Pre-Arbitration Mediations. .................................................................................. 26

   IV.  IF THE COURT DENIES JONES'S MOTION TO COMPEL, THE PARTIES' ARBITRATION AGREEMENT IS UNCONSCIONABLE UNDER *DISCOVER BANK* ................................................................................ 28

CONCLUSION ................................................................................................ 28

1

## TABLE OF AUTHORITIES

2

**Page(s)**                                                                                     **Cases**

3

*AT&T Mobility LLC v. Concepcion*,
   563 U.S. 333 (2011) ...........................................................................4, 13, 14, 23

4

*Azteca Constr., Inc. v. ADR Consulting, Inc.*,
   18 Cal. Rptr. 3d 142 (2004)............................................................................. 24

5

*Bedgood v. Wyndham Vacation Resorts, Inc.*,
   88 F.4th 1355 (11th Cir. 2023)........................................................................ 22

6

*Berman v. Freedom Fin. Network, LLC*,
   30 F.4th 849 (9th Cir. 2022) ........................................................................... 13

7

8

*Chavarria v. Ralphs Grocery Co.*,
   733 F.3d 916 (9th Cir. 2013)........................................................................... 27

9

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
   207 F.3d 1126 (9th Cir. 2000) ................................................................... 13, 15

10

*Ciccio v. SmileDirectClub, LLC*,
   2 F.4th 577 (6th Cir. 2021)............................................................................. 22

11

12

*Dean Witter Reynolds, Inc. v. Byrd*,
   470 U.S. 213 (1985) ....................................................................................... 15

13

*Epic Sys. Corp. v. Lewis*,
   584 U.S. 497 (2018) ....................................................................................... 15

14

15

*Granite Rock Co. v. Int'l Bhd. of Teamsters*,
   561 U.S. 287 (2010) ....................................................................................... 14

16

*Heckman v. Live Nation Entmt.*,
   No. 22-CV-0047-GW-GJSx, 2023 WL 5505999
   (C.D. Cal. Aug. 10, 2023) ......................................................................... 23, 24

17

18

*John Wiley & Sons, Inc. v. Livingston*,
   376 U.S. 543 (1964) ....................................................................................... 19

19

*Kinecta Alt. Fin. Sols., Inc. v. Superior Ct.*,
   140 Cal. Rptr. 3d 347 (2012)..................................................................... 16, 17

20

21

*Lamps Plus, Inc. v. Varela*,
  139 S. Ct. 1407 (2019).................................................................21

*Nelsen v. Legacy Partners Residential, Inc.*,
  144 Cal. Rptr. 3d 198 (2012).......................................................17

*Nevarez v. Forty Niners Football Co.*,
  No. 16-CV-07013, 2017 WL 3492110 (N.D. Cal. Aug. 15, 2017)...........26, 27

*Nguyen v. Barnes & Noble Inc.*,
  763 F.3d 1171 (9th Cir. 2014) .....................................................13

*OTO, L.L.C. v. Kho*,
  447 P.3d 680 (Cal. 2019) ............................................................23

*Protective Life Ins. Corp. v. Lincoln Nat. Life Ins. Corp.*,
  873 F.2d 281 (11th Cir. 1993) ......................................................16

*Roussos v. Roussos*,
  275 Cal. Rptr. 3d 196 (2021).......................................................24

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
  559 U.S. 662 (2010) ..............................................15, 19, 20, 21

*U.K. v. Boeing Co.*,
  998 F.2d 68 (2d Cir. 1993)..........................................................16

*Weyerhaeuser Co. v. W. Seas Shipping Co.*,
  743 F.2d 635 (9th Cir. 1984), *cert. denied*, 469 U.S. 1061 (1984).................16

**Statutes**

9 U.S.C. § 2 ...............................................................................13

9 U.S.C. § 4 ...............................................................................13

Cal. Civ. Proc. § 1281.9................................................................24

Cal. Civ. Proc. § 1281.91..............................................................24

**Other Authorities**

JAMS, *Comprehensive Rules*.........................................................25

## MEMORANDUM OF POINTS AND AUTHORITIES

Petitioner Kiana Jones moves to compel Starz to arbitration. Jones is a Starz user who streamed videos on the Starz website. Unbeknownst to Jones, and without her consent, Starz disclosed Jones's identity and the videos she watched on the Starz platform to third-party advertising and analytics companies, in violation of the federal Video Privacy Protection Act ("VPPA") and California Civil Code § 1799.3. Jones was bound by a mandatory arbitration clause in the Starz Terms of Use, and thus sought to vindicate her rights by initiating individual, bilateral arbitration against Starz through JAMS. But if Starz has its way, Jones will *never* get her day in arbitration. That distortion of the Parties' arbitration agreement cannot stand under the FAA and bedrock principles of California unconscionability law.

When Jones signed up for her Starz account, she was presented with the Starz Terms on a take-it-or-leave-it basis. Those Terms provide that Jones and Starz would resolve all disputes through arbitration, each party in "its individual capacity." The Terms further require that the parties "endeavor first to attempt to resolve the controversy or claim through mediation administered by JAMS."

Jones honored the contract. She initiated her dispute over a year ago, in January 2023, by filing an individual arbitration demand in JAMS. In response, Starz insisted that the Terms first require mediation and that Jones must pay thousands of dollars in mediation fees. Jones refused, arguing that she never agreed to pay exorbitant mediation fees and that imposing such fees on a consumer violates

California law.  JAMS administrators determined that the dispute over mediation fees was for an arbitrator to decide.

Then JAMS administrators—not themselves arbitrators—further decided to consolidate over seven thousand separate disputes into an unworkable single action, charging a single filing fee (for a "two-party matter[]"), and appointing a single arbitrator.  Exercising their rights under California law, some claimants in the consolidated arbitration served notices of disqualification of the arbitrator.  Jones—content to proceed with the appointed arbitrator—did *not* serve a notice of disqualification.  Nevertheless, Starz insisted that JAMS administrators disqualify the arbitrator for all claimants in the newly merged action, including Jones's, and JAMS granted that request over Jones's objection.

The result is that, after over a year, Jones still does not have access to the individual arbitration Starz agreed to in the contract it drafted.  And for all practical purposes, Jones will *never* have her dispute resolved in arbitration, because if a *single one* of seven thousand other individuals serves a notice of disqualification of the arbitrator she and Starz are willing to proceed with, Starz will insist that the single disqualification apply to Jones and to everyone else in the consolidated arbitration.  Starz promised an individual arbitration that would be fast, low-cost, and informal.  Starz is instead attempting to impose a sham process that will never begin, will cost Jones thousands of dollars even if it does, and binds Jones to the decision of 7,000 *other* claimants.

1    This is not what Starz and Jones agreed to—and it is unworkable and

2    unconscionable.  The Court should compel Starz to an individual arbitration with

3    Jones for the following reasons:

4        *First*, based upon the plain text of the Terms, Jones is entitled to an *individual*

5    arbitration, and cannot be subjected to an unworkable consolidated proceeding.[1]  The

6    Terms are a binding agreement between Starz and Jones alone, not among Starz,

7    Jones, and 7,000 other people Jones does not know.  They plainly provide that Starz

8    and Jones must arbitrate, each in "its individual capacity."

9        *Second*, because arbitration is traditionally bilateral, the FAA requires that any

10   departure from a bilateral arbitration process must result from an explicit and

11   unambiguous agreement between the parties.  Starz wishes to have it both ways,

12   reaping the benefits of arbitration—"its informality," "lower costs, greater efficiency

13   and speed, and the ability to choose expert adjudicators to resolve specialized

14   disputes," *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 348 (2011)—when

15   convenient, but forcing consumers to resolve disputes en masse (including choosing

16   an arbitrator) when advantageous.  Jones agreed to arbitration "only in [her]

17   individual capacity"; she certainly did not agree through explicit language to a

18   merged, consolidated arbitration with thousands of claimants, and FAA prohibits an

19   inference of such agreement based on JAMS rules.

20

---

21   [1] Jones and others have not opposed all manners of consolidation, and leave open
     the possibility that they may agree to some form of consolidation once each
     Claimant is in front of an arbitrator who has been appointed in accordance with
     California law.  *See* Huber Decl., Ex. H, at 4.

*Third*, it would be unconscionable to interpret the arbitration agreement to allow the non-starting "arbitration" that Starz wishes to impose on Jones.  For over a year, Starz has obstructed Jones's efforts to arbitrate her claims against it, refusing to proceed with the appointed arbitrator, even though neither party objected to the appointment.  Under Starz's misinterpretation of the agreement, Jones's day in arbitration hinges on 7,000 other people she does not know or control agreeing to the same arbitrator.  If a *single one* exercises his or her right under California law to strike the appointed arbitrator, that arbitrator is struck for Jones as well, placing her back in an endless loop of appointments and third-party strikes that ensures Starz will never have to answer for its misconduct.  Again, this is not the process Jones agreed to.  But even if it were, any language in the Terms mandating that process would be unconscionable and severable, as it would effectively deprive Jones of her right to pursue her claim and require Jones to pay thousands of dollars in mediation fees.

## BACKGROUND

### A.  Jones Signs Up For A Starz Account And Is Bound By The Mandatory Terms.

Jones signed up for a Starz video streaming account in 2012.  Jones Decl. ¶ 5.  Unbeknownst to Jones and without her consent, Starz disclosed Jones's identity and the videos she watched on the Starz platform to third-party advertising and analytics companies, in violation of the VPPA and California Civil Code § 1799.3.  Jones thus seeks to hold Starz liable for these violations.

Like many other consumer-facing companies, Starz requires its customers to agree to resolve disputes through mandatory binding arbitration as a condition of signing up for an account.  The Starz Terms mandate, in capital letters at the very beginning of the agreement: "BY USING THE SERVICE, SITE, AND FEATURES YOU ARE UNCONDITIONALLY AGREEING TO THE TERMS OF USE." Huber Decl., ECF No. 4, Ex. A.  The Terms contain a California choice-of-law provision, and require all controversies to be determined by mediation and/or arbitration:

> All controversies, disputes or claims arising out of or relating to these Terms of Use will be determined pursuant to the mediation and arbitration procedures of JAMS, and administered by JAMS or its successor (**"JAMS"**), in accordance with the comprehensive rules and procedures, including the optional appeal procedure, of JAMS ("JAMS Rules"), as modified by these Terms of Use.

Terms § 27.  The Terms further require that "[t]he parties will endeavor first to attempt to resolve the controversy or claim through mediation administered by JAMS before commencing any arbitration." *Id*.

Finally, the Terms mandate that all disputes be resolved on an individual basis. The Terms prohibit the arbitrator from "certify[ing] a class action of any kind," and require that the consumer "and Starz agree that each may bring claims against the other *only* in *your* or *its* individual capacity, and not as a plaintiff or class member in any purported class or representative proceeding." *Id*. (emphases added).

**B.     Jones Files An Individual Arbitration Demand In JAMS**

Jones retained counsel to investigate and, if appropriate, pursue data privacy claims against Starz in arbitration for unlawfully disclosing her personal information.  Jones Decl. ¶ 4.  On January 18, 2023, Jones filed an individual arbitration demand in JAMS against Starz.  *See* Huber Decl., ECF No. 4, Ex. B. Shortly after she filed her demand, Starz contacted Jones to discuss her dispute, but just as shortly, the informal discussions came to an impasse.

**C.   Starz Argues That Jones Must Pay 50% Of Mediation Fees As A Pre-Condition To Arbitration.**

On May 31, 2023, Jones requested JAMS commence administration of her dispute with Starz.  Huber Decl., Ex. A.[2]  As the "first step" in that administration, Jones asked that JAMS appoint a mediator pursuant to the terms of the parties' arbitration agreement.  *Id.*  For greater efficiency, Jones did not oppose a single mediator overseeing both her and others' individual mediations, so long as she and others would have individual mediation sessions.  *Id.*  Furthermore, because the arbitration clause *requires* mediation as a precondition to arbitration, Jones asked that JAMS allocate any fees associated with the mediation to Starz, with Jones being charged a maximum of $250 for the entire arbitration process, as guaranteed by the JAMS *Consumer Arbitration Minimum Standards* ("*Minimum Standards*").  *Id.*; *see* Huber Decl., ECF No. 4, Ex. D.

---

[2] Unless otherwise indicated, citations to exhibits refer to the exhibits that are being filed with this Motion.

In response, Starz agreed that the Terms require an *individual* process; i.e., that the "parties engage in individual mediations administered by JAMS 'before commencing any arbitration.'" Ex. B. Starz insisted, however, that the "ordinary custom and practice is for parties to split mediation fees 50/50," and that "[t]he Starz terms of use do not deviate, either expressly or impliedly, from this custom and practice." *Id.* Starz reasoned that the JAMS *Minimum Standards* "apply only to <u>arbitration</u>, not mediation," and that if Jones (or any other claimant) disagreed with Starz's position, "they are free to take that dispute to court." *Id.*

### D. JAMS Proceeds With Administration And Consolidates 7,300 Arbitrations Into An Unworkable Single Proceeding.

In a letter dated June 7, 2023, JAMS administrators stated that arbitration and mediation "represent distinct ADR processes" and the "Minimum Standards do not apply to mediations or mediation fees." Ex. C. JAMS eventually provided a list of eighteen qualified mediators for the parties' consideration. JAMS provided fee schedules for each of the proposed mediators, with daily rates for professional fees ranging from $7,500, at the lowest end, to $30,000, at the highest. *See* Huber Decl., ECF No. 4, Ex. C.

Jones (and the other claimants) responded, asserting that the *Minimum Standards* must apply to any mediation that is a pre-condition to mandatory arbitration. Ex. D at 5. Jones further asserted that "state unconscionability law prohibits Starz from attempting to force Claimants to pay thousands of dollars in order to participate in an individual mediation over a modest consumer claim." *Id.*

at 6.  Because the parties had reached an impasse on the allocation of mediation fees, Jones and the other claimants invoked their rights to arbitrate that dispute under the Starz Terms.  *Id.*

Starz objected to Jones's request, accusing claimants of "attempting to skip over the required pre-arbitration mediation step[.]"  *Id.* at 4.  According to Starz, Jones and the other consumer claimants had two options: "(1) to participate in individual pre-arbitration mediations and pay 50% of the fees, in keeping with STARZ's terms of use, or (2) to seek to challenge the contractual pre-arbitration mediation requirement in court – not through JAMS."  *Id.* at 4; *see id.* at 1–3; Ex. E.

On July 6, 2023, JAMS determined that the issue over mediation fees "shall be submitted to and ruled on by the arbitrator" and thus "JAMS will proceed with administration."  Ex. F (citing JAMS Comprehensive Rule 11(b)).  JAMS then asked for the "parties' positions on whether the above-referenced matters should be consolidated pursuant to JAMS Comprehensive Rule 6(e)."  *Id.*

Despite previously arguing for individual arbitrations when it thought it could require Jones and the other consumers to each pay thousands of dollars in pre-arbitration mediation fees, Starz shifted to arguing that the arbitrations should be consolidated into a single action where common issues would be decided once for all claimants.  According to Starz, "[a] consolidated arbitration would allow for efficient, cost-effective, consistent resolution of each of the identical issues raised by each claimant represented by Keller Postman."  Ex. G at 1.  Starz insisted that

"nothing in the relevant arbitration clause (or anywhere else in the [Starz Terms]) *prohibits* JAMS or the parties from consolidating arbitrations." *Id.* at 7 (emphasis added). Starz argued that, even though the Starz Terms provide that Starz and its users "agree that each may bring claims against the other only in [their] individual capacity," that simply means that Starz and its users cannot bring claims "on behalf of *other* people or entities." *Id.* at 7–8.

Jones (and others) opposed consolidation, pointing out that the "parties' arbitration agreement plainly states that the parties will arbitrate their disputes individually." Ex. H at 1. Additionally, "[b]ecause arbitration is traditionally bilateral," binding case law requires that "any departure from a bilateral arbitration process must result from an explicit and unambiguous agreement between the parties." *Id.* at 2 (collecting cases). Finally, consolidation would violate Jones's and the other claimants' rights under California law by forcing them to speak with one voice in the arbitrator selection process. *Id.* at 2–3.

Over Jones's and the other claimants' objections, JAMS administrators consolidated each of the 7,300 actions into a single proceeding. Confirming that the proceeding would be a single, merged action, JAMS charged a single filing fee, applicable to "two-party matters" under its Arbitration Schedule of Fees and Costs. Ex. I; *see* https://www.jamsadr.com/arbitration-fees. JAMS administrators interpreted the parties' arbitration agreement to "prohibit representative claims," but not "the consolidation of multiple filings." Ex. I at 2. JAMS administrators further

stated that, in the consolidated proceeding, Jones and the other consumer claimants would be forced to participate in the arbitrator selection process "as a single party." *Id.* (citing JAMS Rule 15(f)).

### E. JAMS Appoints An Arbitrator, And Other Claimants Serve Notices Of Disqualification Under California Law.

On November 15, 2023, JAMS appointed Hon. Gail Andler as the arbitrator to preside over the consolidated arbitrations. Ex. J. That same day, JAMS served Judge Andler's required disclosures under California law. Huber Decl. ¶ 11.

On November 30, 2023, other claimants in the consolidated proceeding served notices of disqualification of Judge Andler. *Id.* ¶ 13. Jones did not serve a notice of disqualification (though she reserved her rights to dispute consolidation before the arbitrator). *Id.* Starz responded that "JAMS must deem Judge Andler disqualified from the entire consolidated arbitration, including as to those 69 claimants who did not serve notices of disqualification." Ex. K; *see also* Exs. L, M, N.

On January 8, 2024, JAMS disqualified Judge Andler from Jones's and the other claimants' consolidated arbitration proceeding. *See* Ex. O.

### F. Jones Demands That Starz Stipulate To Individual Arbitrations

On January 10, 2024, Jones and the other consumer claimants made one last attempt to get Starz to comply with its agreement, demanding that Starz stipulate to individual arbitration proceedings, as set forth by the Starz Terms, "in which each Claimant will participate on an equal footing with Starz in selecting an arbitrator for

1   that Claimant's individual arbitration, unfettered by the actions of other Claimants

2   in their individual arbitrations." Ex. P.

3        On January 17, 2024, Starz responded, making various unsupported

4   aspersions towards the undersigned counsel, and refusing to stipulate to individual

5   arbitration proceedings. Ex. Q. JAMS thereafter appointed a second arbitrator, who

6   was also disqualified upon Jones's and others' notices of disqualification. On

7   February 12, 2024, JAMS refused to stay the arbitration, stated that "[a]ny request

8   for a stay may be raised with the appointed arbitrator," and appointed a third

9   arbitrator to oversee the consolidated arbitration. Ex. R.

10       On January 31, 2024, Jones filed her Petition in this Court, so that she could

11   finally proceed to an individual arbitration of her disputes with Starz.

12                        **ARGUMENT**

13       The parties—Jones and Starz—agreed to individually arbitrate their disputes

14   arising out of Jones's use of the Starz platform. The FAA was "designed to promote

15   arbitration," *Concepcion*, 563 U.S. at 345 (2011), and provides that written

16   arbitration agreements are "valid, irrevocable, and enforceable, save upon such

17   grounds as exist at law or in equity for the revocation of any contract . . . ." 9 U.S.C.

18   § 2. The Act thus authorizes parties to petition a district court "for an order directing

19   that such arbitration proceed in the manner provided for in such agreement," and

20   authorizes courts to compel arbitration "in accordance with the terms of the

21   agreement." *Id.* § 4. In deciding whether to compel arbitration, the Court's role is

to determine (1) whether a valid agreement to arbitrate exists, and (2) whether the agreement covers the dispute. *Chiron Corp. v. Ortho Diagnostic Sys., Inc.,* 207 F.3d 1126, 1130 (9th Cir. 2000). To decide if a valid agreement exists, "federal courts apply ordinary state-law principles that govern the formation of contracts." *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014).

As a threshold matter, and without dispute, Jones entered into a valid arbitration agreement with Starz when she agreed to the Starz Terms. Jones provided Starz with her personal information and assented to the take-it-or-leave-it Terms when she signed up for a Starz account. Jones Decl. ¶¶ 3, 5; *see Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022).

Furthermore, Jones's privacy claims plainly fall within the scope of the arbitration agreement. "In determining the scope of an arbitration agreement, 'there is a presumption of arbitrability'" and "[d]oubts should be resolved in favor of coverage." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 314 (2010). The Terms apply to "[a]ll controversies, disputes or claims arising out of or relating to these Terms of Use," Terms § 27, which unquestionably includes Jones's video privacy claims.

The parties' threshold arbitrability dispute over consolidation is also within the scope of the arbitration agreement. The arbitration agreement incorporates the JAMS *Comprehensive Rules*, and Rule 11(b) states: "Jurisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or

scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator." Nothing in the parties' arbitration agreement contradicts that delegation.

Jones and Starz agreed to arbitrate their disputes on an individual basis, subject to the protections in the *Minimum Standards*. Jones stands ready to proceed in that fashion, but Starz refuses to do so, insisting that Jones arbitrate her claim in a large, consolidated action, which can never actually move forward because a *different* claimant, subject to a *different* arbitration agreement, opted to disqualify the arbitrator. Although Starz purports to be currently participating in an "arbitration" with Jones, the proceedings are directly contrary to both the terms of their agreement and "[t]he point of affording parties discretion in designing arbitration processes": to make them fast and easy. *Concepcion*, 563 U.S. at 344–45 ("[T]he informality of arbitral proceedings is itself desirable, reducing the cost and increasing the speed of dispute resolution."). Instead, Starz reads an absurd term into the agreement, subjecting Jones to a consolidated arbitration before she has even selected an arbitrator, which is contrary to the plain terms of the agreement, impermissibly forces a non-bilateral arbitration provision into the contract, and renders the agreement unconscionable under California law. This Court should compel Starz to arbitrate according to the terms of its agreement with Jones.

## I. THE COURT SHOULD COMPEL STARZ TO INDIVIDUALLY ARBITRATE THIS DISPUTE PURSUANT TO THE TERMS OF THE PARTIES' ARBITRATION AGREEMENT.

A.   The FAA Authorizes Courts To Enforce Arbitration Agreements Only In Accordance With Their Terms

The FAA was passed "to ensure judicial enforcement of privately made agreements to arbitrate." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 220 (1985). It "was motivated, first and foremost, by a congressional desire to enforce agreements into which parties had entered." *Id.* (quoting H.R. Rep. No. 96, 68th Cong., 1st Sess., 1 (1924)).

Where the parties have formed a valid agreement to arbitrate, "the Act requires the court to enforce the arbitration agreement in accordance with its terms." *Chiron Corp.*, 207 F.3d at 1130. The FAA "requires courts 'rigorously' to enforce arbitration agreements according to their terms, including terms that specify *with whom* the parties choose to arbitrate their disputes and *the rules* under which that arbitration will be conducted." *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 506 (2018) (quoting *Am. Exp. Co. v. Italian Colors Rest.,* 570 U.S. 228, 233 (2013)). "[A]rbitration is a matter of consent, not coercion." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 681 (2010). And when parties enter individual, bilateral arbitration agreements, "[t]he FAA does not compel arbitration by any parties not included in the agreement." *See Kinecta Alt. Fin. Sols., Inc. v. Superior Ct.*, 140 Cal. Rptr. 3d 347, 356–57 (2012); *see also U.K. v. Boeing Co.*, 998 F.2d 68, 74 (2d Cir. 1993) ("A district court cannot consolidate arbitration proceedings arising from separate agreements to arbitrate, absent the parties' agreement to allow such consolidation."); *Protective Life Ins. Corp. v. Lincoln Nat.*

*Life Ins. Corp.*, 873 F.2d 281, 282 (11th Cir. 1993) ("Parties may negotiate for and include provisions for consolidation of arbitration proceedings in their arbitration agreements, but if such provisions are absent, federal courts may not read them in."); *Weyerhaeuser Co. v. W. Seas Shipping Co.*, 743 F.2d 635, 637 (9th Cir. 1984) (holding that because a court may enforce an arbitration agreement "in accordance with its terms," it may not read in a consolidation requirement that doesn't exist by its express terms), *cert. denied,* 469 U.S. 1061 (1984).

### B.  Jones And Starz Agreed To Individual, Bilateral Arbitration

Jones and Starz agreed to individual, bilateral arbitration.  The Terms leave no room for interpretation:  "You and Starz agree that each may bring claims against the other only in your or its individual capacity, and not as a plaintiff or class member in any purported class or representative proceeding."  Terms § 27.  The agreement contemplates a dispute resolution process involving the two parties to the contract— either Jones bringing claims against Starz, or vice-versa—and explicitly says this is the "only" way that disputes can be brought.  *Id.*  The Terms mention only two types of multi-person dispute resolution procedures—"class or representative proceeding[s]"—and says that both of those procedures are not allowed.  *Id.*

Furthermore, the Terms identify two parties to the arbitration agreement— Petitioner and Starz.  *See id.* ("These terms of use are a legally binding agreement between STARZ ENTERTAINMENT, LLC ('Starz,' 'Us' or 'We') and you concerning the Service[.]").  The agreement does not identify other Starz customers

who may have similar claims relating to their use of the streaming service.  Instead, the Terms repeatedly use the second-person pronoun to refer simply to the reader of the Terms ("You"), on the one hand, and "Starz," on the other, and says these are the *only* parties who may proceed under the Terms' dispute resolution process.  *See id.*  The agreement further provides that "the arbitrator will not have the right to award injunctive relief against *either party* or to certify a class action of any kind." *Id.* (emphasis added).

California courts have interpreted similar language in arbitration agreements to indicate the parties' agreement to individual, bilateral proceedings.  *See Kinecta*, 140 Cal. Rptr. 3d at 356 ("The arbitration provision identifies only two parties to the agreement, 'I, Kim Malone' and 'Kinecta'. . . . It makes no reference to employee groups or to other employees of Kinecta, and instead refers exclusively to 'I,' 'me,' and 'my' (designating Malone))"); *Nelsen v. Legacy Partners Residential, Inc.*, 144 Cal. Rptr. 3d 198, 211 (2012) ("[T]he arbitration contemplated by Nelsen's arbitration agreement in this case involves only disputes between two parties— Nelsen ('myself') and LPI. It does not encompass disputes between other employees or groups of employees and LPI. . . . All of the relevant contractual language thus contemplates a two-party arbitration.").

Here, the written language of the parties' agreement is clear:  the parties agreed to resolve disputes individually in bilateral arbitration through repeated references to individual, bilateral proceedings, a bar on any class or representative

proceedings, and a complete omission of any discussion of other groups of potential claimants. This agreement applies to all stages of the arbitration, including Jones's right to select her own arbitrator for resolving threshold disputes. Because she did not agree to collaborate with *other* Starz users on the choice of arbitrator, or to be bound by the choice of others, she cannot be so compelled now.

The parties' initial conduct in the present proceeding provides further evidence that Starz also understood the parties agreed to truly individual arbitrations. When Jones initiated her dispute, she filed an individual arbitration demand. After a subset of the claimants, including Jones, asked JAMS to proceed with individual mediations as a first step in the arbitration process, Starz demanded that Jones pay half of the individual mediation fees, with Starz paying the other half. Ex. D at 4. Jones and the other claimants objected to the fee split and requested that JAMS commence individual arbitrations for each of their disputes. Starz objected to the commencement of individual arbitrations because "Claimants' request violates the STARZ terms of use, which requires individual mediation <u>before</u> arbitration can commence." *Id.* Prior to JAMS administrators' request for briefing on consolidation, the parties had never suggested that they understood the Terms to allow a consolidated process. Instead, the parties stated repeatedly that they understood the dispute resolution process to be individualized. The Court should compel Starz to proceed with the arbitration that it forced Jones to accept.

## II. THE COURT SHOULD COMPEL STARZ TO INDIVIDUALLY ARBITRATE THIS DISPUTE BECAUSE JONES NEVER AGREED TO NON-BILATERAL ARBITRATION.

Arbitration agreements must be enforced according to their terms. Forcing Jones to proceed with a consolidated arbitration that merged each action into an unworkable single proceeding, where Jones is bound by the decision of thousands of other claimants, would fundamentally alter the bilateral arbitration that she agreed to, and would contravene the FAA's rejection of any inferred departure from traditional, bilateral arbitration.

It is clear from Supreme Court precedent "and the contractual nature of arbitration that parties may specify *with whom* they choose to arbitrate their disputes." *Stolt-Nielsen*, 559 U.S. at 683. In certain contexts, it is appropriate for an arbitrator (or arbitral body) to adopt procedures to give effect to the agreement. *See John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 557 (1964). Decisions about the parties to the agreements, however, "is not a term that the arbitrator may infer solely from the fact of the parties' agreement to arbitrate." *Stolt-Nielsen*, 559 U.S. at 685.

Bilateral arbitration is "the prototype of the individualized and informal form of arbitration protected from undue state interference by the FAA." *Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639, 656 (2022). A party may not be compelled to participate in proceedings that include other people or other claims. In fact, the Supreme Court held in *Stolt-Nielsen* that "a party may not be compelled under the

FAA to submit to class arbitration unless there is a contractual basis for concluding that the party *agreed* to do so." 559 U.S. at 684. This is because class arbitration is fundamentally different than bilateral arbitration:

> In bilateral arbitration, parties forgo the procedural rigor and appellate review of the courts in order to realize the benefits of private dispute resolution: lower costs, greater efficiency and speed, and the ability to choose expert adjudicators to resolve specialized disputes. . . .
>
> . . . .
>
> Consider just some of the fundamental changes brought about by the shift from bilateral arbitration to class-action arbitration. An arbitrator chosen according to an agreed-upon procedure no longer resolves a single dispute between the parties to a single agreement, but instead resolves many disputes between hundreds or perhaps even thousands of parties. Under the Class Rules, "the presumption of privacy and confidentiality" that applies in many bilateral arbitrations "shall not apply in class arbitrations," thus potentially frustrating the parties' assumptions when they agreed to arbitrate. The arbitrator's award no longer purports to bind just the parties to a single arbitration agreement, but adjudicates the rights of absent parties as well. And the commercial stakes of class-action arbitration are comparable to those of class-action litigation, even though the scope of judicial review is much more limited. We think that the differences between bilateral and class-action arbitration are too great for arbitrators to presume, consistent with their limited powers under the FAA, that the parties' mere silence on the issue of class-action arbitration constitutes consent to resolve their disputes in class proceedings.

*Id.* at 685–86 (citations omitted). In *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407 (2019), the Supreme Court doubled down, holding that parties cannot be forced to class arbitration even where the agreement at issue is ambiguous. *See id.* at 1419

("Courts may not infer from an ambiguous agreement that parties have consented to arbitrate on a classwide basis."). The Court reiterated that class arbitration lacks the benefits of individual arbitration, and "sacrifices the principal advantage of arbitration—its informality—and makes the process slower, more costly, and more likely to generate procedural morass than final judgment." *Id.* at 1416 (quoting *Concepcion*, 563 U.S. at 348).

Likewise, the Supreme Court found mass joinder contrary to the purposes of the FAA because "imposing an expansive rule of joinder in the arbitral context would defeat the ability of parties to control which claims are subject to arbitration." *Viking River Cruises*, 596 U.S. at 660–61 (holding preempted state law requiring mass joinder because "state law cannot condition the enforceability of an arbitration agreement on the availability of a procedural mechanism that would permit a party to expand the scope of the arbitration by introducing claims that the parties did not jointly agree to arbitrate."). Allowing joinder would inappropriately prohibit parties from restricting "the scope of an arbitration to disputes arising out of a particular transaction or common nucleus of facts." *Id.* at 661.

The same reasoning applies here, where Starz has insisted on the mass joinder of thousands of separate claims into a single action where common issues will be decided once for all claimants. A consolidated arbitration proceeding would require (1) a single arbitrator to resolve the dispute of thousands of separate claimants, each with separate underlying facts, instead of just one; (2) the presumption of

confidentiality would no longer apply; (3) the commercial stakes of the arbitration would become comparable to class-action litigation; and (4) the process would be turned from an informal process between two parties, into a slower, more procedurally complicated morass where Jones would be bound by the decision of thousands of people who *are not* parties to her contract with Starz.  Because Jones (and the other parties aggrieved by Starz's actions) did not agree to a consolidated arbitration, including being forced to select a single arbitrator for 7,300 claimants, she cannot now be forced to accept such term.

It does not matter that a JAMS administrator made a preliminary determination to the contrary.  While arbitrators, once appointed, have broad powers to resolve the issues that the parties have agreed to arbitrate, arbitration *administrators* are not arbitrators.  "[A]n arbitration clause's validity and enforceability are merits-based issues reserved to the arbitrator, issues over which the administrator retains no authority." *Bedgood v. Wyndham Vacation Resorts, Inc.*, 88 F.4th 1355, 1364 n.5 (11th Cir. 2023).  "Contract interpretation is a legal question," and "it generally wouldn't make sense to require clear intent to delegate arbitrability questions to an arbitrator but then allow either arbitrators or administrators to decide that legal question." *Ciccio v. SmileDirectClub, LLC*, 2 F.4th 577, 585 (6th Cir. 2021).  Here, a JAMS administrator preliminarily decided an issue of contract interpretation—whether the parties' arbitration agreement allows consolidation—and that decision rendered it impossible for Jones to have that

issue decided by the arbitrator that she and Starz agreed to.  But that issue of contract interpretation was not for the JAMS administrator to decide.  Because the parties' contractual dispute runs to a process question that is antecedent to the appointment of an arbitrator, the Court must decide it now.

## III.   IF THE AGREEMENT IS INTERPRETED TO ALLOW CONSOLIDATION, IT IS UNCONSCIONABLE.

A. Application of Rule 6(e) to consolidate the arbitrations is unconscionable.

If the Court interprets the arbitration agreement to allow consolidated proceedings without consent and before an arbitrator has been appointed, that provision of the agreement is unconscionable.  The FAA "permits arbitration agreements to be declared unenforceable 'upon such grounds as exist at law or in equity for the revocation of any contract.'"  *Concepcion*, 563 U.S. at 339.  This "saving clause" permits the Court to invalidate any part of the arbitration agreement for any "generally applicable contract defenses, such as fraud, duress, or unconscionability."  *Id.*  A contract is unconscionable if one of the parties lacked a meaningful choice in deciding whether to agree and the contract contains terms that are unreasonably favorable to the other party."  *OTO, L.L.C. v. Kho*, 447 P.3d 680, 689 (Cal. 2019).  As such, "the doctrine of unconscionability has both a procedural and a substantive element."  *Heckman v. Live Nation Entmt.*, No. 22-CV-0047-GW-GJSx, 2023 WL 5505999, at *4 (C.D. Cal. Aug. 10, 2023) (quoting *Sanchez v. Valencia Holding Co.*, 353 P.3d 741 (Cal. 2015)).

On procedural unconscionability, "the Ninth Circuit has held that the elements of oppression and surprise are both 'satisfied by a finding that the arbitration provision was presented on a take-it-or-leave-it basis and that it was oppressive due to an inequality of bargaining power that resulted in no real negotiation and an absence of meaningful choice.'" *Heckman*, 2023 WL 5505999, at *5 (quoting *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1281 (9th Cir. 2006)). Here, Jones had no choice but to accept the terms offered on a take-it-or-leave-it basis; there was no opportunity for her to negotiate. And, as in *Heckman*, "it is hard to imagine a relationship with a greater power imbalance than that between Defendant[] and its consumers." *Id.*

Substantively, interpreting the Terms to allow consolidated proceedings without her consent and before an arbitrator is selected, would deprive Jones of her right to select an arbitrator under California law. Under California law, every "proposed neutral arbitrator" must submit a disclosure statement, and an arbitrator "shall be disqualified on the basis of the disclosure statement after any party entitled to receive the disclosure serves a notice of disqualification within 15 calendar days." Cal. Civ. Proc. §§ 1281.9, 1281.91(b)(1). California courts construe this provision to grant "an absolute right to disqualify [an arbitrator] without cause," *Roussos v. Roussos*, 275 Cal. Rptr. 3d 196, 203 (2021), and there is no "limit on the number of proposed neutrals who may be disqualified in this manner," *Azteca Constr., Inc. v. ADR Consulting, Inc.*, 18 Cal. Rptr. 3d 142, 146 (2004). The "provisions for

arbitrator disqualification established by the California Legislature may not be waived or superseded by a private contract." *Heckman*, 2023 WL 5505999, at *15 (quoting *Azteca*, 18 Cal. Rptr. 3d 142); *Roussos*, 275 Cal. Rptr. 3d at 197.  And because there is no conflict between California's arbitrator disclosure and disqualification rules and the FAA, the California rule is not preempted. *Heckman*, 2023 WL 5505999, at *15.  The JAMS Rules themselves note that "[i]f any of these Rules . . . is determined to be in conflict with a provision of applicable law, the provision of law will govern over the Rule in conflict, and no other Rule will be affected." JAMS, *Comprehensive Rules*, R-4.

After the arbitrations were consolidated and an arbitrator selected, neither Jones nor Starz (nor 68 other claimants) served a notice to disqualify Judge Andler. Yet JAMS took the position that if *any* claimant served a notice, that was sufficient to disqualify Judge Andler for *every* claimant.  The net effect is an unconscionable Hobson's choice: each claimant must sacrifice his or her individual right to strike an arbitrator for his or her proceeding or never proceed to arbitration.  To the extent the Terms purport to waive a nonwaivable right under California law, or JAMS Rule 6(e) allows consolidation of Petitioner's arbitration with other claimants' arbitrations, the Terms and Rule deprives Jones of her right to select an arbitrator under California law and is substantively unconscionable.

B. <u>Jones Should Not Be Required to Shoulder the Burden of Costly Pre-Arbitration Mediations</u>

The Starz Terms provide that the parties will "endeavor" to mediate any dispute as the first step of the arbitration process. Terms § 27. That is precisely what Jones attempted, but Starz argued that she was required to pay thousands of dollars in mediation fees based on the "ordinary custom and practice" for parties in commercial disputes to split mediation fees evenly. But Jones never agreed to pay such exorbitant fees—and, even if she had, such a requirement would plainly be unconscionable under California law.

The agreement provides that it will be governed by the JAMS *Comprehensive Rules*, "as modified by these Terms of Use." Terms § 27. The agreement itself does not specify who will be responsible for paying mediation fees. The JAMS *Minimum Standards*, which apply broadly to consumer form contracts, specify a $250 cap for fees that can be charged to consumers in arbitrations administered by JAMS. *See* Huber Decl., ECF No. 4, Ex. D. The *Minimum Standards* provide that, "when a consumer initiates arbitration against the company, the *only* fee required to be paid by the consumer is $250, which is approximately equivalent to current Court filing fees"—and "[a]ll other costs must be borne by the company[.]" *Id.* (emphasis added). JAMS provides that it will administer consumer arbitrations "only if the contract arbitration clause" complies with its *Minimum Standards*. *Id.*

The only fee Jones should be required to pay for the arbitration process—including any required mediation—is a maximum of $250 under the JAMS *Minimum Standards*. In *Nevarez v. Forty Niners Football Company*, for instance,

MEMORANDUM IN SUPPORT OF MOTION TO COMPEL ARBITRATION

the district court addressed consumers' worry that, "in order to participate in arbitration" pursuant to JAMS rules, "Plaintiffs will have to pay a non-refundable filing fee of $2,000 and professional fees of a mediator, which will range from $6,000 to $9,000 per day." No. 16-CV-07013, 2017 WL 3492110, at *12 (N.D. Cal. Aug. 15, 2017). In response, the court assured the consumers: the JAMS *Minimum Standards* guaranteed that their "total arbitration expenses will very likely not exceed $250." *Id.* The Court should give the same assurance to Jones. Jones also agreed to arbitrate pursuant to the JAMS *Minimum Standards*, which caps her total arbitration expenses at $250.

If this Court finds that Jones is required to evenly split mediation fees under the arbitration agreement, the proposed allocation of fees is unconscionable under California law. *See, e.g.*, *Chavarria v. Ralphs Grocery Co.*, 733 F.3d 916, 925 (9th Cir. 2013) (finding arbitration agreement unconscionable where it required employee to spend thousands of dollars in arbitration fees). This Court should, therefore, sever the unconscionable interpretation and require Starz to pay any mediation fees in excess of $250.

## IV. IF THE COURT DENIES JONES'S MOTION TO COMPEL, THE PARTIES' ARBITRATION AGREEMENT IS UNCONSCIONABLE UNDER *DISCOVER BANK*.

If the Court finds that the Parties' arbitration agreement allows consolidation and denies Jones's motion to compel her individual arbitration, the agreement is

1    unconscionable under *Discover Bank*, and Jones should be permitted to pursue her

2    claims in court.

3         Under California law, class-action waivers in consumer contracts of adhesion

4    such as the one at issue here are unconscionable.  *Discover Bank v. Superior Ct.*, 113

5    P.3d 1100, 1110 (Cal. 2005).  Although the Supreme Court held that FAA preempts

6    *Discover Bank* when it interferes with *individual* arbitrations, *Concepcion*, 563 U.S.

7    333, it is *not* preempted where, as would be applied here if consolidated arbitration

8    is permitted, it is applied to group arbitration.  Because there is no conflict between

9    the *Discover Bank* prohibition and the fundamental attributes of the present group

10   action, *Discover Bank* renders the Parties' arbitration agreement unconscionable.

## <u>CONCLUSION</u>

12        Jones filed her arbitration demand more than a year ago, but she is still unable

13   to get her day in arbitration—first because she did not pay thousands of dollars in

14   mediation fees, and now because a different person Jones does not know served a

15   notice of disqualification.  This Court should compel Starz to individual arbitration

16   of all disputes under the parties' arbitration agreement and require Starz to pay all

17   requisite fees in excess of $250.

18

19

20

21

Dated: February 22, 2024

Respectfully Submitted,

*/s/ Warren D. Postman*

**KELLER POSTMAN LLC**

Warren D. Postman (330869)
Albert Y. Pak (*pro hac vice*
forthcoming)
1101 Connecticut Ave, N.W.
Suite 1100
Washington, D.C. 20036
Telephone: 202-918-1123

Patrick A. Huber (*pro hac vice*)
150 North Riverside Plaza, Suite 4100
Chicago, IL 60606
Telephone: 312-280-5790

**LYNCH CARPENTER LLP**

Jae Kook Kim (236805)
117 East Colorado Boulevard, Suite
600
Pasadena, CA 91105
Telephone: 626-550-1250

*Attorneys for Petitioner*

MEMORANDUM IN SUPPORT OF MOTION TO COMPEL ARBITRATION

1

## **Certificate of Compliance**

2       The undersigned, counsel of record for Petitioners, certifies that this brief

3 contains 6,997 words, which complies with the word limit of L.R. 11-6.1.

4   February 22, 2024                    _/s/ Warren D. Postman_

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21