DLA PIPER LLP (US)
JEFFREY E. TSAI (SBN 226081)
jeff.tsai@us.dlapiper.com
555 Mission Street, Suite 2400
San Francisco, California 94105-2933
T: (415) 836-2500 | F: (415) 836-2501

ANGELA C. AGRUSA (SBN 131337)
angela.agrusa@us.dlapiper.com
2000 Avenue of the Stars
Suite 400, North Tower
Los Angeles, CA 90067
Tel. (310) 595-3000 | F: (310) 595-3300

DAVID HORNIAK (SBN 268441)
david.horniak@us.dlapiper.com
500 8th Street, NW
Washington, D.C. 20004
T: (202) 799-4000 | F: (202) 799-5000

*Attorneys for Respondent,*
STARZ Entertainment, LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISION

| | |
|---|---|
| KIANA JONES,<br><br>             Petitioner,<br><br>vs.<br><br>STARZ ENTERTAINMENT, LLC,<br><br>             Respondent. | Case No. 5:24-cv-00206-KK-DTB<br><br>**RESPONDENT STARZ ENTERTAINMENT, LLC'S OPPOSITION TO PETITIONER'S MOTION TO COMPEL ARBITRATION**<br><br>Hearing: Courtroom 3<br>Date:    March 21, 2024<br>Time:    9:30 A.M.<br>Judge:   Hon. Kenly Kiya Kato |

1
2

## TABLE OF CONTENTS

I.  INTRODUCTION ..................................................................................1

II.  BACKGROUND ..................................................................................2

    A.  Keller Submits Thousands of Arbitration Demands..........................2

    B.  The Parties Reach an Impasse on Pre-Arbitration Mediation .............3

    C.  Keller Seeks to Initiate 7,300 Arbitrations ...........................................4

    D.  JAMS Consolidates the Demands for Arbitration ...............................5

    E.  Keller Repeatedly Attempts to Undermine Arbitration.......................5

III.  LEGAL STANDARD ..........................................................................7

IV.  ARGUMENT .......................................................................................7

    A.  The Court Should Deny the Motion on Procedural Grounds ..............7

        1.  STARZ Has Not Refused to Arbitrate in Accordance with the Parties' Agreement ....................................................................7

        2.  Petitioner and STARZ Agreed to Delegate to JAMS................8

        3.  Consolidation is a Procedural Question that Should Be Resolved in Arbitration..............................................................12

    B.  Alternatively, the Court Should Deny the Motion on the Merits ......13

        1.  The TOU Permit Consolidation..............................................13

        2.  The TOU Do Not Cap Petitioner's Fees at $250....................16

        3.  The Parties' Agreement Is Not Unconscionable ....................17

V.  CONCLUSION ................................................................................23

# TABLE OF AUTHORITIES

**Cases**                                                                                                    **Page(s)**

*Ass'n for Disab. Amer. v. Integra Resort Manag.*,
   385 F. Supp. 2d 1272 (M.D. Fla. 2005) ............................................................. 16

*AT&T Mobility LLC v. Concepcion*,
   563 U.S. 333 (2011) ......................................................................... 11, 12, 23

*Bedgood v. Wyndham Vacation Resorts, Inc.*,
   88 F.4th 1355, 1363–64 (11th Cir. 2023) ....................................................... 10, 11

*Chavarria v. Ralphs Grocery Co.*,
   733 F.3d 916 (9th Cir. 2013) ......................................................................... 22, 23

*Ciccio v. SmileDirectClub, LLC*,
   2 F.4th 577 (6th Cir. 2021) ............................................................................ 11

*Cove Owners Ass'n v. 1205 Coastal LLC*,
   C. A. CPU6-19-000104 (Del. Com. Pleas Oct. 4, 2022) ................................... 16

*Discover Bank v. Superior Court*,
   36 Cal. 4th 148 (2005) ................................................................................ 2, 23

*Epic Sys. Corp. v. Lewis*,
   584 U.S. 497 (2018) .................................................................................... 8, 10

*Gordon v. G.R.O.U.P., Inc.*,
   49 Cal. App. 4th 998 (1996) ......................................................................... 18

*Hayter Trucking, Inc. v. Shell Western E&P, Inc.*,
   18 Cal. App. 4th 1 (1993) ............................................................................. 15

*Heckman v. LiveNation*,
   2023 WL 5505999 (C.D. Cal. Aug. 10, 2023) ....................................... 19, 21, 23

*Indep. Ass'n of Mailbox Ctr. Owners, Inc. v. Superior Court*,
   133 Cal. App. 4th 396 (Cal. Ct. App. 2005) .................................................... 21

*Kaspers v. Comcast Corp.*,
   631 F. App'x 779 (11th Cir. 2015) ................................................................. 11

*Kinecta Alt. Fin. Sols., Inc. v. Superior Court*,
   205 Cal. App. 4th 506 (2012) ....................................................................... 14

*Lamps Plus, Inc. v. Varela*,
  139 S. Ct. 1407 (2019)..................................................................11, 12

*Marx v. Gen. Rev. Corp.*,
  568 U.S. 371 (2013) .........................................................................20

*Nelsen v. Legacy Partners Residential, Inc.*,
  207 Cal. App. 4th 1115 (2012).........................................................14

*Nevarez v. Forty Niners Football Company, LLC*,
  2017 WL 3492110 (N.D. Cal. Aug. 15, 2017)..................................22

*Pokrass v. The DirecTV Grp., Inc.*,
  2008 WL 2897084 (C.D. Cal. July 14, 2008) ...................................18

*Romero v. Watkins & Shepard Trucking, Inc.*,
  2021 WL 3675074 (9th Cir. Aug. 19, 2021) .......................................7

*Roussos v. Roussos*,
  60 Cal. App. 5th 962 (2021) .............................................................20

*Sandquist v. Lebo Automotive, Inc.*,
  1 Cal. 5th 233 (2016).........................................................................14

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
  559 U.S. 662 (2010) ..........................................................................11

*Tompkins v. 23andMe, Inc.*,
  840 F.3d 1016 (9th Cir. 2016) ....................................................17, 22

*Viking River Cruises, Inc. v. Moriana*,
  596 U.S. 639 (2022) ...................................................................11, 12

**Statutes**

9 U.S.C. § 4 .......................................................................................7, 8

Cal. Civ. Proc. Code § 1281.3.................................................18, 20, 21, 22

Cal. Civ. Proc. Code § 1281.91(b).................................................*passim*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.   INTRODUCTION

The motion to compel arbitration (Dkt. 23) ("MTC"), as well as the Petition, is built on a false premise. STARZ and the thousands of claimants represented by the Keller law firm are *already* engaged in an ongoing arbitration proceeding with JAMS (which includes Petitioner Jones's claim), as required by the dispute resolution provision in STARZ's Terms of Use ("TOU"). But Keller is unhappy with some of JAMS's rulings, so it has improperly come to this Court seeking real-time reversal of JAMS—but only as to those JAMS decisions with which Keller disagrees.

Despite STARZ's pending Motion to Dismiss ("MTD") (Dkt. 19) filed on February 13, 2024, Keller nevertheless filed its duplicative MTC just to re-litigate the same arguments. Keller's MTC should be denied for the same reasons that the Court should grant STARZ's MTD.

*First*, there is no basis to compel arbitration under the FAA because STARZ has not refused to participate in the arbitration Petitioner filed. The parties have been engaged in that arbitration for more than six months. STARZ has timely paid its filing fees and cooperated promptly with JAMS's requests. The only reason the arbitration has not progressed is because Keller has done everything it can to thwart it.

*Second*, the TOU expressly delegate consolidation decisions to JAMS. The TOU incorporate the JAMS Rules, including JAMS Rule 6(e), which empowers JAMS—not the arbitrator, but "JAMS"—to consolidate arbitrations with common issues of law or fact. And the arbitrations at issue made sense to consolidate. They involve identical, boilerplate claims, filed at the same time, by claimants represented by the same law firm. It is more efficient, cost-effective, and fair for everyone—including Petitioner—to arbitrate them at the same time, before the same arbitrator.

*Third*, even if the TOU did not delegate consolidation decisions to JAMS,

STARZ'S OPPOSITION TO PETITIONER'S MOTION TO COMPEL ARBITRATION

settled law holds that consolidation of arbitrations is a procedural issue that courts do not decide.

*Fourth*, the Court should deny the MTC for lack of merit regarding consolidation because the TOU plainly permit JAMS to consolidate arbitrations. Nothing in the TOU prohibits consolidation, and by incorporating the JAMS Rules, the parties expressly agreed that JAMS would make consolidation decisions.

*Fifth*, the Court should deny the MTC for lack of merit regarding Keller's request for an order capping Petitioner's total fees for arbitration and mediation at $250. The TOU do not impose such a cap. Keller's argument relies entirely on the JAMS Consumer Arbitration Minimum Standards, which by their own terms only apply to *arbitration*, not mediation—as JAMS has already informed Keller. This Court should not second-guess JAMS's interpretation of its *own* standards.

*Sixth*, consolidation of arbitrations and splitting mediation fees 50/50 are not unconscionable. Both consolidation and mediation fee-splitting are customary and accepted in judicial fora; they do not magically become "unconscionable" simply by the change to an arbitration forum. Moreover, the Court should reject at threshold Keller's cynical attempt to strike selectively only those aspects of the parties' arbitration agreement and the JAMS Rules that pose obstacles to its hoped for settlement leverage.

*Seventh*, the parties' arbitration agreement is not unconscionable under *Discover Bank*. Another judge of this Court has already rejected Keller's argument and held it preempted by the FAA. This Court should do the same.

Keller's MTC should be denied.

## II. BACKGROUND

### A. Keller Submits Thousands of Arbitration Demands

In January 2023, Keller submitted to JAMS, on behalf of tens of thousands of individual claimants (including Petitioner), identical arbitration demands against STARZ. *See* Pet., ¶ 6; Pet., Ex. L at 1; Pet., Ex. J, Ex. 4 at 2. Each demand

STARZ'S OPPOSITION TO PETITIONER'S MOTION TO COMPEL ARBITRATION

concedes being bound by the same TOU version. *See* Pet., ¶ 3. The arbitration provision of the TOU provides as follows:

> All controversies, disputes or claims arising out of or relating to these Terms of Use will be determined pursuant to the mediation and arbitration procedures of JAMS, and administered by JAMS or its successor ("JAMS") in accordance with the comprehensive rules and procedures, including the optional appeal procedure, of JAMS ("JAMS Rules"), as modified by these Terms of Use. The parties will endeavor first to attempt to resolve the controversy or claim through mediation administered by JAMS before commencing any arbitration.
>
> . . .
>
> You and Starz agree that each may bring claims against the other only in your or its individual capacity, and not as a plaintiff or class member in any purported class or representative proceeding.

Pet., Ex. A at ¶ 27 (emphases added).

Following submission of the demands, Keller requested stays while the parties pursued pre-arbitration mediation as required by the TOU. Pet., Ex. L at 1.

**B.   The Parties Reach an Impasse on Pre-Arbitration Mediation**

To date, the required pre-arbitration mediations have not yet occurred. *See* Pet., ¶¶ 7, 10; Pet., Ex. F, Ex. 6 at 1. That is because STARZ and Keller did not reach agreement on how to conduct the mediation. *See* Pet., Ex. F, Ex. 4 at 1–2, 5; Pet., Ex. F, Ex. 6 at 1.

The impasse was not due to any STARZ refusal to mediate. STARZ has been—and remains—willing to participate in a single, consolidated mediation with any claimants who participate in the consolidated arbitration. *See* Pet., Ex. J, Ex 3 at 3 n.3. STARZ has also alternatively maintained that it would participate in individual pre-arbitration mediations where the parties split the mediation fees 50/50. *See* Pet., Ex. F, Ex. 4 at 1. STARZ has repeatedly offered to work with Keller to identify cost-effective mediators and creative mediation structures, such

STARZ'S OPPOSITION TO PETITIONER'S MOTION TO COMPEL ARBITRATION

as part-day mediations, virtual mediations, and considering mediators outside the JAMS network—but Keller has failed to respond to these offers. *See* Decl. of O. Kiefer ("Kiefer Decl.") at ¶ 4. STARZ has only objected to (1) participating in a single, consolidated mediation followed by thousands of *individual* arbitrations, and (2) Keller's attempt to saddle STARZ with the vast majority of the fees for 7,300 individual mediations.

On May 31, 2023, via a single email, Keller requested that JAMS initiate individual mediations on behalf of 7,300 claimants. *See* Pet., Ex. F, Ex. 3 at 1. Keller further requested that JAMS order STARZ to pay all mediation fees in excess of $250. *Id.* STARZ opposed, and on June 7, 2023, JAMS rejected Keller's request. Pet., Ex. L at 1.

### C.  Keller Seeks to Initiate 7,300 Arbitrations

Having failed to persuade JAMS on this point, Keller next sent JAMS a single email seeking to initiate 7,300 individual *arbitrations* so that the arbitrator could resolve the dispute over mediation fees. Pet., Ex. F, Ex. 6 at 1. Keller took the position that, "[u]nder the JAMS rules designated in the arbitration agreement, [the mediation fee] dispute is for a JAMS arbitrator to resolve," and demanded that JAMS "issue invoices to the parties to initiate the arbitration process." *Id.*

Through this demand, Keller sought to impose JAMS's $1,750 arbitration initiation fee on STARZ for each of Keller's 7,300 claimants. *See* Pet., Ex. D at 1; Pet., Ex. C at 3–21. If JAMS separately initiated all of the 7,300 arbitrations, STARZ would have been invoiced for $12,775,000 in arbitration initiation fees *alone*. *Id.*; Pet., Ex. F, Ex. 6 at 1. And on July 6, 2023, JAMS granted Keller's request to initiate arbitration over STARZ's objection. *See* Pet., ¶ 11; Pet., Ex. F, Ex. 7 at 1. *However*, JAMS also requested that the parties submit briefing to the JAMS National Arbitration Committee ("NAC") on whether the arbitrations

should be consolidated under JAMS Rule 6(e).[1] *Id.* Over the next four weeks, the parties submitted that briefing. *See* Pet., ¶¶ 12–13; Pet., Exs. F–G; J, Pet., Ex. 3.

### D.     JAMS Consolidates the Demands for Arbitration

On August 8, 2023, after "receiv[ing] and review[ing] the parties' positions on the issue of consolidation," the NAC determined that the 7,300 demands for arbitration should be consolidated. *See* Pet., ¶ 14; Pet., Ex. J, Ex. 4 at 1–3. The NAC determined that the TOU "do not prohibit the consolidation of multiple filings," that "California law on arbitrator selection and disqualification does not preclude the consolidation of these Demands," and that "consolidation would enable fair, efficient, and timely adjudication of these disputes." Pet., Ex. J, Ex. 4 at 2–3. As a result, JAMS invoiced STARZ for a single, consolidated arbitration initiation fee of $1,750. Kiefer Decl., Ex 1.

### E.     Keller Repeatedly Attempts to Undermine Arbitration

STARZ has been ready and willing to proceed with arbitration since JAMS commenced the arbitration seven months ago. *See* Kiefer Decl. at ¶ 7. It has promptly paid its share of the arbitration initiation fees; has not sought judicial relief; has responded timely to every request from JAMS; has participated in the arbitrator selection process; and has not sought to disqualify any arbitrators. *See id.* at ¶ 8.

But Keller has taken the opposite approach, and has consistently tried to derail and delay arbitration.[2] First, on September 27, 2023, Keller argued that the arbitration agreement was unconscionable and necessitated reversal of consolidation to the extent each claimant did not receive a separate hearing in his or her hometown. *See* Pet., Ex. J, Ex. 5 at 4. After hearing the parties' arguments

---

[1] JAMS Rule 1 states that "[t]he authority and duties of JAMS as prescribed in . . . in these Rules shall be carried out by the [NAC] . . . ." Pet., Ex. E at 4. The NAC "decides issues of controversy that may arise when the arbitrator is unavailable, has not yet been appointed, or the issue involves the arbitrator, such as claims of conflict." *See* www.jamsadr.com/arbitration?tab=overview.

[2] *See, e.g.*, Pet., Ex. J, Ex. 4 at 3; *see generally* Pet., Ex. J, Ex. 5 at 4; Pet., Ex. J, Ex. 8 at 1; Pet., Ex. J, Ex. 10 at 1.

STARZ'S OPPOSITION TO PETITIONER'S MOTION TO COMPEL ARBITRATION

yet again, JAMS declined to reverse the consolidation decision. *See* Pet., Ex. J, Ex. 6 at 1.

Next, the parties proceeded to strike and rank arbitrators, and JAMS appointed an arbitrator that neither party had struck. *See* Pet., Ex. J, Ex. 7 at 1. On November 30, 2023, fifteen days after JAMS circulated the arbitrator's disclosures—the very last day to disqualify an arbitrator under California Civil Procedure Code ("CCP") Section 1281.91(b)(1)—Keller sent a single email serving identical, boilerplate disqualification notices for 7,213 of the 7,282 claimants formally in arbitration. *Id.*; *see also* Pet., Ex. E at 9; Pet., Ex. J, Ex. 13. Those notices did not explain the basis for disqualification, and Keller repeatedly refused to give the reason(s). *See* Pet., Ex. J, Ex. 8 at 2; Pet., Ex. J, Ex. 10. STARZ opposed disqualification and argued that, if JAMS concluded the disqualification was valid, then the arbitrator must be disqualified from the entire consolidated arbitration under JAMS Rule 15(f). *See* Pet., Ex. J., Ex. 9 at 1–3. On January 8, 2024, the NAC concluded that JAMS would honor the requests for disqualification, but agreed with STARZ that the arbitrator had been disqualified from the entire consolidated arbitration, not just part of it. Pet., Ex. J, Ex. 13; *see also* Pet., ¶ 20.

On January 10, 2023, Keller sent STARZ a letter demanding that STARZ "stipulate to resolve the instant disputes with Claimants through individual arbitrations, and not in a consolidated arbitration." Pet., Ex. I at 1; *see also* Pet., ¶ 21. STARZ declined to stipulate and reiterated its willingness to proceed immediately with the consolidated arbitration. Pet., Ex. J at 3; *see also* Pet., ¶ 22.

On January 11, 2024, JAMS appointed a second arbitrator. *See* MTC (Dkt. 23) 11; Kiefer Decl., Ex. 2 at 1. Eight days later, Keller wrote to JAMS asking it "to suspend its administration of" the arbitration and "withdraw[] the appointment of" the arbitrator so that Keller could "seek relief in court." *Id.*, Ex. 3 at 1–2. STARZ opposed suspending the arbitration, and JAMS declined to suspend it. *See*

STARZ'S OPPOSITION TO PETITIONER'S MOTION TO COMPEL ARBITRATION

MTC, Ex. R at 1.

Meanwhile, Keller again waited 15 days following arbitrator appointment and then, on January 26, 2024, sent a single email serving identical, boilerplate notices of disqualification on behalf of all claimants, including Petitioner. *See* Kiefer Decl., Ex. 5. STARZ opposed disqualification, *see id.*, Ex. 6 at 1–2, but JAMS rejected STARZ's argument. *See* MTC, Ex. R at 1.

On February 14, 2024, JAMS appointed a third arbitrator. *See* Kiefer Decl., Ex. 7 at 1. Keller again waited 15 days. Then, on February 29, 2024, Keller sent a single email serving identical, boilerplate notices of disqualification on behalf of 7,257 claimants, but not Petitioner. *Id.*, Ex. 8.

STARZ expects Keller to keep disqualifying arbitrators as a stalling tactic until its Petition is resolved by this Court.

## III.   LEGAL STANDARD

"When faced with a motion to compel arbitration," the "threshold inquiry" for the court "is whether the parties agreed to arbitrate." *Romero v. Watkins & Shepard Trucking, Inc.*, 2021 WL 3675074, at *1 (9th Cir. Aug. 19, 2021) (quotations omitted). As the movant, Petitioner must prove that "[she] and Starz agreed to individual, bilateral arbitration." MTC 15; *see Romero* at *1.

## IV.   ARGUMENT

### A.   The Court Should Deny the Motion on Procedural Grounds

#### 1.   STARZ Has Not Refused to Arbitrate in Accordance with the Parties' Agreement

To invoke Section 4 of the FAA, Petitioner must demonstrate she has been "aggrieved" by STARZ's "failure, neglect, or refusal [] to arbitrate under a written agreement for arbitration." *See* 9 U.S.C. § 4.

To be clear, STARZ is participating in arbitration of Petitioner's claims right now—and Keller and Petitioner admit it. *See* Pet., ¶ 11. STARZ has timely paid its fees, participated in arbitrator selection, and promptly responded to

JAMS's inquiries. *See* Kiefer Decl. at ¶ 8. Keller served disqualification notices for the first appointed arbitrator; STARZ *opposed disqualification*. *Supra* p. 6. Keller asked JAMS to suspend the arbitration; STARZ *opposed suspension*. *Supra* pp. 6–7. Keller served disqualification notices for the second appointed arbitrator; STARZ *opposed disqualification*. *Supra* p. 7. Keller served disqualification notices for the third appointed arbitrator; STARZ will once again *oppose disqualification*. *See* Kiefer Decl. at ¶ 10. STARZ—in stark contrast to Keller—has consistently sought to move the arbitration forward. The Motion does not, and cannot, claim that STARZ has tried to subvert JAMS's administration of Petitioner's arbitration in any way.

Petitioner therefore fails to meet Section 4's most basic requirement that the Respondent has "fail[ed], neglect[ed], or refus[ed]" to arbitrate her dispute. *See* 9 U.S.C. § 4. Her Motion should be denied on this basis alone.

## 2. Petitioner and STARZ Agreed to Delegate to JAMS

The TOU delegated to JAMS the instant decisions on consolidation, arbitrator selection, and interpretation of the JAMS Rules. In the FAA, "[n]ot only did Congress require courts to respect and enforce agreements to arbitrate," but "also specifically directed them to respect and enforce *the parties' chosen arbitration procedures*." *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 505 (2018) (emphasis added). The FAA "requires courts 'rigorously' to enforce arbitration agreements according to their terms, including terms that specify with whom the parties choose to arbitrate their disputes *and the rules under which that arbitration will be conducted*." *Id.* (internal quotation marks omitted) (emphases altered).

Here, "the parties' chosen arbitration procedure[]" is that "[a]ll controversies, disputes or claims arising out of or relating to these Terms of Use will be determined pursuant to the mediation and arbitration procedures of JAMS, *and administered by JAMS or its successor ("JAMS") in accordance with the comprehensive rules and procedures*." Pet., Ex. A at ¶ 27 (emphases added). All

8

JAMS did here was "administer" the arbitrations Keller initiated "in accordance with the comprehensive rules and procedures":

- <u>Consolidation.</u> Under JAMS Rule 6(e), JAMS has the authority to consolidate arbitrations. *See* Pet., Ex. E, JAMS Rules, at 7 ("Unless the Parties' Agreement or applicable law provides otherwise, JAMS, if it determines that the Arbitrations so filed have common issues of fact or law, may consolidate Arbitrations . . . ."). Rule 6(e) expressly delegates this determination to "JAMS"—*i.e.*, not to the arbitrator—and JAMS Rule 1(c), in turn, provides that "JAMS" means the NAC. Pet., Ex. E at 4. Here, after hearing the arguments of the parties, the NAC determined that under JAMS Rule 6(e), consolidation is appropriate because the arbitrations have "common issues of fact or law" and "the Parties' Agreement or applicable law" does not prohibit consolidation.

- <u>Single Party.</u> Under JAMS Rule 15(f), "[e]ntities or individuals whose interests are not adverse with respect to the issues in dispute shall be treated as a single Party for purposes of the Arbitrator selection process." *See* Pet., Ex. E, JAMS Rules, at 10. Further, "JAMS shall determine whether the interests between entities or individuals are adverse for purposes of Arbitrator selection." *See id.* Here, the NAC simply applied these rules to conclude that a notice of disqualification from any claimant disqualifies the arbitrator from the entire consolidated arbitration.

- <u>Jurisdiction and Arbitrability.</u> Under JAMS Rule 11(b), "[j]urisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought . . . shall be submitted to and ruled on by the Arbitrator." Pet., Ex. E, JAMS Rules, at 8. In June 2023, Keller cited JAMS Rule 11(b) to argue to JAMS that, "[u]nder the JAMS rules designated in the arbitration agreement, [the parties' dispute over mediation fees] is for a JAMS arbitrator to resolve." Pet., Ex. F, Ex. 6 at 1. JAMS agreed with Keller and initiated arbitration

over STARZ's objection. *See* Pet., ¶ 11; Pet., Ex. F, Ex. 7 at 1. Here, all JAMS did was accept Keller's argument.

Thus, in consolidating Petitioner's demand for arbitration with other identical Keller demands, concluding that notices of disqualification disqualified the arbitrator from the entire consolidated proceeding, and referring the dispute on mediation fees to the arbitrator (at Petitioner's counsel's request), JAMS simply administered the arbitration "in accordance with the [JAMS] comprehensive rules and procedures," exactly as the TOU require.[3]

Keller contends that it "does not matter" that the parties agreed to JAMS Rule 6(e), because under the FAA, only "arbitrators, once appointed," can make such a determination. MTC 21. In other words, Keller claims the FAA prohibits parties from agreeing to JAMS Rule 6(e). That squarely contradicts the FAA's basic directive that courts must "respect and enforce the parties' chosen arbitration procedures." *See Epic*, 584 U.S. at 505. The cases Keller cites do not support such a proposition—in fact, they stand for the exact opposite.

In *Bedgood v. Wyndham Vacation Resorts, Inc.*, the Eleventh Circuit *rejected* the argument that a determination of "default" was "reserved to the arbitrator" and could not be decided by the arbitration administrator (in that case, AAA). 88 F.4th 1355, 1363–64 (11th Cir. 2023). The court reasoned that the AAA had authority to decide the issue because "the contracts at issue are governed by the AAA's Consumer Arbitration Rules, which expressly delegate policy-compliance determinations to the AAA administrator," and "no provision of the parties' contracts reallocates that authority to the arbitrator." *Id.* That is ***exactly***

---

[3] Keller cites a series of cases for the unremarkable idea that courts cannot consolidate arbitrations where the parties' agreement does not authorize it. *See* MTC 14–15. Those cases are inapposite because (1) no one is asking this Court to consolidate arbitrations and (2) the STARZ TOU expressly authorize consolidation by incorporating the JAMS Rules.

STARZ'S OPPOSITION TO PETITIONER'S MOTION TO COMPEL ARBITRATION

*what happened here.*[4] *Bedgood* supports enforcing the parties' delegation, through JAMS Rule 6(e), of consolidation decisions to JAMS.

In *Ciccio v. SmileDirectClub, LLC*, the Sixth Circuit merely held that "[b]y incorporating the AAA rules, the parties agreed that an arbitrator would decide gateway questions of arbitrability," and accordingly, "neither the administrator nor the district court should have decided whether [the plaintiff's] claims were arbitrable." *Ciccio v. SmileDirectClub, LLC*, 2 F.4th 577, 582 (6th Cir. 2021). Here, the issue is not arbitrability, it is consolidation, and by incorporating the JAMS Rules, the parties agreed that *JAMS*—not the arbitrator—would decide that issue.

Next, Keller argues that Supreme Court precedent establishes that *all* arbitrations must begin as "bilateral arbitration[s]" by default. MTC 18–21 (citing *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662 (2010); *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407 (2019); *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 348 (2011); and *Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639 (2022)). That is not what these cases hold:

- In *Stolt-Nielsen* and *Lamps Plus*, the Supreme Court held that *class* arbitration cannot be compelled when an arbitration agreement is silent or ambiguous as to whether the parties agreed to such a procedure. 139 S. Ct. at 1412, 1418. Here, the parties' agreement is neither silent nor ambiguous about consolidation. And even if it were, consolidation does not raise the same due process concerns as class arbitration.

- In *Concepcion* and *Viking River*, the Supreme Court held the FAA

---

[4] Keller quotes a *Bedgood* footnote (MTC 21) distinguishing an unpublished decision holding that the AAA (as opposed to the arbitrator) could not decide that an arbitration clause was unconscionable. *See* 88. F.4th at 1364 n.5 (distinguishing *Kaspers v. Comcast Corp.*, 631 F. App'x 779 (11th Cir. 2015)). Keller failed to point out that neither the parties' agreement nor the AAA rules delegated determinations of "merits-based issues" like an "arbitration clause's validity and enforceability" to the AAA. *See id.* Here, consolidation is not a "merits-based issue[]." And even if it were, the parties agreed to a JAMS Rule that expressly delegates that determination to JAMS.

STARZ'S OPPOSITION TO PETITIONER'S MOTION TO COMPEL ARBITRATION

preempted certain California laws that conflicted with contractual waivers of class and representative arbitrations. *See* 563 U.S. at 352 (FAA preempts law that conflicts with contractual waivers of class arbitration); 596 U.S. at 660–61 (FAA preempts law that conflicts with contractual waivers of representative arbitration). Here, no one is seeking to enforce a state law that conflicts with any provision of the parties' agreement. And, once again, consolidation is neither class nor representative arbitration.

In all of these cases, the Supreme Court simply observed that *class* and *representative* arbitration is fundamentally different from individual arbitration. Class and representative proceedings "raise[] serious due process concerns by adjudicating the rights of absent members of the plaintiff class . . . with only limited judicial review." *Lamps Plus, Inc.*, 139 S. Ct. at 1418. These concerns do not exist in a consolidated proceeding, where each claimant is a full and present participant in the proceeding, each claimant pursues only his or her own claims on his or her own behalf, and no claimant has authority to assert or resolve a claim on behalf of any other claimant. None of these cases even addresses consolidated proceedings. And none of these cases hold that arbitrations *must* be "bilateral" unless and until an arbitrator decides that they can proceed as class or representative actions.

At bottom, Keller seeks to use the FAA to have this Court rewrite the parties' agreement and the JAMS Rules. That is the exact *opposite* of the FAA's principles. *See, e.g.*, *Viking River*, 596 U.S. at 659 (FAA preempts state law that "*unduly circumscribes the freedom of parties to determine . . . the rules by which they will arbitrate*" (emphasis added)).

### 3.   Consolidation is a Procedural Question that Should Be Resolved in Arbitration

Even if the parties had not expressly delegated these issues to JAMS, the Motion would still need to be denied because it impermissibly asks the Court to decide procedural questions that are presumptively for arbitrators, not courts, to

decide. *See* STARZ's MTD (Dkt. 19) at Part IV.A.3.

**B.     Alternatively, the Court Should Deny the Motion on the Merits**

For the reasons stated above, the Court can and should deny the Motion on procedural grounds. However, the Motion also fails on its merits.

**1.     The TOU Permit Consolidation**

Keller is wrong that the TOU require what Keller refers to as "bilateral, individual arbitrations." *See* MTC 15. Indeed, the TOU do not contain those terms. *See* Pet., Ex. A. It is a Keller invention that painfully contorts the TOU provision that requires parties "bring claims against the other only in [their] individual *capacity*, not as a plaintiff or class member in any purported class or representative proceeding." Pet., Ex. A at ¶ 27 (emphasis added). As JAMS has repeatedly concluded, however, a plain reading of this provision shows that the TOU only prohibit claimants from bringing claims *on behalf of others*—not consolidation of arbitration demands brought in their individual capacity.

JAMS's determination is undoubtedly correct. The above-quoted provision does not prohibit "[n]on-bilateral procedures," as Keller contends. "Capacity" means "[t]he role in which one performs an act." Capacity, *Black's Law Dictionary* (11th ed. 2019). It has nothing to do with how many parties participate in a proceeding; it means that each party must act on their own behalf, and not on behalf of anyone else. *Cf.* Representative Capacity, *Black's Law Dictionary* (11th ed. 2019) ("The position of one standing or acting for another."). Similarly, "class or representative proceeding" refers to proceedings in which someone acts on behalf of someone else, either as a representative of a "class" or in another "representative" capacity (e.g., as an agent). *Id.* In a consolidated arbitration, every claimant still acts on their own behalf and therefore in their "individual capacity"; there is no "class"; and no claimant is a "representative" of another claimant. The plain meaning of this text has nothing to do with consolidation.

Next, Keller straw-man argues that the agreement between STARZ and

Petitioner identifies only "two parties," not "other Starz customers." MTC 15–16. STARZ does not dispute that it has a separate, identical arbitration agreement with each of the claimants in the consolidated arbitration, including Petitioner. But that does not speak to whether Petitioner and STARZ agreed that JAMS can consolidate their arbitration with other, similar arbitrations.

The two cases Keller cites do not hold otherwise. In *Kinecta Alternative Financial Solutions, Inc. v. Superior Court*, the court concluded that "[t]he arbitration provision in this case expressly limited arbitration to the arbitration of disputes between [plaintiff] and [defendant]" and "made no reference to, and did not authorize, class arbitration of disputes." *Kinecta Alt. Fin. Sols., Inc. v. Superior Court*, 205 Cal. App. 4th 506, 510 (2012). As a threshold matter, class arbitration is fundamentally different than consolidated arbitration, *supra* Part IV.A.2, and the California Supreme Court has expressly disapproved of *Kinecta* because it "simply assume[d] a court should decide the question [of whether class arbitration was authorized by the parties' agreement], without referring to the parties' agreement to determine what allocation that agreement makes." *Sandquist v. Lebo Automotive, Inc.*, 1 Cal. 5th 233, 260 (2016). Moreover, unlike *Kinecta*, the arbitration provision at issue here does *not* "expressly limit[] arbitration" to disputes between Petitioner and STARZ and *does* authorize consolidated arbitration by incorporating JAMS Rule 6(e). And in *Nelsen v. Legacy Partners Residential, Inc.*, 207 Cal. App. 4th 1115 (2012), the court simply followed *Kinecta* and similarly concluded that an arbitration agreement between the plaintiff and the defendant "did not encompass" class arbitrations. It did not consider, or address, whether the parties had agreed, or could agree, to consolidation of individual arbitrations.

Keller also argues that the parties' "initial conduct" evinces that STARZ believes the parties' agreement provides for "truly individual arbitrations." MTC 17. That argument fails for multiple reasons. First, the "conduct" Keller references

1  is parol evidence, and "[p]arol evidence cannot be admitted to show intention

2  independent of an unambiguous written instrument." *Hayter Trucking, Inc. v.*

3  *Shell Western E&P, Inc.*, 18 Cal. App. 4th 1, 15 (1993). The TOU is an

4  "unambiguous written instrument." It expressly incorporates the JAMS Rules, and

5  JAMS Rule 6(e) expressly authorizes JAMS to consolidate arbitrations "[u]nless

6  the Parties' Agreement or applicable law provides otherwise." As explained

7  above, the text of the TOU does not "provid[e] otherwise." Nor does Keller

8  identify any law prohibiting consolidation of arbitrations. *See infra* Part IV.B.3.a.

9  Thus, the agreement unambiguously authorizes consolidation.

10       Second, Keller mischaracterizes the parties' conduct. Of course, Keller filed

11  individual arbitration demands for its tens of thousands of clients. Choosing the

12  most inefficient and expensive approach is Keller's entire strategy; but it does not

13  shed any light on how the TOU should actually be interpreted. Keller also claims

14  that Petitioner "asked JAMS to proceed with individual mediations as a first

15  step"—but Keller omits that it *first* attempted to force STARZ to participate in *a*

16  *single, consolidated mediation for all claimants* (including Petitioner). MTC 17; *see*

17  Kiefer Decl. at ¶ 5. It was only when that strategy failed that Keller demanded

18  JAMS initiate individual mediations paid for almost entirely by STARZ. *See id.* at

19  ¶ 5. STARZ's position has *always* been that the TOU permit consolidated

20  mediation and arbitration—but, if Keller was to insist instead on individual

21  arbitrations, each claimant must also then participate in individual mediations and

22  split the fees per normal course and order in mediations. *See id.* at ¶ 6. In fact,

23  Keller has handled the arbitration demands in a consolidated fashion: having the

24  same counsel represent all claimants; serving identically worded demands and

25  disqualification notices; serving consolidated briefs on behalf of all claimants; and

26  sending single emails to initiate thousands of arbitrations and serve thousands of

27  disqualification notices.

28

## 2.    The TOU Do Not Cap Petitioner's Fees at $250[5]

Keller argues that under the TOU, Petitioner's total fees for pre-arbitration mediation *and* arbitration are capped at $250. MTC 24–26. Not so. The ordinary custom and practice is for parties to split mediation fees equally. *See, e.g., Cove Owners Ass'n v. 1205 Coastal LLC*, C. A. CPU6-19-000104, at *3 (Del. Com. Pleas Oct. 4, 2022) ("Traditionally, parties split mediators' fees, and Delaware Courts have been reluctant to disturb this practice."); *Ass'n for Disab. Amer. v. Integra Resort Manag.*, 385 F. Supp. 2d 1272, 1304 (M.D. Fla. 2005) ("The mediation fee . . . is typically split between the parties."). The STARZ terms of use do not deviate, either expressly or impliedly, from this custom and practice. *See* Pet., Ex. A at ¶ 27.

Keller contends that the JAMS Consumer Arbitration Minimum Standards ("Standards") apply to this arbitration, and that under the Standards, Petitioner's total fees are capped at $250. MTC 25. But by their express terms, the Standards apply only to *arbitration*, not to mediation.[6] Pet., Ex. D. JAMS agrees: "[t]he JAMS Consumer Minimum Standards apply to certain arbitrations at JAMS and address inter alia costs unique to arbitration. *The Minimum Standards do not apply to mediations or mediation fees*."  *See* MTC Ex. C (emphasis added).

Further, even if the Standards were relevant to apportioning mediation costs, they do not in any way suggest that $250 is a cap on what a consumer can be required to pay to pursue his or her claims. Rather, they make clear that the $250 arbitration filing fee is simply meant to be "approximately equivalent to

---

[5] Petitioner should be judicially estopped from seeking the Court's intervention on mediation fees, for the reasons stated in STARZ's MTD. *See* Dkt. 19. If the Court agrees with that argument, then it need not reach the merits of this issue.

[6] The STARZ TOU make clear that the mediation the parties have agreed to is *not* arbitration, including by expressly stating that the parties must engage in "mediation administered by JAMS *before commencing any arbitration*." *See* Pet., Ex. A at ¶ 27 (emphasis added).

STARZ'S OPPOSITION TO PETITIONER'S MOTION TO COMPEL ARBITRATION

1   current Court filing fees." Pet., Ex. D. That is categorically different from saying

2   that "only fee [Petitioner] should be required to pay for the arbitration process—

3   including any required mediation—is a maximum of $250 under the JAMS

4   Minimum Standards." MTC 25. Nothing in the Standards relieves consumers from

5   having to incur other costs associated with pursuing their claims. *See* Pet., Ex. D.

6   And nothing in the TOU suggests otherwise. *See* Pet., Ex. A.

### 3.     The Parties' Agreement Is Not Unconscionable

8       Keller's last-gasp argument that certain provisions of the TOU and JAMS

9   Rules are unconscionable (in the event the Court declines Keller's invitation to

10  rewrite the TOU and the JAMS Rules) (MTC 22–26) highlights the absence of a

11  principled position.

12      "Unconscionability has both a procedural and a substantive element, the

13  former focusing on oppression or surprise due to unequal bargaining power, the

14  latter on overly harsh or one-sided results." *Tompkins v. 23andMe, Inc.*, 840 F.3d

15  1016, 1023 (9th Cir. 2016) (quotations omitted). "Both procedural and substantive

16  unconscionability must be present in order for a clause to be unconscionable." *Id.*

17  "The party asserting that a contractual provision is unconscionable bears the

18  burden of proof." *Id.*

19      Here, Keller does *not* contend the arbitration agreement as a whole, or the

20  entire body of JAMS Rules, is unconscionable. Instead, it asks this Court to only

21  selectively strike bits and pieces of the process favorable to Keller. That is not

22  appropriate. If the Court were to find any aspect of the arbitration provision of the

23  TOU or the JAMS Rules unconscionable (and it should not, for the numerous

24  reasons in this opposition and STARZ's MTD [Dkt. 19]), then the only logical

25  recourse is for the Court to strike the entire arbitration provision in the TOU. A

26  Keller-curated, selective trimming of only the parts of the arbitration provision

27  and the JAMS Rules that Keller perceives as an obstacle to imposing massive

28  arbitration fees on STARZ to obtain settlement leverage is neither fair nor

grounded in law.

(a)    **Consolidation is not unconscionable.**

Keller contends the parties' agreement is unconscionable if it allows for consolidation under JAMS Rule 6(e). MTC 22. In fact, consolidation is a common procedure that numerous fora employ, including federal and state courts. The California legislature has even enacted law allowing arbitration consolidation. *See* Cal. Civ. Proc. Code § 1281.3. Courts have consistently recognized that consolidation promotes efficiency, consistency, and fairness, and ensures that the limited resources of parties, arbitrators, and arbitration administrators are not wasted unnecessarily on duplicative "bilateral" proceedings that involve the exact same claims and issues. *See, e.g.*, *Gordon v. G.R.O.U.P., Inc.*, 49 Cal. App. 4th 998, 1006 (1996) ("By adopting section 1281.3, California has manifested a strong policy *favoring consolidating arbitrations* involving common issues of law and fact." (emphasis added)).

Analysis of each element of the unconscionability (procedural and substantive) supports a rejection of Keller's argument.

**Procedural.** Keller's sole argument that the arbitration agreement's incorporation of the JAMS Rules (including JAMS Rule 6(e)) is procedurally unconscionable is that it was "offered on a take-it-or-leave-it basis" with "no opportunity for [Petitioner] to negotiate." MTC 23. But where, as here, the contract is for non-essential, recreational activities, the subject of the contract weighs against a finding that the agreement is procedurally unconscionable—even in cases involving non-negotiated terms. *See, e.g., Pokrass v. The DirecTV Grp., Inc.*, 2008 WL 2897084, at *7 (C.D. Cal. July 14, 2008) (collecting cases). Just as DirecTV's "satellite-delivered television entertainment . . . is a nonessential recreational activity," *id.*, Petitioner's STARZ subscription entitles her to the nonessential recreational activity of "stream[ing] video content on the STARZ platform." Pet. ¶ 1. This weighs against finding procedural unconscionability.

18

Keller misleadingly quotes from *Heckman v. LiveNation* to argue that "[a]s to unequal bargaining power, it is hard to imagine a relationship with a greater power imbalance than that between Defendants and its consumers." MTC 23 (quoting 2023 WL 5505999, at *5 (C.D. Cal. Aug. 10, 2023)). However, Keller's Motion places a period where there is actually a comma: "As to unequal bargaining power, it is hard to imagine a relationship with a greater power imbalance than that between Defendants and its consumers, *given Defendants' market dominance in the ticket services industries*." *Id.* (emphasis added). In *Heckman*, the Court's procedural unconscionability finding focused on Ticket Master's and LiveNation's near-monopoly in the market for live entertainment, not the adhesive nature of the applicable agreement. *See id.* ("Because Defendants are often in effect the only ticketing game in town, would-be concert goers are forced to accept Defendants' TOU in full, or else forego the opportunity to attend events altogether."). Petitioner does not—and cannot—allege that STARZ is the only streaming service available to consumers. They have myriad other streaming options if they do not agree to the TOU. *Heckman* is distinguishable.

**<u>Substantive.</u>** As to substantive unconscionability, Petitioner only argues that "interpreting the Terms to allow consolidated proceedings without her consent and before an arbitrator is selected, would deprive [Petitioner] of her right to select an arbitrator under California law." MTC 23 (citing Cal. Civ. Proc. Code § 1281.91(b)). But there is no conflict between Section 1281.91(b)(1) and consolidation.

Section 1281.91(b)(1) does not confer an unwaivable right "to select" an arbitrator. MTC 24. Rather, it confers a *waivable* right to *disqualify* an arbitrator. *See* Cal. Civ. Proc. Code § 1281.91(b)(1)–(c) (discussing disqualification and stating circumstances under which right can be waived). Here, JAMS has appointed each arbitrator pursuant to the TOU and JAMS Rules. *See* Kiefer Decl. at ¶ 9. Every time a new arbitrator is appointed, any party has the right to seek to

STARZ'S OPPOSITION TO PETITIONER'S MOTION TO COMPEL ARBITRATION

1    disqualify the "proposed neutral arbitrator" on the basis of the proposed

2    arbitrator's disclosure statement within 15 days of receipt of the disclosure

3    statement. Cal. Civ. Proc. Code § 1281.91(b)(1). In a consolidated arbitration,

4    each party—including every claimant—*still* has that right. The fact that one

5    claimant may disqualify an arbitrator that another claimant would prefer to keep is

6    of no moment under Section 1281.91(b)(1). Indeed, the effect would be no

7    different than if STARZ disqualified the very same arbitrator, which it

8    unquestionably has the right to do.

9          This conclusion is consistent with *Roussos v. Roussos*, 60 Cal. App. 5th

10   962, 971 (2021), which Keller's Motion cites. *See* MTC 23–24 (citing *Roussos*

11   for the proposition that "Petitioner has the absolute right to disqualify [an arbitrator]

12   without cause."). In *Roussos*, the issue was whether the parties could "contract

13   away" or limit the right to disqualify an arbitrator under Section 1281.91(b)(1).

14   *See id.* at 967 ("[W]e conclude the parties cannot contract away California's

15   statutory protections for parties to an arbitration, including mandatory

16   disqualification of a proposed arbitrator . . . ."). Here, *no one* has contracted away

17   that right, and JAMS has respected the right of 7,213 of Keller's claimants to do

18   so. *See* MTC, Ex. O.

19         Keller's extraordinarily expansive interpretation of Section 1281.91(b)(1) is

20   also wrong because it conflicts with, and asks the Court to nullify entirely, a

21   different provision of the same law—Section 1281.3—in which the California

22   Legislature expressly authorized consolidation of arbitrations. *See* Cal. Civ. Proc.

23   Code § 1281.3. Under Petitioner's reading of Section 1281.91(b)(1), no arbitration

24   governed by California law could ever be consolidated because it would interfere

25   with each claimant's right to disqualify the arbitrator independently from any

26   other claimant. Tellingly, Petitioner cites no authority in support—and that is

27   because none exists. Such an interpretation violates basic principles of statutory

28   construction by rendering all of section 1281.3 surplusage. *See, e.g., Marx v. Gen.*

20

*Rev. Corp.,* 568 U.S. 371, 386 (2013) ("[T]he canon against surplusage is strongest when an interpretation would render superfluous another part of the same statutory scheme."). Keller's interpretation also conflicts with California decisions that consolidated arbitrations are permissible. *See, e.g., Indep. Ass'n of Mailbox Ctr. Owners, Inc. v. Superior Court,* 133 Cal. App. 4th 396, 410 (2005) ("[G]roup arbitration can be a valid means of dispute resolution where the statutory and case law criteria for consolidation are satisfied.").

Keller's additional reliance here on *Heckman* for this proposition is similarly misplaced—as Keller well knows as counsel of record in that case. In *Heckman*, a party's right to disqualify an arbitrator under the arbitration provider's rules was expressly overridden by the arbitration provider's discretion. *See* No. 2:22-cv-00047, Dkt. 135 (noting that the arbitration provider's rules at issue in *Heckman* provided that "[i]f a party objects to an arbitrator, [the arbitrator] can nonetheless serve if New Era decides "*that the neutral can still maintain impartiality notwithstanding the disclosed matter*[]' [and that] 'New Era ADR shall make the final determination whether, in its sole discretion, the objection to a neutral's impartiality requires replacement of the neutral'" (quoting New Era ADR's rules)). In contrast, the JAMS Rules provide no ability to override a party's right to disqualify an arbitrator on the basis of the disclosure statement. *See* Pet., Ex. E at 9. There is no argument that any party has "contract[ed] away" or otherwise limited its right to disqualify an arbitrator. Every party has very same rights in a consolidated arbitration.

Nor can Keller argue that there is no conflict between its expansive interpretation of the disqualification rights conferred by Section 1281.91(b)(1) and CCP Section 1281.3—which expressly authorizes courts to consolidate arbitrations—because JAMS, not a court, consolidated the arbitrations. *See* Opp. to MTD 22. *If* Keller's interpretation of Section 1281.91(b)(1) were correct (and it is not), Section 1281.3 would *never* apply because consolidation would always

interfere with individual claimants' disqualification rights. The more logical way to reconcile Sections 1281.3 and 1281.91(b)(1) is the way JAMS has interpreted it: it gives each participant in the arbitration a right to disqualify the arbitrator, but it does not entitle each participant to a particular arbitrator.

### (b)     Mediation-fee splitting is not unconscionable.

Keller contends that if the TOU and the JAMS Rules require Petitioner to bear any fees in excess of $250—including any mediation fees—then that is unconscionable. That is obviously not true. The TOU are not procedurally unconscionable for the reasons stated above. *Supra* Part IV.B.3.a. And requiring a claimant to pay 50% of pre-arbitration mediation fees is not substantively unconscionable. If a consumer were to file a lawsuit in court, the consumer would still have to incur fees in addition to a filing fee, such as attorneys' fees, discovery costs, and fees for court-ordered mediation—the consumer's costs would not be limited to just a filing fee. Mediation is one of the ordinary costs of litigating that a consumer can reasonably be expected to incur. Further, the point of pre-arbitration mediation is to *avoid* the costs of arbitration. If the mediation is successful, then the consumer will have *avoided* incurring any other fees, including filing fees. Splitting mediation fees 50/50 is plainly not an "overly harsh or one-sided result[].'" *Tompkins*, 840 F.3d at 1023.[7]

Further, despite Keller's protestations, Petitioner is not actually facing prohibitive costs to mediate. STARZ has been willing—and remains willing—to find cost-effective paths to mediation that are fair to both parties. *Supra* Part II.B.

At bottom, Petitioner impermissibly asks the Court to invalidate the

---

[7] Keller cites to dicta in *Nevarez v. Forty Niners Football Company, LLC* (MTC 26), but in *Nevarez*, the court actually *granted* the defendant's motion to compel arbitration and rejected the plaintiffs' unconscionability arguments regarding arbitration fees. *See* 2017 WL 3492110, at *14 (N.D. Cal. Aug. 15, 2017). Keller's reliance on *Chavarria v. Ralphs Grocery Co.*, 733 F.3d 916, 925 (9th Cir. 2013), is similarly misplaced. *See* MTC 26. Like *Nevarez*, *Chavarria* addressed arbitration fees—not mediation fees. *See* 733 F.3d at 921.

STARZ'S OPPOSITION TO PETITIONER'S MOTION TO COMPEL ARBITRATION

mediation clause based on the "mere risk that a plaintiff will face prohibitive costs," which the Ninth Circuit has held "is too speculative to justify invalidating an arbitration agreement." *See Chavarria*, 733 F.3d at 925–26. The Court should decline Keller's invitation to invalidate the mediation clause and instead allow the parties to do what STARZ has advocated: work together to identify mutually acceptable mediators and a cost-effective mediation procedure. *See* Pet., Ex. F, Ex. 4 at 1–2.

### (c)     *Discover Bank* does not apply.

In a final, cursory argument, Keller contends *Discover Bank v. Superior Court*, 36 Cal. 4th 148, 162–63 (2005), authorizes a pursuit of claims in court on unconscionability grounds if the Court denies the MTC. MTC 26–27. This argument fails.

As an initial matter, and as Keller concedes, the Supreme Court overruled *Discover Bank* nearly thirteen years ago because it conflicts with the FAA. MTC 27 (citing *Concepcion*, 563 U.S. 333). Keller attempts to get around this precedent by arguing that *Concepcion* only overruled *Discover* as to "*individual* arbitrations," not consolidated arbitrations. *Id*. But Keller fails to mention that Keller made the exact same argument in *Heckman* (C.D. Cal.)—and the court rejected it. *See* 2023 WL 5505999, at *17 (emphasis added). This Court should reject Keller's argument for the same reasons.

## V.     CONCLUSION

For the foregoing reasons, the Court should deny Keller's MTC.

Dated: February 29, 2024                              DLA PIPER, LLP (US)


                                    By:    */s/ JEFFREY E. TSAI*
                                           JEFFREY E. TSAI
                                           ANGELA C. AGRUSA
                                           DAVID HORNIAK

                                           *Attorneys for Respondent,*
                                           STARZ Entertainment LLC

23

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **Local Rule 11-6 Verification**

The undersigned, counsel of record for Respondent STARZ Entertainment LLC, certifies that this brief contains 6,956 words, which complies with the word limit of L.R. 11-6.1.

Dated: February 29, 2024                    DLA PIPER, LLP (US)


                                             By:   /s/ JEFFREY E. TSAI
                                                   JEFFREY E. TSAI
                                                   *Attorneys for Respondent,*
                                                   STARZ Entertainment LLC

STARZ'S OPPOSITION TO PETITIONER'S MOTION TO COMPEL ARBITRATION