**KELLER POSTMAN LLC**
  Warren D. Postman (330869)
  wdp@kellerpostman.com
  Albert Y. Pak (*pro hac vice*)
  albert.pak@kellerpostman.com
1100 Connecticut Ave, N.W. Suite 1100
Washington, D.C. 20036
Telephone: 202-918-1123
Facsimile: 312-971-3502

  Patrick A. Huber (*pro hac vice*)
  patrick.huber@kellerpostman.com
150 North Riverside Plaza, Suite 4100
Chicago, IL 60606
Telephone: 312-280-5790
Facsimile: 312-971-3502

**LYNCH CARPENTER LLP**
  Jae Kook Kim (236805)
  ekim@lcllp.com
117 East Colorado Boulevard, Suite 600
Pasadena, CA 91105
Telephone: 626-550-1250
Facsimile: 619-756-6991
*Attorneys for Petitioner*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISION

| | |
|---|---|
| KIANA JONES,<br><br>        Petitioner,<br><br>        vs.<br><br>STARZ ENTERTAINMENT, LLC,<br><br>        Respondent. | Case No. 5:24-cv-00206-KK-DTB<br><br>**PETITIONER'S REPLY IN FURTHER SUPPORT OF MOTION TO COMPEL ARBITRATION**<br><br>**Judge Kenly Kiya Kato**<br><br>**Date: March 21, 2024**<br>**Time: 9:30 A.M.** |

1

## **<u>TABLE OF CONTENTS</u>**

2

3

INTRODUCTION ...................................................................................................... 1

ARGUMENT ............................................................................................................. 4

4

   I.     Starz Has Refused To Arbitrate Per The Terms Of The Arbitration

5         Agreement. ................................................................................................... 4

   II.    The Court Has Authority To Compel Starz To Individually

6        Arbitrate The Threshold Issues Of Arbitrability.......................................... 5

7      A.   The Terms Provide For Individual, Bilateral Arbitration ........................... 6

     B.   Applicable Law Supports Individual, Bilateral Arbitration........................ 9

8      C.   The Court Has Authority To Order Individual, Bilateral

        Arbitration—Not JAMS Administrators. ........................................... 12

9    III.   If The Court Determines That The Terms Allow Consolidation Of

       The Arbitrations Of Gateway Arbitrability Disputes Or That There

10       Is No Fee Cap, Then Those Provisions Are Unconscionable.................... 17

11      A.   Application of Rule 6(e) to consolidate the arbitrations of threshold

       arbitrability disputes is unconscionable............................................. 17

12      B.   Requiring Jones to Pay More than $250 in Arbitration-Related

       Fees Is Unconscionable. .................................................................. 19

13      C.   This Court Should Sever Any Unconscionable Provisions of the

       Starz Terms ...................................................................................... 22

14    IV.   If The Court Denies Petitioner's Motion, The Parties' Agreement

       Is Entirely Unconscionable Under *Discover Bank*. ................................ 23

15 CONCLUSION........................................................................................................ 24

16

17

18

19

20

21

1

# <u>TABLE OF AUTHORITIES</u>

2

**Cases**                                                                 **Page(s)**

3

*Abernathy v. DoorDash, Inc.*,
   438 F. Supp. 3d 1062 (N.D. Cal. 2020) ............................................................22

4

*Am. Exp. Co. v. Italian Colors Rest.*,
5
   570 U.S. 228 (2013) ............................................................................................4

*Armendariz v. Found. Health Psychcare Servs., Inc.*,
6
   6 P.3d 669 (Cal. 2000) ......................................................................................20

7

*Ass'n for Disabled Am. v. Integra Resort Mgmt.*,
   385 F. Supp. 2d 1272 (M.D. Fla. 2005) ...........................................................21

8

*AT&T Mobility LLC v. Concepcion*,
9
   563 U.S. 333 (2011) ..........................................................................................23

*Bedgood v. Wyndham Vacation Resorts, Inc.*,
10
   88 F.4th 1355 (11th Cir. 2023) .........................................................................15

11

*Chavarria v. Ralphs Grocery Co.*,
   733 F.3d 916 (9th Cir. 2013) ............................................................................20

12

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
13
   207 F.3d 1126 (9th Cir. 2000) ............................................................................5

14

*Ciccio v. SmileDirectClub, LLC*,
   2 F.4th 577 (6th Cir. 2021) ..............................................................................15

15

*Cove Owners Ass'n v. 1205 Coastal LLC*,
16
   No. CPU6-19-000104, 2022 WL 16631284 (Del. Com. Pl. Oct. 4,
   2022) ..................................................................................................................21

17

*D.C. v. Harvard-Westlake Sch.*,
   176 Cal. App. 4th 836 (2009) ..........................................................................20

18

*Discover Bank v. Superior Ct.*,
19
   113 P.3d 1100 (Cal. 2005) ...............................................................................23

20

*Epic Sys. Corp. v. Lewis*,
   138 S. Ct. 1612 (2018) .......................................................................................4

21

*Flora v. Prisma Labs, Inc.*,
    No. 23-CV-00680-CRB, 2023 WL 5061955 (N.D. Cal. Aug. 8,
    2023) ............................................................................................... 23

*Grabowski v. Robinson*,
    817 F. Supp. 2d 1159 (S.D. Cal. 2011) ........................................... 23

*Heckman v. Live Nation Ent., Inc.*,
    No. 22-CV-0047-GW-GJSX, 2023 WL 5505999 (C.D. Cal. Aug.
    10, 2023) ............................................................................. 11, 18, 24

*Ingle v. Cir. City Stores, Inc.*,
    328 F.3d 1165 (9th Cir. 2003) ......................................................... 20

*Lamps Plus, Inc. v. Varela*,
    139 S. Ct. 1407 (2019) .................................................................... 10

*Lang v. Skytap, Inc.*,
    347 F. Supp. 3d 420 (N.D. Cal. 2018) ............................................. 22

*Lawson v. Life of the S. Ins. Co.*,
    648 F.3d 1166 (11th Cir. 2011) .......................................................... 7

*Lhotka v. Geographic Expeditions, Inc.*,
    181 Cal. App. 4th 816 (2010) .......................................................... 18

*Lim v. TForce Logistics, LLC*,
    8 F.4th 992 (9th Cir. 2021) .............................................................. 17

*Lucas v. Gund, Inc.*,
    450 F. Supp. 2d 1125 (C.D. Cal. 2006) ........................................... 20

*Pokorny v. Quixtar, Inc.*,
    601 F.3d 987 (9th Cir. 2010) ........................................................... 23

*Pope v. Sonatype, Inc.*,
    No. 5:15-CV-00956-RMW, 2015 WL 2174033 (N.D. Cal. May 8,
    2015) ............................................................................................... 23

*Reigelsperger v. Siller*,
    150 P.3d 764 (Cal. 2007) ................................................................... 8

*Roussos v. Roussos*,
    60 Cal. App. 5th 962 (2021) ...................................................... 10, 19

*Sandquist v. Lebo Auto., Inc.*,
  376 P.3d 506 (Cal. 2016)....................................................................................8

*Shivkov v. Artex Risk Solutions, Inc.*,
  974 F.3d 1051 (9th Cir. 2020)..................................................................12, 13

*Sonic-Calabasas A, Inc. v. Moreno*,
  311 P.3d 184 (Cal. 2013).................................................................................20

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
  559 U.S. 662 (2010) ........................................................................................10

*Szetela v. Discover Bank*,
  97 Cal. App. 4th 1094 (2002).........................................................................18

*Viking River Cruises, Inc. v. Moriana*,
  596 U.S. 639 (2022) ....................................................................................9, 10

**Federal Statutes**

9 U.S.C. § 4........................................................................................3, 4, 5

**Other Authorities**

Cal. Civ. Proc. § 1281.3.................................................................................11

Cal. Civ. Proc. § 1281.91........................................................................4, 10, 19

13 Samuel Williston & Richard A. Lord, *A Treatise on the Law of
  Contracts* § 37:1 (4th ed. 1999)......................................................................7

# INTRODUCTION

When Jones[1] signed up for an online streaming account, she was required to forfeit her right to sue Starz in court for any claim arising out of her use of Starz's video-streaming platform. And when Starz violated Jones's privacy rights, Jones complied with the take-it-or-leave-it Terms and filed an individual demand for arbitration.

More than a year later, Jones still has not been able to present her claims to an arbitrator. Starz continues to refuse to arbitrate on the terms it forced Jones to accept. And now, in response to Jones's Petition to Compel Arbitration, Starz tells the Court that the Court lacks authority to compel compliance with the parties' arbitration agreement because that authority has been delegated to JAMS administrators or to the arbitrator.

But JAMS *administrators*, for one, cannot decide the quintessentially legal question—a pure question of contract interpretation and a threshold question of arbitrability—whether the parties' contract and applicable law permit consolidation of Jones's arbitration with others' arbitrations, and there is no clear and unmistakable party agreement to that effect. And an *arbitrator* cannot decide anything until appointed and confirmed. The whole point of the Petition is that Starz has refused

---

[1] Although Defendant repeatedly refers to "Keller" as the party in this case, the Petitioner is Kiana Jones, a resident of San Bernardino County, California, who alleges that Starz violated her privacy rights by disclosing her identity and the videos she watched on the Starz platform to third-party advertising and analytics companies. Pet. ¶¶ 1, 2, 26.

to arbitrate with Jones by refusing to proceed to an individual arbitration of those delegated issues of arbitrability—resulting in Jones being blocked from raising those delegated issues to an appointed arbitrator that suited both Jones and Starz, just because some other individuals did not wish to proceed in their individual arbitrations with that appointed arbitrator.  The issue could not more clearly be the type of gateway issue the Ninth Circuit has said is for courts to presumptively decide.  The Court should grant Jones's Motion to Compel for the reasons stated in the Motion and echoed in her Opposition to Starz's Motion to Dismiss.

*First*, Starz is not participating in the arbitration agreed to by the parties.  After Jones filed her individual arbitration demand in JAMS, Starz argued that Jones needed to pay thousands of dollars to *mediate* her claim individually as a precondition to arbitration.  And when Jones balked—because such payment was never contemplated by the parties—JAMS agreed that the issue of who should pay for mediation is one for the arbitrator.  Changing its tune, Starz then argued that Jones's arbitration must be *consolidated* with thousands of other individuals' arbitrations, and that any one of them could disqualify the arbitrator appointed to Jones's dispute.  And so, even though neither Jones nor Starz objected to the appointed arbitrator, Jones has been denied the opportunity to arbitrate the threshold dispute about who pays for exorbitant mediation fees.  Starz is more than happy to "arbitrate" this way, ensuring that no aggrieved claimant—not Jones or anybody else—is *ever* given audience on the merits.  But the FAA does not merely compel

Starz to arbitrate in some form.  It requires Starz to arbitrate in compliance with the "written agreement for arbitration" between it and Jones.  9 U.S.C. § 4.  That agreement does not state or even intimate that Jones's right to commence arbitration hinges on the choices of *thousands of strangers* to her contract with Starz.

To the contrary, the agreement is crystal clear that Jones agreed to arbitrate "only in [her] individual capacity," including in selecting her own arbitrator pursuant to black-letter California law.  There is nothing "individual" about merging Jones's arbitration with thousands of others and converting Jones's individual choice to proceed with an arbitrator into an all-or-nothing group decision about whether to do so.  The Court should compel the arbitration Jones and Starz agreed to, not the post hoc, sham proceeding that Starz is championing and that will forestall arbitration perpetually.

*Second*, the agreement, as (now) interpreted by Starz, would be unconscionable because it pretends to facilitate an arbitration that will never happen, and because it would require Jones to pay thousands of dollars in mediation fees to even start the arbitration process.

The FAA authorizes arbitration as a cheaper, more efficient alternative to litigation in court, and it preempts state law that conflicts with these federal priorities.  But Starz has created a heads-we-win, tails-you-lose "arbitration" process where Jones is denied access to justice entirely.  The FAA has never blessed that objective, and California law plainly does not permit it.  If Starz's distortion of the

1   parties' agreement is the correct reading of it, the offending provisions are invalid

2   and must be severed.

3                                   **ARGUMENT**

4   **I.    Starz Has Refused To Arbitrate Per The Terms Of The Arbitration**
         **Agreement.**
5

6           The FAA requires a Court to enforce an arbitration agreement if a party

7   "fail[s], neglect[s], or refus[es] . . . to arbitrate . . . in accordance with the terms of

8   the agreement." 9 U.S.C. § 4. Those terms include "specify[ing] *with whom* the

9   parties choose to arbitrate their disputes and *the rules* under which that arbitration

10  will be conducted." *Epic Sys. Corp. v. Lewis,* 138 S. Ct. 1612, 1621 (2018) (quoting

11  *Am. Exp. Co. v. Italian Colors Rest.,* 570 U.S. 228, 233 (2013)); *see also* Opp'n to

12  Mot. to Dismiss ("MTD Opp.") at 11–12.

13          Here, the parties agreed to individual, bilateral arbitration. The plain language

14  of the Terms permits Jones and Starz to bring claims only in their "individual

15  capacity," and, initially, the parties stated repeatedly that they understood the dispute

16  resolution process to be individualized. *See* Mot. at 6–7, 17. But after Jones initiated

17  the mandatory dispute resolution process under the Terms over a year ago, Starz has

18  stymied her efforts at every step. As the last straw, Starz successfully argued for the

19  disqualification of Judge Andler—who neither Jones nor Starz opposed under Cal.

20  Civ. Proc. § 1281.91(b)(1)—to avoid having to proceed in arbitration with Jones.

21

Under the FAA, this Court must compel Starz to individually arbitrate Jones's claim, including any delegated threshold issues.  *See* Mot. at 11–13, 17.

Starz must arbitrate pursuant to the terms of the parties' arbitration agreement, which (a) requires the parties to "bring claims against the other only in [their] individual capacity, and not as a plaintiff or class member in any purported class or representative proceeding," (b) is governed by a California law that protects parties' right to choose to disqualify their arbitrator, and (c) caps consumer claimants' total arbitration-related fees at $250.  Pet., Ex. A, Terms § 27; *see* Pet., Ex. D.  It is not enough that Starz "is participating in arbitration of Petitioner's claims," Opp. at 7, on *different* terms, beset with unconscionable fees and laden with a procedural morass, virtually ensuring that Jones will never be able to present her dispute to an appointed and confirmed arbitrator.  As such, Jones is "aggrieved by the alleged failure," and the Court is authorized to "hear the parties" and "make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement."  9 U.S.C. § 4.

## II.   The Court Has Authority To Compel Starz To Individually Arbitrate The Threshold Issues Of Arbitrability.

The Court must "enforce the arbitration agreement in accordance with its terms," *Chiron Corp. v. Ortho Diagnostic Sys., Inc.,* 207 F.3d 1126, 1130 (9th Cir. 2000), and the Terms are clear that the parties agreed to resolve disputes through individual, bilateral arbitration proceedings.  Yet Starz has made it impossible for

Jones to pursue her claims before an arbitrator that both she and Starz agreed to, even though Jones filed her arbitration demand over a year ago.  The Court should compel Starz to proceed to an individual arbitration with Jones in accordance with the parties' arbitration agreement.

Jones agrees that the Terms are governed by the JAMS *Comprehensive Rules*, and Rule 6(e) provides that "[u]nless the Parties' Agreement or applicable law provides otherwise, JAMS, if it determines that the Arbitrations so filed have common issues of fact or law, may consolidate Arbitrations . . . ." Pet., Ex. E.  The JAMS rule therefore recognizes that, if the parties' agreement "provides otherwise," the agreement trumps the JAMS rule.  Here, as set forth below, both the Agreement and applicable law "provide[] otherwise."  And further, the rule is clear that JAMS determination is whether there are common issues of fact or law; the decision about whether the agreement provides otherwise is a gateway issue for the Court.  As explained below, the Court should therefore order that Jones's arbitration proceed as an individual arbitration—or, at a minimum, order that the parties individually arbitrate the issue of consolidation.

A.    The Terms Provide For Individual, Bilateral Arbitration

The Terms are clear that the parties agreed to individual arbitration between "only" Jones and Starz; the agreement does not leave room for inclusion of other Starz customers who may have similar claims relating to their use of the Starz platform, even if they are represented by the same counsel.  *See* Mot. at 15–16.

Starz's lackluster response selects myriad provisions from Black's Law Dictionary, arguing that "individual capacity" as used in the Terms is limited to a party's "role" and is irrelevant to "how many parties participate in a proceeding." Opp. at 13. But, as Starz acknowledges, "individual capacity" "means that each party must act on their own behalf, and not on behalf of anyone else." *Id.* In this very proceeding, a stranger to Jones's and Starz's arbitration agreement has prevented their arbitration from moving forward on the merits by disqualifying the appointed arbitrator under California law. *See Lawson v. Life of the S. Ins. Co.*, 648 F.3d 1166, 1168 (11th Cir. 2011); 13 Samuel Williston & Richard A. Lord, *A Treatise on the Law of Contracts* § 37:1 (4th ed. 1999) ("As a general rule, strangers to a contract acquire no rights under such a contract."); *see also* JAMS, *Comprehensive Rules*, R.15(f) (treating multiple claimants as the same party following consolidation). Other claimants, exercising their rights under California law, are therefore acting on behalf of Jones (and Jones on behalf of those other claimants), contrary to the Terms, even under Starz's tortured interpretation. Jones, therefore, is not participating in arbitrator selection in her "individual capacity"; she is participating in an all-or-nothing group capacity, where any one of thousands of individuals can disqualify the appointed arbitrator and Jones may never get her day in arbitration. This is not the arbitration process that was promised under the parties' agreement.

*Kinecta* and *Nelson* support Jones's plain language interpretation, despite Starz's protestations. Opp. at 14. When discussing *Kinecta*, *Sandquist* does not

address the contractual analysis or conclusion in *Kinecta* that the arbitration agreement was limited to "two parties" based on similar language as here; rather, that court takes issue with the *Kinecta* court's methodology.  *See Sandquist v. Lebo Auto., Inc.*, 376 P.3d 506, 522 (Cal. 2016).  Thus, the *Kinecta* contract interpretation, followed by *Nelson*, is sound and supports Jones's reading of the Terms.

Perhaps seeing its own hypocrisy, Starz tries to re-write history and claims that it has "*always*" understood the Terms to permit consolidated mediation and arbitration.[2]  Opp. at 15.  But Starz's attempted revision of history is squarely contradicted by its own documented position.  Before changing its tune and arguing for consolidation in June 2023, Starz was strident that the Terms required individual mediations and individual arbitrations—and took pains to make that crystal clear. On May 22, 2023, Starz wrote:

> This letter memorializes the position we have taken over the last several months concerning the STARZ Terms of Use dated December 12, 2019 ("TOU"). As we have maintained, the TOU require each one of your clients who is bound by the TOU to engage in a mediation with STARZ in a good-faith attempt to resolve their claims before initiating an arbitration. Further, the TOU require that each mediation – just like each arbitration – be an individual, one-on-one JAMS-administered mediation between the specific claimant and STARZ. Accordingly, pursuant to its rights under the TOU, STARZ demands

---

[2] Of course, subjective manifestations of intent are irrelevant to the Court's analysis. *See Reigelsperger v. Siller*, 150 P.3d 764, 767 (Cal. 2007) (stating that, under California law, the inquiry into contractual intent focuses on the "objective manifestation of the parties' intent" as found in the "reasonable meaning of the words and acts of the parties, and not from their unexpressed intentions or understandings.").

1
2

> that each of your clients who is bound by the TOU mediate individually, in good-faith, before attempting to initiate arbitration with JAMS.

3    Huber Decl., Ex. A.  Starz apparently believes its contract is a weathervane, saying

4    whatever is most expedient to Starz in that moment—individual when it wishes to

5    impose thousands of dollars in individual mediation fees on claimants, and

6    consolidated when it wishes to ensure that Jones will never get her day in arbitration.

7        Starz's accusations against Jones's counsel do not help its argument.  Jones

8    did not voluntarily give up her right to bring her claims in court so that her lawyers

9    could "choos[e] the most inefficient and expensive approach," Opp. at 15; she was

10   forced to accept the take-it-or-leave-it arbitration clause as part of the Terms, and

11   she is now attempting to pursue her claims per those Terms.  And Jones should not

12   be faulted because Starz similarly violated the privacy rights of thousands of other

13   claimants, who are represented by the same counsel.

14       B.    Applicable Law Supports Individual, Bilateral Arbitration.

15       Left with little ammunition, Starz downplays Supreme Court caselaw by

16   stating that the Court has merely "observed" that "*class* and *representative*

17   arbitration is fundamentally different from individual arbitration." Opp. at 12.  But

18   Starz ignores the Court's focus on two-party arbitration as the "prototype" of

19   arbitration protected by the FAA.  *Viking River Cruises, Inc. v. Moriana*, 596 U.S.

20   639, 656 (2022).  And, although class arbitration is undoubtedly different in some

21   ways from consolidated arbitration—e.g., in a class, there is a representative plaintiff

for all issues—many of the Court's concerns about forcing class arbitration absent agreement apply equally here: "[a]n arbitrator chosen according to an agreed-upon procedure no longer resolves a single dispute between the parties to a single agreement, but instead resolves many disputes between hundreds or perhaps even thousands of parties"; "the presumption of privacy and confidentiality" no longer applies; the "commercial stakes" are higher, "even though the scope of judicial review is much more limited"; and it "defeat[s] the ability of the parties to control which claims are subject to arbitration." *See Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 684 (2010); *Viking River Cruises*, 596 U.S. at 660–61.  Forcing Jones into consolidated arbitration would also "sacrifice[] the principal advantage of arbitration—its informality—and make[] the process slower, more costly, and more likely to generate procedural morass than final judgment." *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1416 (2019).  In this very proceeding, consolidation has already turned the process into a slower, more procedurally complicated morass where Jones is bound by the decision of thousands of people who *are not* parties to her contract with Starz.

California law also prohibits the tortured, non-starting "arbitration" that Starz wants here.  Under the CAA, Jones (and every other claimant) has an "absolute right" to disqualify an appointed arbitrator.  Cal. Civ. Proc. § 1281.91(b)(1); *Roussos v. Roussos*, 60 Cal. App. 5th 962, 974 (2021).  Although Starz maintains that the statute "does not confer an unwaivable right 'to select' an arbitrator" and thus does

not prohibit consolidation here, Opp. at 20, the practical effect of consolidating thousands of claimants, each with the ability to disqualify an arbitrator *on behalf of every claimant*, is to delay arbitration perpetually or force those claimants to waive their right. As applied, then, Rule 6(e) overrides Jones's right to disqualify an arbitrator, *Heckman v. Live Nation Ent., Inc.*, No. 22-CV-0047-GW-GJSX, 2023 WL 5505999, at *15 (C.D. Cal. Aug. 10, 2023), and is prohibited by California law.

Importantly, Section 1281.91(b)(1) is not in conflict with Section 1281.3, which authorizes *courts* to consolidate separate arbitration proceedings. Cal. Civ. Proc. § 1281.3. Here, no court, nor any other decision maker interpreting the Terms, has consolidated Jones's arbitration. JAMS administrators consolidated the arbitrations pursuant to JAMS rules, which allow consolidation only to the extent that "applicable law" permits. Section 1281.3 thus has no application to this case. *See also* MTD Opp. at 20–22. And Jones's argument would not mean that there is never any consolidation. *Id.* at 22 n.5. For example, if Jones and other claimants participate individually in arbitrator selection and that process leads to an appointed arbitrator being confirmed in multiple individual arbitrations, then that arbitrator can decide whether to order consolidation of certain common issues.

At minimum, these Supreme Court and California precedents demonstrate that the initial arbitration over the parties' arbitrability disputes cannot be consolidated under Rule 6(e) and must proceed as an individual arbitration.

1   Traditional, bilateral arbitration is the default; and here, for all practical purposes, it

2   is the only way for Jones to get her day in front of an arbitrator.

3        C.    The Court Has Authority To Order Individual, Bilateral Arbitration—
                Not JAMS Administrators.
4

5        The plain language of the parties' arbitration agreement provides for

6   individual arbitration, and applicable law supports individual arbitration, too.  Starz

7   nevertheless tries to prevent the Court from ordering individual arbitration by

8   arguing that the issue of consolidation is for JAMS administrators to decide—or,

9   alternatively, for individual arbitrators to decide.  That gets everything backwards.

10  The issue of consolidation, like other "gateway" arbitrability disputes, is

11  presumptively for the Court to decide.  *Shivkov v. Artex Risk Solutions, Inc.*, 974

12  F.3d 1051, 1065 (9th Cir. 2020).  Jones cannot get to an arbitrator before this issue

13  is decided.  And the parties did not clearly and unmistakably delegate the issue to

14  JAMS *administrators*.  Even if the issue of consolidation is an issue of contract

15  interpretation, such an issue can be delegated to *arbitrators*, not to JAMS

16  administrators.  So, if there is any clear and unmistakable delegation of the issue at

17  all, it is to the arbitrator, and at a minimum the Court should order that Jones's

18  arbitration of the dispute over consolidation be an individual arbitration—otherwise,

19  as experience to date demonstrates, Jones will be stuck at the gateway, and will never

20  be able to appear before an appointed and confirmed arbitrator to get the issue

21  resolved.

1    To begin, the instant question—whether the parties' arbitration agreement

2  permits a consolidated arbitration of threshold arbitrability disputes—is itself a

3  gateway arbitrability dispute for a court to decide.  Indeed, circuit courts including

4  the Ninth Circuit have uniformly held that the analogous question of "the availability

5  of class arbitration is a gateway question for a court to presumptively decide."

6  *Shivkov v. Artex Risk Sols., Inc.*, 974 F.3d 1051, 1065 (9th Cir. 2020) (collecting

7  cases from seven additional circuit courts).  For good reason: the availability of class

8  arbitration is a "'fundamental' change from the norm of bilateral arbitration," would

9  "sacrifice[] the principal advantage of arbitration—its informality—and make[] the

10  process slower, more costly, and more likely to generate procedural morass," and

11  would "change[] the nature of arbitration to such a degree that it cannot be presumed

12  the parties consented to it by simply agreeing to submit their disputes to an

13  arbitrator."  *Id.* at 1066.  So, too, with the availability of consolidated arbitration in

14  Jones's arbitration:  it would also mark a fundamental change from the norm of

15  bilateral arbitrations, would also sacrifice (and has already sacrificed) informality,

16  speed, and cost-effectiveness, and would also generate (and has already generated)

17  procedural morass to a great degree.  The availability of consolidated arbitration is

18  therefore also a gateway arbitrability dispute, and it is therefore also for a court to

19  presumptively decide.

20    Here, there is no clear and unmistakable delegation of that threshold

21  arbitrability dispute—certainly not to JAMS administrators.  Starz cites JAMS Rule

1   6(e), but that Rule states: "Unless the Parties' Agreement or applicable law provides

2   otherwise, JAMS, if it determines that the Arbitrations so filed have common issues

3   of fact or law, may consolidate Arbitrations in" certain specific situations.   The

4   structure of that Rule is clear:  *if* "the Parties' Agreement or applicable law" does

5   *not* prohibit consolidation, *then* JAMS administrators can determine whether the

6   arbitrations have common issues of fact or law supporting consolidation, among

7   other things.   Any delegation of authority to JAMS administrators is entirely

8   premised on the satisfaction of the initial conditional statement that parties'

9   agreement and applicable law permit consolidation.   And on *that* issue, JAMS

10   administrators have no delegated authority.   Put differently, JAMS Rule 6(e) does

11   *not* say that JAMS administrators can determine whether the parties' agreement or

12   applicable law prohibits consolidation.  It only says that *if* the parties' agreement and

13   applicable law permit consolidation—i.e., *after* that issue has been resolved—*then*

14   JAMS administrators can determine whether common issues make consolidation

15   appropriate.   The initial conditional statement of Rule 6(e)—whether the parties'

16   agreement and applicable law permit consolidation—is the threshold issue for this

17   Court to decide.

18        The Court must interpret the parties' agreement even if it determines that

19   arbitrators have the final say on whether the contract permits consolidation.  JAMS

20   Rule 11(b) states that it is "the Arbitrator," not JAMS administrators, who will

21   decide "arbitrability disputes, including disputes over the . . . interpretation . . . of

the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration." Since only arbitrators can even arguably resolve disputes over whether the contract permits consolidation, the Court must determine in the first instance whether to send Jones' dispute to *individual, bilateral* arbitration preferred by the FAA. The parties never agreed to hand that question to JAMS administrators. They certainly did not do so in clear, unmistakable fashion. As explained before, *see* MTD Opp. at 14, "an arbitration clause's validity and enforceability are merits-based issues reserved to the *arbitrator*, issues over which the *administrator* retains no authority." *Bedgood v. Wyndham Vacation Resorts, Inc.*, 88 F.4th 1355, 1364 n.5 (11th Cir. 2023) (emphases added). "Contract interpretation is a legal question," and "it generally wouldn't make sense to require clear intent to delegate arbitrability questions to an arbitrator but then allow either arbitrators or administrators to decide that legal question." *Ciccio v. SmileDirectClub, LLC*, 2 F.4th 577, 585 (6th Cir. 2021).

The holding in *Bedgood* does not alter the analysis. The specific issue there was one of "policy-compliance" with forum rules—a decision that purely concerns whether a forum will administer an arbitration before it, and which decision was clearly, unmistakably, and permissibly delegated to the administrator in that case. 88 F. 4th 1355, 1363–64 (11th Cir. 2023). Of course, an arbitration administrator, as a private company, can decide which arbitrations it will administer or not. That is not at issue. Instead, the parties here disagree about the proper interpretation of

the contract for arbitration.  The disagreement references—and requires interpretations of—Supreme Court and California precedents favoring individual, bilateral arbitrations.  Nothing in the parties' contract, JAMS rules, or any judicial authority suggests that JAMS administrators are empowered to issue a binding construction of the parties' agreement.  Administrators play an important role in dispute resolution.  But merits arguments about what contractual instruments and judicial precedents mean are always left to ultimate decisionmakers—judges or arbitrators—not administrators.  At a minimum, the parties did not clearly and unmistakably delegate the contract-interpretation question to the administrator, as JAMS Rule 11(b) provides that contract-interpretation questions are for the arbitrator to decide.

Finally, if the Court decides that the issue of consolidation is clearly and unmistakably delegated to the arbitrator, then the Court still must determine whether that question should be answered in bilateral, individual arbitration. It should be. Otherwise, as experience shows, Jones will never get her day in arbitration.  For an arbitrator to decide delegated, threshold issues of arbitrability—such as whether the parties' arbitration agreement and applicable law permit consolidation of Jones's arbitration with others' arbitrations—an arbitrator must first be appointed and confirmed.  Starz's post-hoc rewrite of the parties' agreement prevented the first-appointed arbitrator from being confirmed and deciding those disputes—and it ensures that other appointed arbitrators will never be confirmed unless thousands of

PETITIONER'S REPLY IN FURTHER SUPPORT OF MOTION TO COMPEL ARBITRATION

other claimants, each a stranger to Jones, unanimously agree that Jones may proceed

with that arbitrator.  That result flatly ignores the parties' agreement to individually

arbitrate threshold arbitrability disputes.

**III.   If The Court Determines That The Terms Allow Consolidation Of The Arbitrations Of Gateway Arbitrability Disputes Or That There Is No Fee Cap, Then Those Provisions Are Unconscionable.**

      A.    <u>Application of Rule 6(e) to consolidate the arbitrations of threshold arbitrability disputes is unconscionable.</u>

As set forth above, the parties' arbitration agreement provides for individual,

bilateral arbitration; Supreme Court and California precedents reinforce that

interpretation; and that interpretation is for the Court to make in compelling

individual arbitrations under the FAA, as the issue of consolidation is a threshold or

gateway issue of arbitrability that the parties have not clearly and unmistakably

delegated to anyone—and certainly not to JAMS administrators.

Jones also challenges as unconscionable the parties' delegation clause in

JAMS Rule 11(b) to the extent it permits consolidated arbitration of the gateway

issues of arbitrability like consolidation.  That unconscionability challenge to the

delegation clause is for this Court to resolve.  *See, e.g.*, *Lim v. TForce Logistics,*

*LLC*, 8 F.4th 992, 1000 (9th Cir. 2021) (distinguishing an unconscionability

challenge to the underlying arbitration agreement, which may be delegated to an

arbitrator, with an unconscionability challenge to the delegation clause, which is for

the court to decide).  If the Court finds that consolidation of the arbitration of the

1    parties' threshold arbitrability disputes is allowed by the parties' agreement, it

2    should strike the application of Rule 6(e) as unconscionable.  While the Court

3    considers both procedural and substantive unconscionability, "[t]he more

4    substantively oppressive the contract term, the less evidence of procedural

5    unconscionability is required to come to the conclusion that the term is

6    unenforceable, and vice versa." *Heckman*, 2023 WL 5505999, at *5.

7        Starz argues that the Court cannot find procedural unconscionability here

8    because the parties' contract involves "non-essential, recreational activities."  Opp.

9    at 18.  California courts have previously rejected this kind of argument.  In *Szetela*

10   *v. Discover Bank*, for instance, the court found that "whether [the consumer] could

11   have found another credit card issuer who would not have required his acceptance

12   of a similar clause is *not* the deciding factor."  97 Cal. App. 4th 1094, 1100 (2002)

13   (emphasis added).  The court stressed that "[p]rocedural unconscionability focuses

14   on the manner in which the disputed clause is presented to the party in the weaker

15   bargaining position." *Id.*  When the consumer is "presented the clause and told to

16   'take it or leave it' without the opportunity for meaningful negotiation, oppression,

17   and therefore procedural unconscionability, are present." *Id.*; *see also Lhotka v.*

18   *Geographic Expeditions, Inc.*, 181 Cal. App. 4th 816, 821–24 (2010) (finding

19   arbitration agreement unconscionable where the parties contracted to go on a hiking

20   expedition).  Here, Jones had no option but to agree to the Terms, and the disputed

21   clause (Rule 6(e)) was buried in a separate document incorporated by those Terms.

As to substantive unconscionability, and as discussed *supra* at 10–11, consolidation under Rule 6(e) conflicts with Jones's "absolute" and "unwaivable" right under California law to disqualify an appointed arbitrator.  Cal. Civ. Proc. § 1281.91(b)(1).  The practical effect of consolidating thousands of claimants, each with the ability to disqualify an arbitrator *on behalf of* every claimant, is to delay arbitration indefinitely or force those claimants to waive their right, either of which is prohibited by California law.  *See Roussos*, 60 Cal. App. 5th at 973.

Starz argues that, "[i]n a consolidated arbitration each party—including every claimant—*still* has [the right to disqualify an arbitrator]."  Opp. at 20.  That is little more than a cynical play on words.  A process that confers a right that can *never* be practically exercised is no different than stripping the party of her right altogether.  This is not mere conjecture.  If a single claimant exercises his or her "right" to disqualify the appointed arbitrator in the consolidated proceeding, the appointed arbitrator is disqualified for *all* claimants.  This is a classic one-sided term, where Starz has the full ability to exercise its right to disqualify an appointed arbitrator, but Jones and other consumers are forced to stay silent, lest they end up in a never-ending loop of appointments and disqualifications.

The Court should find that any consolidation permitted by the parties' agreement is unconscionable under California law.

B.    <u>Requiring Jones to Pay More than $250 in Arbitration-Related Fees Is Unconscionable.</u>

1   Starz should be compelled to individual arbitration in which it pays any

2   required mediation fees in excess of $250, in compliance with JAMS *Minimum*

3   *Standards* and California law.[3]

4       The JAMS *Minimum Standards* provide that, "when a consumer initiates

5   arbitration against the company, the only fee required to be paid by the consumer is

6   $250, which is approximately equivalent to current Court filing fees" and "[a]ll other

7   costs must be borne by the company[.]"  Pet., Ex. D; *see also, e.g.*, *Ingle v. Cir. City*

8   *Stores, Inc.*, 328 F.3d 1165, 1177–78 (9th Cir. 2003); *Armendariz v. Found. Health*

9   *Psychcare Servs., Inc.*, 6 P.3d 669, 689 (Cal. 2000); *D.C. v. Harvard-Westlake Sch.*,

10  176 Cal. App. 4th 836, 861 (2009).  The *Minimum Standards* leave no room for

11  Starz's twisted argument that "[n]othing in the Standards relieves consumers from

12  having to incur other costs associated with pursuing their claims."  Opp. at 17.

13      If Starz (and JAMS) is correct that required pre-arbitration mediation is not

14  bound by the fee cap in the *Minimum Standards*, the mediation requirement would

15  be unconscionable and should be severed.  *Lucas v. Gund, Inc.*, 450 F. Supp. 2d

16  1125, 1134 (C.D. Cal. 2006); *see Chavarria v. Ralphs Grocery Co.*, 733 F.3d 916,

17  925 (9th Cir. 2013); *Sonic-Calabasas A, Inc. v. Moreno*, 311 P.3d 184, 202 (Cal.

18  2013) ("[I]t is substantively unconscionable to require a consumer to give up the

19  right to utilize the judicial system, while imposing arbitral forum fees that are

20  _____

21  [3] Jones is not estopped from seeking the Court's intervention on mediation fees because Jones is not seeking to "derive an unfair advantage or impose an unfair detriment on [Starz]."  *See* MTD Opp. at 24–25.

prohibitively high."). Starz claims that it "has been willing—and remains willing—to find cost-effective paths to mediation that are fair to both parties," Opp. at 22, but that is disingenuous. Starz already asked JAMS to find cost-effective mediators, Mot., Ex. B, at 2, and JAMS provided a list of mediators whose "cost-effective" daily rate is $12,750. *See* Pet. at 2, n.1. There is nothing speculative about the prohibitive costs Jones and every other claimant would face if the fee cap does not apply here.

Starz fares no better with its argument that splitting mediation fees is based on "ordinary custom and practice." Opp. at 16. Both cases on which Starz relies are inapt. *Cove Owners Ass'n v. 1205 Coastal LLC*, No. CPU6-19-000104, 2022 WL 16631284, at *2 (Del. Com. Pl. Oct. 4, 2022), an unpublished opinion, was a debt collection action against a commercial tenant in which the parties voluntarily mediated the claims and split mediation fees evenly. After prevailing, the Association asked to be reimbursed for the entire cost of mediation. The court refused, stating it was customary for parties to split mediation fees. Similarly, *Ass'n for Disabled Am. v. Integra Resort Mgmt.*, 385 F. Supp. 2d 1272, 1304 (M.D. Fla. 2005), involved the settlement of consolidated ADA premises liability cases in which, again, the parties voluntarily attended mediation. The court refused to reimburse the mediation fee.

Neither case supports the notion that a consumer can be forced to pay mediation fees in a contract of adhesion where mediation is a pre-condition to

arbitration.  The Court should find that, under the *Minimum Standards*, Jones should not be required to pay any arbitration-related fees, including any mediation fees, in excess of $250.  Nevertheless, if the Court finds that the Terms authorize Jones to be on the hook for half of the parties' mediation fees, it should also find unconscionable the mediation requirement.

> C.   This Court Should Sever Any Unconscionable Provisions of the Starz Terms

Starz contends that, if this Court finds certain provisions of its agreement unconscionable, it should refuse to enforce its agreement entirely.  Opp. at 17.  But, as the drafting party, Starz does not have the luxury of avoiding its own agreement. *See, e.g.*, *Abernathy v. DoorDash, Inc.*, 438 F. Supp. 3d 1062, 1067–68 (N.D. Cal. 2020).  The Terms plainly provide the opposite:  "If any provision of these Terms of Use is determined to be invalid or unenforceable, such determination will not affect the validity or enforceability of any other provision of the Terms of Use."  Terms § 29.   And courts routinely sever unconscionable terms from otherwise valid arbitration agreements pursuant to such severability clauses.  *See Lang v. Skytap, Inc.*, 347 F. Supp. 3d 420, 433 (N.D. Cal. 2018) (finding that severability clause in arbitration agreement "allow[ed] the Court to sever the [three] unconscionable terms and enforce the remainder of the agreement").

If the Court finds the mediation fee-splitting provision or consolidation rule to be unconscionable, these can easily be severed, as both are collateral to the "main

purpose" of the arbitration agreement—which is to arbitrate all disputes relating to a customer's use of the streaming service.  *See Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 1005 (9th Cir. 2010); *see, e.g.*, *Flora v. Prisma Labs, Inc.*, No. 23-CV-00680-CRB, 2023 WL 5061955, at *6 (N.D. Cal. Aug. 8, 2023) (severing forum selection clause, as it conflicted with the JAMS *Minimum Standards* and enforcing agreement to arbitrate); *Pope v. Sonatype, Inc.*, No. 5:15-CV-00956-RMW, 2015 WL 2174033, at *6 (N.D. Cal. May 8, 2015) (severing three unconscionable provisions, including a fee-splitting provision, and enforcing agreement to arbitrate in JAMS); *Grabowski v. Robinson*, 817 F. Supp. 2d 1159, 1179 (S.D. Cal. 2011) (severing three unconscionable provisions and enforcing agreement to arbitrate).

**IV.   If The Court Denies Petitioner's Motion, The Parties' Agreement Is Entirely Unconscionable Under *Discover Bank*.**

Under California law, class-action waivers in consumer contracts of adhesion are unconscionable.  *Discover Bank v. Superior Ct.*, 113 P.3d 1100, 1110 (Cal. 2005).  The Supreme Court held *Discover Bank* impliedly preempted by the FAA in *individual* arbitrations, *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 348 (2011), but there is no conflict, and thus no preemption, when applied to *consolidated* arbitrations.  Starz does not even pretend to address Jones's argument

1    on this point.[4]   As set forth above, the Court should compel Starz to arbitrate

2    individually with Jones in accordance with the parties' arbitration agreement.  But

3    if the Court does not do so, and instead finds that the parties' arbitration agreement,

4    FAA, and California law permit consolidated arbitration, then it should also find that

5    the parties' arbitration agreement is unconscionable because it includes a class-

6    action waiver.

7                                    **CONCLUSION**

8        This Court should compel Starz to individual arbitration in accordance with

9    the Terms.  Additionally, the Court should find that Jones cannot be required to pay

10   any arbitration-related fees, including any mediation fees, in excess of $250.

11

12

13

14

15

16

17

18

19

---

20   [4] The Court is not bound by *Heckman* and, in any case, the *Heckman* court found
     the agreement was permeated with unconscionability for other reasons, denied the
     defendant company's motion to compel, and allowed the putative consumer class
21   action to proceed in court.  *See Heckman*, 2023 WL 5505999, at *19.

PETITIONER'S REPLY IN FURTHER SUPPORT OF MOTION TO COMPEL ARBITRATION

Date: March 7, 2024                    */s/ Albert Y. Pak*

**KELLER POSTMAN LLC**

Warren D. Postman (330869)
Albert Y. Pak (*pro hac vice*)
1100 Connecticut Ave, N.W. Suite 1100
Washington, D.C. 20036
Telephone:  202-918-1123

Patrick A. Huber (*pro hac vice*)
150 North Riverside Plaza, Suite 4100
Chicago, IL 60606
Telephone:  312-280-5790

**LYNCH CARPENTER LLP**

Jae Kook Kim (236805)
117 East Colorado Boulevard, Suite 600
Pasadena, CA 91105
Telephone: 626-550-1250

*Attorneys for Petitioner*

1

## <u>Certificate of Compliance</u>

2        The undersigned, counsel of record for Petitioners, certifies that this brief

3  contains 5,901 words, which complies with the word limit of L.R. 11-6.1.

4   March 7, 2024                                    _/s/_     _Albert Y. Pak_____

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21