JS-6

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## CIVIL MINUTES—GENERAL

| Case No. | **EDCV 24-0206-KK-DTBx** | Date: | March 11, 2024 |
|---|---|---|---|

| Title: | *Kiana Jones v. Starz Entertainment, LLC* |
|---|---|

Present: The Honorable   KENLY KIYA KATO, UNITED STATES DISTRICT JUDGE

|  |  |
|---|---|
| Noe Ponce | Not Reported |
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:**   **(In Chambers) Order GRANTING Respondent's Motion to Dismiss [Dkt. 19]**

### I.
### INTRODUCTION

On January 31, 2024, petitioner Kiana Jones ("Petitioner") initiated this action filing a Petition to Compel Arbitration ("Petition") against respondent Starz Entertainment, LLC ("Respondent"). ECF Docket No. ("Dkt.") 1. On February 13, 2024, Respondent filed a Motion to Dismiss the Petition ("Motion") arguing Petitioner fails to state a claim under the Federal Arbitration Act ("FAA"). Dkt. 19. On February 22, 2024, Petitioner filed an Opposition to the Motion.[1] Dkt. 25. On February 29, 2024, Respondent filed a Reply. Dkt. 27. The matter thus stands submitted.

The Court finds this matter appropriate for resolution without oral argument. See FED. R. CIV. P. 78(b); L.R. 7-15. For the reasons stated below, Respondent's Motion to Dismiss is **GRANTED**.

///

///

---

[1] Petitioner concurrently filed a Motion to Compel Arbitration. Dkt. 23. In light of this order, Petitioner's Motion to Compel Arbitration is **DENIED AS MOOT**.

## II.
## RELEVANT FACTS

The instant action arises out of an alleged privacy breach in which Petitioner claims Respondent, a content streaming company, violated the Video Privacy Protection Act and California Civil Code § 1799.3 by "disclos[ing] Petitioner's identity and the videos she watched on [Respondent's] platform to third-party advertising and analytics companies, such as Meta and Google, without Petitioner's consent." Pet. ¶¶ 1-2. Roughly 7,300 other consumers allege a similar grievance against Respondent. See id. ¶¶ 11-12.

Petitioner signed up for a "Starz" account and agreed to the "Starz Terms of Use" ("TOU") and the mandatory arbitration clause ("JAMS Arbitration Agreement"). Id. ¶ 3. The TOU is "governed by California law" and the JAMS Arbitration Agreement "designates JAMS as the arbitration forum under the JAMS Comprehensive Arbitration Rules & Procedures." Id. ¶ 4 (emphasis omitted).

The JAMS Arbitration agreement provides, in relevant part, "[a]ll controversies, disputes or claims arising out of or relating to these [TOU] will be determined pursuant to the mediation and arbitration procedures of JAMS," and a consumer or Respondent "may bring claims against the other only in your or its individual capacity, and not as a plaintiff or class member in any purported class or representative proceeding." Id. ¶¶ 5, 32-33, dkt. 4-1, Declaration of Patrick A. Huber ("Huber Decl."), ¶ 2, Ex. A at 14. The JAMS Arbitration Agreement further states "[t]he parties will endeavor first to attempt to resolve the controversy or claim through mediation administered by JAMS before commencing any arbitration[,]" and "[t]he arbitration will be held before a single neutral arbitrator[,]" Pet. ¶ 7; see also Huber Decl. ¶¶ 2, 6, Ex. A at 14.

Additionally, the JAMS Comprehensive Arbitration Rules and Procedures provide, in relevant part, "[u]nless the Parties' Agreement or applicable law provides otherwise, JAMS, if it determines that the Arbitrations so filed have common issues of fact or law, may consolidate Arbitrations[.]" Dkt. 24-5 Huber Decl., ¶ 6, Ex. E at 7.

In January 2023, Petitioner filed a Demand for Arbitration. Pet. ¶ 6; dkt. 4-2, Huber Decl., ¶ 3, Ex. B. "Thereafter," Petitioner requested "JAMS commence the dispute-resolution process for her dispute with [Respondent] by appointing a mediator for her individual dispute." Id. ¶¶ 7, 8. Petitioner "also requested that JAMS allocate any fees associated with that mediation to [Respondent] [.]" Id. Petitioner alleges Respondent objected, "arguing that Petitioner must pay half of the mediation fees associated with her individual mediation." Id. ¶ 9.

On June 14, 2023, "Petitioner notified JAMS that [Petitioner and Respondent] had reached an impasse" regarding payment of mediation fees and requested JAMS "commence her individual arbitration to allow an arbitrator to resolve the threshold dispute for Petitioner[.]" Id. ¶ 10. Subsequently, "JAMS commenced arbitration proceedings as to roughly 7,300 pending arbitration demands, including Petitioner's." Id. ¶ 11.

Petitioner alleges Respondent "then argued" JAMS "should consolidate Petitioner's individual arbitration – as well as those of more than 7,000 others – into a single consolidated arbitration" pursuant to the JAMS Arbitration Agreement. Id. ¶ 12. JAMS "ordered consolidation as requested by [Respondent], despite Petitioner's objections." Id. ¶ 14.

On January 10, 2024, Petitioner wrote to Respondent "to request that [Respondent] stipulate to the individual arbitrations it had agreed to." Id. ¶ 21.  On January 17, 2024, Respondent "responded and refused to arbitrate individually with Petitioner and the other claimants." Id. ¶ 22.

On January 31, 2024, Petitioner filed the instant Petition due to Respondent's alleged "refusal to arbitrate individually with Petitioner" under "the plain language of the [TOU] [.]" Id. ¶ 23.  To date, the parties and JAMS have been in communication regarding arbitration as early as July 2023, including ranking and striking arbitrators from a list of arbitrators provided by JAMS. Dkt 4-6, Huber Decl., ¶ 7, Ex. F.  Petitioner, in her communications with Respondent and JAMS, has consistently raised objections, including but not limited to, consolidation and the arbitrator selection process, which has resulted in the selected arbitrator being disqualified and impacted the arbitration process. Dkt 4-10, Huber Decl. ¶ 11, Ex. J at 42, 49, 60, 67, 75.  Based on such objections, the process of selecting a new arbitrator appears to still be ongoing.

### III.
### LEGAL STANDARD

Petitions to compel arbitration are subject to the Federal Rules of Civil Procedure and are, therefore, subject to dismissal if the petition fails to state a claim upon which relief can be granted. Pac. Media Workers Guild v. San Francisco Chron., No. 17-CV-00172-WHO, 2017 WL 1861853, at *4 (N.D. Cal. May 9, 2017) (dismissing a petition to compel arbitration pursuant to Rule 12(b)(6); see also Serv. Emps. Int'l Union, Loc. 1877 v. Citiscape Prop. Mgmt. Grp. LLC, No. C-09-0608-SBA, 2009 WL 1086963, at *1-3 (N.D. Cal. Apr. 20, 2009).

A complaint may be dismissed for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) "only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008).  In considering whether a complaint states a claim, a court must "construe the pleadings in the light most favorable to the nonmoving party," Capp v. Cnty. of San Diego, 940 F.3d 1046, 1052 (9th Cir. 2019) (quoting Knievel v. ESPN, 393 F.3d 1068, 1072 (9th Cir. 2005)), accepting as true all factual allegations in the complaint and drawing all reasonable inferences in the nonmoving party's favor. Moreno v. UtiliQuest, LLC, 29 F.4th 567, 573 (9th Cir. 2022).  The court, however, need not accept as true "a legal conclusion couched as a factual allegation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

Although a complaint need not include detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Cook v. Brewer, 637 F.3d 1002, 1004 (9th Cir. 2011) (quoting Iqbal, 556 U.S. at 678).  A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.  The complaint "must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).


///

///

## IV.
## DISCUSSION

**A.    PETITIONER FAILS TO ALLEGE SHE IS AN "AGGREIVED" PARTY PURSUANT TO SECTION FOUR OF THE FEDERAL ARBITRATION ACT**

### 1.    Applicable Law

The Federal Arbitration Act provides that agreements to arbitrate disputes "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract[.]"  9 U.S.C. § 2.  The FAA's "policy favoring arbitration does not authorize federal courts to invent special, arbitration-preferring procedural rules."  Morgan v. Sundance, Inc., 596 U.S. 411, 419 (2022) (internal citation omitted).  Rather, the policy is to make "arbitration agreements as enforceable as other contracts, but not more so."  Id. (quoting Prima Paint Corp v. Flood & Conklin Mfg. Co., 388 U.S. 395, 404 n.12 (1967)).

The FAA further provides, in relevant part, "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement."  9 U.S.C. § 4.  Hence, Section Four of the FAA is "only triggered when one party has expressed a 'refusal' to arbitrate, and the other party has been thereby 'aggrieved.'"  Cmty. State Bank v. Strong, 651 F.3d 1241, 1256 (11th Cir. 2011).

### 2.    Analysis

The Court finds Petitioner has failed to demonstrate she is an "aggrieved" party pursuant to Section Four of the FAA.  First, while Petitioner alleges Respondent has "refus[ed] to arbitrate individually with Petitioner[,]" Pet. ¶ 23, Petitioner alleges no specific facts from which one can reasonably infer Respondent has failed, neglected, or refused to arbitrate.  In fact, Petitioner concedes she requested JAMS "commence her individual arbitration to allow an arbitrator to resolve the threshold dispute for Petitioner" and subsequently, "JAMS commenced arbitration proceedings as to roughly 7,300 pending arbitration demands, including Petitioner's."  Id. ¶ 11.  Additionally, both parties and JAMS have been in communication regarding arbitration as early as July 2023, including ranking and striking arbitrators from a list of arbitrators provided by JAMS, and the process of selecting an arbitrator appears to still be ongoing.  Dkt. 4-10, Huber Decl. ¶ 11, Ex. J at 49, 75.  Zyppah, Inc. v. Allemeier, No. 2:17-CV-02840-JAD-PAL, 2018 WL 1932887, at *2 (D. Nev. Apr. 24, 2018) (dismissing petition to compel arbitration and denying petitioner's motion to compel arbitration upon determining respondent "hasn't refused to arbitrate consistent with the parties' arbitration agreement, so [Petitioner] is not an 'aggrieved' party and cannot use § 4 of the FAA" to compel arbitration); Greco v. Uber Techs., Inc., No. 4:20-CV-02698-YGR, 2020 WL 5628966, at *4 (N.D. Cal. Sept. 3, 2020) (finding no demonstration of "failure, neglect, or refusal . . . to arbitrate" because "arbitration ha[d] already taken place in accordance with the parties' agreement, reaching the court under those same terms").  Rather, as discussed in Section IV.B., the crux of Petitioner's claim appears to be a dispute over procedural issues as to how the arbitration should proceed.  Capstone Associated Servs., Ltd. v. Rivero, No. CV H-13-613, 2013 WL 12140391, at *2 (S.D. Tex. Sept. 30, 2013) (holding "disagreement[s] with procedural aspects of arbitration does not entitle one" to a cause of action under Section Four of the FAA); see Jacobs v. USA Track & Field, 374 F.3d 85, 89 (2d Cir. 2004) ("The fact that respondents raised before the AAA an objection to petitioner's

Demand for Arbitration—and the fact that the AAA agreed with that objection—does not constitute a 'refusal to arbitrate' on the part of respondents."). Thus, Petitioner fails to allege she is an "aggrieved" party pursuant to Section Four of the FAA.

Second, to the extent Petitioner is arguing Respondent has refused to arbitrate "under the plain language of the [TOU] [,]" because JAMS "ordered consolidation" of "Petitioner's individual arbitration – as well as those of more than 7,000 others – into a single consolidated arbitration[,]" Pet. ¶¶ 12, 14, 23, the Court finds this argument unpersuasive. The JAMS Arbitration Agreement, in relevant part, provides "[a]ll controversies, disputes or claims arising out of or relating to these [TOU] will be determined pursuant to the mediation and arbitration procedures of JAMS[,]" and a consumer or Respondent "may bring claims against the other only in your or its individual capacity, and not as a plaintiff or class member in any purported class or representative proceeding[,]" id. ¶¶ 5, 32-33. Moreover, the JAMS Comprehensive Arbitration Rules and Procedures provides, "[u]nless the Parties' Agreement or applicable law provides otherwise, JAMS, if it determines that the Arbitrations so filed have common issues of fact or law, may consolidate Arbitrations[,]" id. ¶ 7; see also dkt. 24-5, Huber Decl., ¶ 6, Ex. E. As such, the Court finds, and the parties do not dispute, the JAMS Arbitration Agreement and the JAMS Comprehensive Arbitration Rules and Procedures are silent on the issue of requiring a consumer to "arbitrate individually," and Petitioner fails to explain how Respondent's alleged failure to allow a consumer to "arbitrate individually" constitutes a failure, neglect, or refusal to arbitrate consistent with the parties' arbitration agreement. See Zyppah, 2018 WL 1932887 at *2 (finding petitioner failed to allege how respondent "failed, neglected, or refused to arbitrate consistent with the parties' arbitration agreement" considering the arbitration agreement was silent on the issue of venue). In fact, the JAMS Comprehensive Arbitration Rules and Procedures specifically provide for consolidation of arbitrations that arise out of common issues of fact or law. See dkt. 24-5, Huber Decl. ¶ 6, Ex. E at 7. Thus, Petitioner again fails to allege she is an "aggrieved" party pursuant to Section Four of the FAA.

The Court, therefore, finds Petitioner has failed to allege she is an "aggrieved" party pursuant to Section Four of the FAA.

## B. THE COURT HAS A LIMITED ROLE UNDER THE FAA AND, THEREFORE, DECLINES TO ADDRESS PETITIONER'S CLAIMS THAT ARE "PROCEDURAL" IN NATURE

### 1. Applicable Law

Courts have a limited role under the FAA. See Chiron Corp. v. Ortho Diagnostic Systems, Inc., 207 F.3d 1126, 1130 (2000) (explaining the courts role under the FAA is limited to questions of arbitrability). Courts presumptively decide gateway questions of arbitrability, such as "whether the parties have submitted a particular dispute to arbitration" and "whether the parties are bound by a given arbitration clause." Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83, 84 (2002). However, "[o]nce it is determined . . . that the parties are obligated to submit the subject matter of the dispute to arbitration, 'procedural' questions which grow out of the dispute and bear on its final disposition should be left to the arbitrator." John Wiley & Sons, Inc. v. Livingston, 84 S. Ct. 909, 918 (1964); accord Howsam, 537 U.S. at 84-85 (explaining that procedural questions "are presumptively *not* for the judge, but for an arbitrator, to decide") (emphasis in original) (citing John Wiley, 84 S. Ct. at 909). Hence, "[b]y its terms, the [FAA] leaves no place for the exercise of

discretion by a district court[.]" <u>Dean Witter Reynolds Inc. v. Byrd</u>, 470 U.S. 213, 218 (1985) (emphasis in original); <u>see also</u> <u>Simula, Inc. v. Autoliv, Inc.</u>, 175 F.3d 716, 719 (9th Cir. 1999).

### 2.      Analysis

Here, the Court finds, and the parties do not dispute, the parties have submitted their dispute to arbitration, and the parties are bound by the JAMS Arbitration Agreement.  Pet. ¶¶ 3-4; dkt. 19 at 7-8.  However, Petitioner argues "the Court has authority to compel [Respondent] to individually arbitrate[,]" "[t]he parties' arbitration agreement requires an individual arbitration with [Petitioner's] fees capped at $250[,]" and "Petitioner cannot be required to pay more than $250 in arbitration-related fees, and the court should make that clear now[,]" dkt. 25 at 18-30.

The Court finds the issues of consolidation pursuant to the JAMS Arbitration Agreement and the payment of arbitration fees "grow out of the dispute and should be left to the arbitrator" to decide.  <u>Meadows v. Dickey's Barbecue Restaurants Inc.</u>, No. 15-CV-02139-JST, 2016 WL 7386138, at *3 (N.D. Cal. Dec. 21, 2016) (stating "California courts have similarly held that consolidation is a procedural issue for the arbitrator to decide"); <u>Lifescan, Inc. v. Premier Diabetic Servs., Inc.</u>, 363 F.3d 1010, 1012-13 (9th Cir. 2004) (holding that the AAA Commercial Arbitration Rules confer the arbitrator with discretion regarding the payment of arbitration fees); <u>Dealer Computer Servs., Inc. v. Old Colony Motors, Inc.</u>, 588 F.3d 884, 887 (5th Cir. 2009) ("Payment of fees is a procedural condition precedent that the trial court should not review.").  Thus, the Court, having fulfilled its limited role under the FAA, declines to address the procedural issues of consolidation and payment of arbitration fees which shall be decided by the arbitrator.

Accordingly, Respondent's Motion to Dismiss the Petition is **GRANTED**.

### V.
### CONCLUSION

For the reasons set forth above, the Court **GRANTS** Respondent's Motion to Dismiss and Petitioner's Petition to Compel Arbitration is **DISMISSED WITHOUT PREJUDICE**.  It is FURTHER ORDERED that the Clerk of Court shall close this action. (JS-6)

**IT IS SO ORDERED.**